E278ULBC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          14 Cr. 68 (KBF)

ROSS WILLIAM ULBRICHT,

            Defendant.

------------------------------x
                                        February 7, 2014
                                        12:00 p.m.

Before:

                HON. KATHERINE B. FORREST

                                        District Judge

                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
SERRIN TURNER
     Assistant United States Attorney

JOSHUA DRATEL
LINDSAY LEWIS
     Attorneys for Defendant


ALSO PRESENT:

     Special Agent Ilh Wan Yum
     Special Agent Gary Alfred
```

E278ULBC

1              (Case called)
2              THE DEPUTY CLERK:  Counsel, please state your names
3    for the record.
4              MR. TURNER:  Good afternoon, your Honor.  Serrin
5    Turner for the government.  With me at counsel table is Special
6    Agent Ilh Wan Yum of the FBI and Special Agent Gary Alfred of
7    the IRS.
8              THE COURT:  Good afternoon.
9              MR. DRATEL:  Good afternoon, your Honor.  Joshua
10   Dratel and Lindsay Lewis for Mr. Ulbricht.
11             THE COURT:  Good afternoon, Mr. Dratel and Ms. Lewis.
12             The Court notes Mr. Ulbricht is present and here in
13   court this afternoon.
14             We are here for the arraignment of -- how do you
15   pronounce your client's name, Mr. Dratel?
16             MR. DRATEL:  Ulbricht.
17             THE COURT:  I wanted to make sure I got it right.
18             We are here for his arraignment and also for a
19   pretrial conference.  Is there anything else that we need to
20   take up today?
21             MR. DRATEL:  Not today from the defense.
22             THE COURT:  Thank you.
23             Let's then first proceed through the arraignment.
24   Then I would like to hear, Mr. Turner, the typical things one
25   would address during a pretrial conference, in terms of the

1     amount of discovery, the nature of the discovery, etc., and
2     timing in particular.
3              Mr. Dratel, you're standing.
4              MR. DRATEL:  I was anticipating.
5              THE COURT:  Mr. Ulbricht, would you please stand, sir?
6              Mr. Ulbricht, have you seen a copy of the indictment
7     that contains the four counts against you?
8              THE DEFENDANT:  I have.
9              THE COURT:  Have you had a chance to read it?
10             THE DEFENDANT:  Yes.
11             THE COURT:  Have you reviewed it with your attorney?
12             THE DEFENDANT:  Yes.
13             THE COURT:  Do you understand that you are charged
14    with one count of a narcotics trafficking conspiracy?
15             THE DEFENDANT:  Yes.
16             THE COURT:  Do you understand that in Count Two you're
17    charged with a continuing criminal enterprise?
18             THE DEFENDANT:  Yes.
19             THE COURT:  Do you understand that in Count Three
20    you're charged with a computer hacking conspiracy?
21             THE DEFENDANT:  Yes.
22             THE COURT:  Do you understand in Count Four you're
23    charged with a money laundering conspiracy?
24             THE DEFENDANT:  Yes.
25             THE COURT:  Would you like for the Court to read the

1     indictment to you here now in open court?
2              THE DEFENDANT:  No, thank you.
3              THE COURT:  I am going to ask you one by one how you
4     plead to each count.
5              How do you plead, sir, to Count One, the narcotics
6     trafficking conspiracy, guilty or not guilty?
7              THE DEFENDANT:  Not guilty.
8              THE COURT:  How do you plead, sir, to Count Two, the
9     continuing criminal enterprise?
10             THE DEFENDANT:  Not guilty.
11             THE COURT:  How do you plead, sir, to count Three, the
12    computer hacking conspiracy?
13             THE DEFENDANT:  Not guilty.
14             THE COURT:  How do you plead, sir, to Count Four, the
15    money laundering conspiracy?
16             THE DEFENDANT:  Not guilty.
17             THE COURT:  You may be seated, sir.  Thank you.
18             THE DEFENDANT:  Thank you.
19             THE COURT:  Mr. Turner, tell me about the discovery in
20    this case.
21             MR. TURNER:  The discovery is voluminous, your Honor.
22    There were a number of servers seized in connection with this
23    investigation.  So we have informed defense counsel that that
24    will probably consume eight to ten terabytes, and we have asked
25    counsel to provide drives that we can copy, begin to copying

Case 1:14-cr-00068-KBF   Document 23   Filed 04/10/14   Page 5 of 19        5
E278ULBC

1    the data on to.

2              THE COURT:  Is the government ready to start copying
3    as soon as the drives are provided to you?

4              MR. TURNER:  We are, your Honor.  We have consulted
5    with defense counsel and agreed to propose a 90-day schedule
6    for discovery.  We will be able to provide the data, we expect,
7    much sooner than that, but with this sort of case there can
8    often be technical issues that are encountered, and just to
9    make sure we have adequate time to resolve those issues and
10   make sure defense has the information they need, we ask for 90
11   days to complete the discovery process.

12             THE COURT:  All right.  I interrupted you.  Apart from
13   the servers, what else is there?

14             MR. TURNER:  There is also materials seized from the
15   defendant himself on the date of his arrest, his laptop
16   computer and some other computer devices, as well as some
17   documents seized from his apartment.  And then there is also
18   subpoenaed records and bank account returns and there is e-mail
19   search warrants that were executed, other electronic account
20   search warrants that were executed.

21             So it is a voluminous set of discovery materials that
22   will take some time to compile.  We have already begun the
23   process of pulling it together, and again, we expect to provide
24   most of this data well in advance of the 90 day deadline, but I
25   just want to make sure we have an adequate cushion to make sure

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    everything is taken care of at that point.
2             THE COURT:  So you will be able to provide things on a
3    rolling basis, where some of the materials, the subpoenas, the
4    e-mails, the search warrants, you will be able to produce those
5    forthwith?
6             MR. TURNER:  Yes.  One issue, your Honor, is we have
7    to make preparations to give the defendant a computer at the
8    MCC or the MDC and sometimes that can present some issues that
9    need to be worked through.  Again, we just want to make sure we
10   have time to work out those sort of technical or logistical
11   issues, but as to the substance of the discovery, we are
12   working on compiling it and we will produce it as fast as we
13   can.
14            THE COURT:  You and Mr. Dratel and Ms. Lewis have
15   discussed providing the defendant with a laptop in at the MDC?
16            MR. TURNER:  Yes.
17            THE COURT:  And he has agreed to do that?
18            MR. TURNER:  We will make the appropriate arrangements
19   with MDC.
20            THE COURT:  That's an agreed issue between the two
21   sides.  Terrific, Mr. Turner.
22            Let me also ask, from your perspective, Mr. Turner,
23   how long do you think that the government needs to prepare the
24   case for trial?
25            MR. TURNER:  We were discussing this before the

1    conference, your Honor.  It sounds like defense counsel has a

2    number of trials that would complicate scheduling, but as far

3    as the government is concerned, we think trial would take less

4    than a month, and my only potential conflict at this point is

5    toward the end of this year I expect I may have a lengthy

6    trial.  So those are my conflicts, but I think defense counsel

7    has some other trials he is dealing with.

8              THE COURT:  What I am thinking of is November 3.

9              Mr. Dratel, why don't you describe to me, if you have

10   got sort of a sense of the discovery, of the type at least, in

11   your conversations with the government and of what is going to

12   be required in terms of your ability to review it, go through

13   it, etc., if you know of motions now as to the indictment that

14   you're thinking of or whether or not you haven't considered

15   that and whether or not on what schedule you will be able to

16   let the Court know for any other motions you might want to

17   bring.

18             MR. DRATEL:  As far as discovery, we have discussed

19   it.  I think the issue for us is probably going to be the form

20   in which we receive it.  What I mean by that is whether it's

21   static or dynamic, in the sense that whether we are going to

22   have to recreate a platform to view it in a dynamic form as

23   opposed to something that's static.  I think it may be

24   different for the server material versus the laptop material,

25   at least from our preliminary discussions.  So that's something

1     maybe we will have to address once we get the material.
2                THE COURT:  I understand.
3                MR. DRATEL:  The Court understands what I mean.
4                THE COURT:  Yes.
5           Let me just ask Mr. Turner, in terms of the eight to
6     ten terabytes for the servers, is that going to be static?
7                MR. TURNER:  It will be in a form where it will need
8     to be reconstructed, your Honor.  I expect the defense would
9     need to hire an expert to do that.
10               THE COURT:  And the laptop will be?
11               MR. TURNER:  That I think will be immediately
12    browseable or searchable.
13               THE COURT:  OK.
14          So, Mr. Dratel, you were going to get an expert on
15    board for all of this?
16               MR. DRATEL:  Yes.
17               THE COURT:  Let's assume for the moment that you have
18    got somebody.  Have you spoken to somebody about how long it
19    will take them to build the appropriate platform?
20               MR. DRATEL:  It's hard to tell because I just had the
21    conversations with Mr. Turner very recently about the nature of
22    how they are going to be provided to us.  Also, I think there
23    will probably be a number of technical questions I won't be
24    able to answer until we have the material in hand so I don't
25    know the answer to the timing issue.

1     THE COURT:  What I am wondering is, is it possible,
2  because I understand the gating factor for you to be able to
3  review it is both to get it and get it onto a platform, is it
4  possible that there is a way Mr. Dratel can look at and have an
5  expert come look at the material at the U.S. Attorney's Office
6  so that they can determine what the platform is, how to build
7  it, and can start on that front end work before, for instance,
8  if it takes you 60 days, Mr. Turner, to produce it, if they
9  have started that process then, perhaps they can get a head
10 start.
11    MR. TURNER:  I don't think that would be necessary.  I
12 think we can provide the material quite soon.  As soon as we
13 get the drives it will probably take a week to copy the
14 material and the drive.  But I think in terms of the expertise
15 involved here, it's relatively straightforward.  Anybody who
16 knows how to set up a Web site and a sequel database will be
17 able to reconstruct this without that much problem.  I don't
18 think it will take an extraordinary length of time to get it up
19 and running for the defense.
20    THE COURT:  I think I am a little bit confused why 90
21 days is necessary, because that was premised upon some thought
22 that it was going to take you a while to put everything
23 together.  If you can get the servers out in a week or two,
24 then that should greatly condense the time period that's
25 necessary.

1    MR. TURNER:  We first need to get the drives from
2  defense counsel.
3    THE COURT:  He can go down do J&R.
4    MR. TURNER:  Defense usually provides that for the
5  government.  The 90-day deadline I have in mind is in terms of
6  the timing we would reappear before the Court and defense to
7  raise the possibility of motions.
8    THE COURT:  Let's start over again.  Not in terms of
9  all over, but tell me the soonest the government can finish the
10 production.
11   MR. TURNER:  I would propose 30 days after we get the
12 drives we need from the defense.
13   THE COURT:  Let me ask Mr. Dratel and Ms. Lewis, the
14 drives aren't that hard to acquire.  Those I think can be at
15 J&R or someplace relatively accessible.  They don't have to be
16 custom ordered.  So how quickly can you get them to Mr. Turner?
17   MR. DRATEL:  Probably next week.
18   THE COURT:  Why don't we say that by the 12th of
19 February, Mr. Dratel, you will be able to get the drives to Mr.
20 Turner?
21   MR. DRATEL:  We will say the 13th.  The 12th is a
22 holiday.
23   THE COURT:  By February 13th the defendant's counsel
24 will provide Mr. Turner with a number of drives.  You will need
25 enough to capture eight to ten terabytes.  Assume ten so it

1    doesn't run into problems in terms of not having a sufficient
2    number of drives.
3             Mr. Turner, it will take you one week then to turn
4    that around?
5             MR. TURNER:  Optimally, but there could be errors in
6    the copying process.  I would ask for at least two weeks to
7    make sure that we have them right.
8             THE COURT:  Then you can tell me if you can beat the
9    one week.  I will give you two, and then if you beat the one
10   week, you let me know.
11            The 27th of February the government will provide the
12   electronic material, the eight to ten terabytes from the
13   servers.
14            How about the laptop?  You're going to put that onto a
15   different drive?
16            MR. TURNER:  That can be provided at the same time.
17            THE COURT:  So by February 27th the laptop will be
18   provided.
19            In terms of the subpoenas, the e-mails, the other what
20   I am going to call sort of more straightforward discovery, how
21   quickly can that be provided?
22            MR. TURNER:  We can do it at the same time, or if your
23   Honor would like it earlier, we can provide it by the 20th.
24            THE COURT:  The 20th for the other matters.  That way
25   there will be something that Mr. Dratel and Ms. Lewis can start

1  reviewing.  Then the production will be completed by the 27th.

2        At that point, it sounds like Mr. Dratel and Ms. Lewis

3  will then need to look at the materials, work with an expert,

4  get them appropriately reviewable in whatever form and fashion.

5        It sounds like, Mr. Dratel, from your perspective,

6  your client will be personally involved in assisting you with

7  the review.  He is going to have a laptop accessible to him?

8        MR. DRATEL:  I hope so.  That's something that's

9  clearly out of our control, obviously, in terms of how long it

10 takes MDC to do that.  I hope by the time that all of this is

11 done that will be taken care of, yes.  But that's true, your

12 Honor.

13       THE COURT:  So you folks can work on getting the

14 appropriate clearances through the MDC and you can work on

15 getting the laptop and all of the materials.  As we know from

16 past experience, you will work on getting how it's going to be

17 charged and recharged?

18       MR. DRATEL:  Yes.

19       THE COURT:  We have run into that before.  So the

20 recharging will be dealt with.  That way, when you get the

21 material, the only gating factor after the 27th of February is

22 how quickly you can get your expert to get it up and running.

23       At this point in time, do you have an estimate as to

24 length?  Mr. Turner has provided a view; he doesn't think it's

25 going to be that complicated.  I don't have any way to know one

1   way or the other how complicated or uncomplicated it is.

2          MR. DRATEL:  I don't know.  I just know that it's a
3   lot of material obviously.

4          The other issue is I don't know what the expert's time
5   frame is going to be.  I also know that we have our hands full
6   on another issue with another case at this time.  So I think,
7   just trying to scope it out, I think the additional 60 days
8   that Mr. Turner was anticipating would be for our review
9   essentially.  Hopefully we can get it done by then.

10          THE COURT:  So you will start reviewing it and getting
11  it up and running essentially right at the end of February, on
12  the 27th, and you will have March and April to get your hands
13  around it.  Why don't we set then a date at the end of April to
14  have you tell us what motions you expect to come out of that,
15  but I want to talk separately about any motions you may have to
16  the indictment.

17          Do we have something on April 30, Joe?

18          THE DEPUTY CLERK:  1:00.

19          THE COURT:  April 30 at 1 p.m.  We will then talk
20  about motions you have that may relate to the discovery.

21          Now, in terms of any motions that don't relate to the
22  discovery, as to the indictment or other matters that you know
23  of now, you may know of issues with the search or post-arrest
24  statements or something of that nature.

25          MR. DRATEL:  I don't know about the searches because

1     we need to look get the warrants and look at that material.
2              THE COURT:  I have a proposal on motions.  Are there
3     going to be any motions as to the indictment?
4              MR. DRATEL:  I think so.
5              THE COURT:  If there are, let me throw out my
6     proposal, because as to the indictment, it strikes me that we
7     ought to be able to get those going and under review in a
8     relatively straightforward way.
9              The dates that I was thinking were March 7, with the
10    government opposing March 21, and any reply on March 28.  So
11    that makes those non-discovery related motions or motion fully
12    briefed by the beginning of April.  How does that sound to you?
13             MR. DRATEL:  That sounds fine.  May I ask to kick it
14    over to the following Monday, the 10th, because February is a
15    short month and we have a lot of other issues that we will have
16    to address during February.
17             THE COURT:  That's fine.
18             MR. DRATEL:  I think that is reasonable.
19             THE COURT:  March 10.
20             The government would oppose by March 24.  Does that
21    make sense, Mr. Turner?
22             MR. TURNER:  That's fine.
23             THE COURT:  Then there would be a reply, Mr. Dratel,
24    by the 31st, March 31?
25             MR. DRATEL:  Right.  OK.

1          THE COURT:  So 3/10, 3/24, 3/31.  That would be the
2     schedule for motions as to the indictment.
3          The other motions, if you learn of them and want to
4     bring them sooner than you were scheduled to come in, you can
5     file any motions at any time.  But we will set the outside date
6     for motions on the discovery, at least those of which you can
7     reasonably be aware, at our conference on April 30.
8          Let's talk about the next piece, which is you haven't
9     seen the discovery yet, I understand that.  It sounds like it's
10    at least voluminous.  From my reading of the complaint, it
11    sounds somewhat complex, although you will form your own view.
12    I don't know if it is or if it is not complex.  I am thinking
13    that, therefore, you're going to need several months to get
14    ready, but also anticipating that you may want to put on a
15    case.  So I assumed the government was going to take about two
16    to three weeks for the government's case?
17         MR. TURNER:  That's right.
18         THE COURT:  I assume, Mr. Dratel, that I should book
19    you down for something of a couple of weeks.  I don't know what
20    you will take and who knows, but you may want to have experts
21    or something of that nature of your own.  Which is why I picked
22    November 3, because I thought that would give us a runway to
23    get it done, accounting for the fact that we will run into the
24    Thanksgiving holiday, and will want to get it done before the
25    Christmas holidays because then we lose the jury for a little

1    while.
2         MR. DRATEL:  I understand your concerns.
3         November 3 is fine with us.  I have something in
4    September that is probably a couple of weeks.
5         THE COURT:  We can go in October.
6         MR. DRATEL:  I think November is better just because
7    the other one is a multi-defendant case and I have no idea what
8    it's going to look like by the end of the day.  It's a couple
9    of homicides in it.
10        THE COURT:  I would be happy to do it in October.  For
11   me, it's just a matter of making sure I block enough time, and
12   I can actually block anything right now between October and the
13   end of the year, I think.
14        When, Mr. Dratel, would you want to do it?  You want
15   to back it up a week?
16        MR. DRATEL:  November 3 is good.
17        THE COURT:  I know your client is in custody so I am
18   sure that you want to get this done sooner rather than later.
19        We will put it down for November 3.  As you know, Mr.
20   Turner, Mr. Dratel, Ms. Lewis, I like to set hard trial dates,
21   and we will try to keep this date, understanding that you folks
22   will have to review the discovery and prepare, but we will all
23   block the appropriate time on our calendars.  We ought to block
24   four to six weeks, and at least not have another big trial that
25   you don't warn another court about that falls in that time

1    period between November 3rd and the Christmas holidays, because
2    we will be interrupted I think at least during the Thanksgiving
3    break.
4            So that being the date, November 3rd, then I had final
5    a pretrial conference for October 28.  Does that work for us?
6            THE DEPUTY CLERK:  1 p.m.
7            THE COURT:  October 28, 1 p.m.  Then we will deal with
8    the rest of the dates at another time in terms of counting our
9    way back to that.
10           Does that all sound reasonable?
11           MR. TURNER:  Yes.
12           MR. DRATEL:  Yes.
13           THE COURT:  Mr. Turner, can you tell me what the
14   potential is for a superseder is?
15           MR. TURNER:  I think the potential is good for a
16   superseder.  It won't be based on additional evidence, but we
17   may very well want to add charges to the indictment.
18           THE COURT:  Do you have any estimate right now as to
19   how long the government needs to determine whether or not,
20   based upon the information it either knows or is currently
21   developing, that it will be able to file a superseder?
22           MR. TURNER:  I actually misspoke.  I think it will
23   depend on the development of some additional evidence.  So I
24   would ask for at least 60 days, your Honor.
25           THE COURT:  We will adjust as necessary, but let's put

1    it down then for March 31 would the time that the Court would
2    hope that the government would, if it's going to file a
3    superseder to file, so that we can know if there are going to
4    be any additional motions, if there is additional discovery
5    that is necessary, whether or not it will impact the length of
6    the trial or the timing of the trial.  So we will shoot for
7    March 31.  It's not that I would have a wall come down on March
8    31, but I would hope that if it's later than March 31, that
9    you're able to tell us why it needs to be later.
10              MR. TURNER:  That sounds good, your Honor.
11              THE COURT:  Just because you have said there might be,
12   obviously there might not be, and we can talk about that at the
13   conference that's on schedule for April 30 right now.  If there
14   is a superseder, we will obviously meet again because there
15   will be another arraignment on that, and we will set that date
16   as necessary.
17              What else should we do today?
18              MR. TURNER:  We would ask for time to be excluded to
19   allow defense to review the discovery and to allow for the
20   potential discussions between the parties.
21              THE COURT:  Mr. Dratel?
22              MR. DRATEL:  No objection to the exclusion based on
23   the review of the discovery.
24              THE COURT:  The Court does find that it's in the
25   interests of justice to prospectively exclude time between

1  today's date and April 30, 2014, to allow the government to
2  provide discovery to the defendant and to allow the defendant
3  to review that discovery and determine any motions that it may
4  want to bring, and that those interests are in the interests of
5  justice and outweigh the interests of this defendant and the
6  public in a speedy trial.  So that time is prospectively
7  excluded.
8           Anything further today?
9           MR. TURNER:  No, your Honor.  Thank you.
10          MR. DRATEL:  No, your Honor.
11          THE COURT:  Thank you.  We are adjourned.
12          (Adjourned)