UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA            :            14 Cr. 68 (KBF)

          - against -                      :            (Electronically Filed)

ROSS ULBRICHT,                          :

                    Defendant.      :
-------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROSS ULBRICHT'S
PRE-TRIAL MOTIONS AIMED AT THE SUPERSEDING INDICTMENT**


JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

JOSHUA J. HOROWITZ, ESQ.
225 Broadway, Suite 1804
New York, New York 10007
(845) 667-4451

*Attorneys for Defendant Ross Ulbricht*


– Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

THE COURT SHOULD DISMISS COUNTS ONE THROUGH
FOUR OF THE SUPERSEDING INDICTMENT BECAUSE THEY
PRESENT IRRECONCILABLY INCONSISTENT THEORIES
REGARDING MR. ULBRICHT'S ALLEGED ROLE IN THE
COMMISSION OF THE CHARGED NARCOTICS OFFENSES,
THUS DEPRIVING HIM OF "FUNDAMENTAL FAIRNESS" IN THE
JUDICIAL PROCESS AND VIOLATING HIS RIGHT TO DUE PROCESS . . . . . . . . . . . . . . 3

A.    *Relevant Case Law Requires Prosecutorial Veracity and Precludes Advancement
      of Inconsistent and Irreconcilable Theories Of Liability for An Offense* . . . . . . . . . . . . . 4

B.    *A Prosecutor's Use of Inconsistent Theories of Culpability Violates Due
      Process Because It Disregards the Prosecutor's Duty to Seek Justice and Truth* . . . . . . 8

C.    *Counts One Through Four of the Superseding Indictment Should Be
      Dismissed Because the Government's Advancement of Inconsistent
      Theories Regarding Mr. Ulbricht's Alleged Role in the Charged
      Narcotics Offenses Is Improper and Denies Mr. Ulbricht Due Process* . . . . . . . . . . . . . 9

POINT II

THE COURT SHOULD COMPEL THE GOVERNMENT
TO PRODUCE ADDITIONAL PARTICULARS AS A
RESULT OF THE NEW CHARGES AND ALLEGATIONS
INTRODUCED IN THE SUPERSEDING INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

TABLE OF AUTHORITIES

CASES

*Berger v. United States*, 295 U.S. 78 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8

*Bradshaw v. Stumpf*, 125 S.Ct. 2398 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5

*Caldwell v. Mississippi,* 472 U.S. 320 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Drake v. Kemp*, 762 F.2d 1449 (11th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Giglio v. United States*, 405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Giles v. Maryland*, 386 U.S. 66 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Sakarias*, 106 P.3d 931 (Cal Sup. Ct. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Jacobs v. Scott*, 513 U.S. 1067 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miller v. Pate,* 386 U.S. 1 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mooney v. Holohan*, 294 U.S. 103 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Napue v. Illinois*, 360 U.S. 264 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. Groose*, 205 F.3d 1045 (8th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*State v. Sha*, 292 Minn. 182 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stumpf v. Houk*, 653 F.3d 426 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stumpf v. Mitchell*, 367 F.3d 594 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Thompson v. Calderon,* 120 F.3d 1045 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. D'Amico*, 734 F.Supp.2d 321 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . 7

*United States v. Kattar,* 840 F.2d 118 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*United States v. Wade*, 388 U.S. 218 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATUTES

U.S. Const. Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

U.S. Const. Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. §2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1956(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1028(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §812 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §841(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. §848(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

OTHER

§3-1.2 (c), ABA Standards for Criminal Justice, Prosecution Function (1992) . . . . . . . . . . 1, 8

§97(3), Restatement (Third) of the Law Governing Lawyers(2000) . . . . . . . . . . . . . . . . . . . . . . 8

Anne Bowen Poulin, *Prosecutorial Inconsistency, Estoppel, and Due Process:*
    *Making the Prosecution Get Its Story Straight*, 89 CAL. L. REV. 1423 (2001) . . . . . . . . 6

Bennett L. Gershman, *The Prosecutor's Duty to the Truth,*
    14 GEO. J. LEGAL ETHICS 309 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bruce A. Green, *Why Should Prosecutor's "Seek Justice,"*
    26 Fordham Urb. L.J. 607, 612 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

EC 7-13, ABA Model Code of Professional Responsibility (1981) . . . . . . . . . . . . . . . . . . . 8

Rule 1.6, ABA Model Rules of Professional Conduct,(2003) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 1.6, N.Y.S. R. Prof. Conduct (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 3.8, Comment 1, ABA Model Rules of Professional Conduct (2003) . . . . . . . . . . 1, 8, 9, 10

Rule 3.8, Comment 1, New York State
        Rules of Professional Conduct R. Prof. Conduct (2009) . . . . . . . . . . . . . . . . . . . 1, 8, 9, 10

## Introduction

This Memorandum of Law is submitted on behalf of defendant Ross Ulbricht, and in support of his pre-trial motions aimed at the Superseding Indictment (Dkt #52)  (1)  to dismiss Counts One through Four of the Superseding Indictment because those Counts present inconsistent and irreconcilable theories as to Mr. Ulbricht's alleged role in the commission of the charged narcotics offenses, thus depriving Mr. Ulbricht of "fundamental fairness" in the judicial process and violating his Sixth Amendment due process rights;  (2)  for additional particulars in relation to the new charges and allegations set forth in the Superseding Indictment;  and (3)  for any such other and further relief Mr. Ulbricht is entitled to based on his prior pre-trial motions challenging the face of the Indictment (Dkt #26) and to suppress certain evidence, to strike surplusage from the Indictment, and for discovery, a Bill of Particulars, and exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny (Dkt #48), all of which, along with their accompanying Declarations and the relevant portions of their statements of facts, are incorporated by reference herein.

By charging Mr. Ulbricht in Count Four as a drug "kingpin," but alleging in Counts One through Three that he could have violated U.S. narcotics laws by merely *aiding and abetting* the conduct of others, the government alleges theories that are entirely inconsistent and irreconcilable.  In so doing, the prosecution shirks it "Special Responsibilities" mandated by the ABA Model Rules and New York State Rules of Professional Conduct, to serve as  "minister[s] of justice and not simply . . . advocate[s]" and its "duty . . . to seek justice, not merely to convict."  *See also* ABA Standards for Criminal Justice, Prosecution Function §3-1.2 (c) (1992).

Not only do flip-flopping of theories offend the ethical mandates imposed on prosecutors

1

to seek justice and truth, and to ensure that a defendant's rights are protected, but courts, in analogous cases, have repeatedly condemned the advancement of inconsistent, irreconcilable theories on the basis that they violate the Due Process Clause's guarantee of "fundamental fairness" in criminal prosecutions.

Accordingly, the Court should grant Mr. Ulbricht's pre-trial motions in their entirety.

### Statement of Facts

A Superseding Indictment was returned against Mr. Ulbricht August 21, 2014. In addition to reordering and renumbering many of the counts, the Superseding Indictment added three new counts, not part of the initial Indictment, to the charges against Mr. Ulbricht: Distribution and Possession with Intent to Distribute Controlled Substances and Aiding and Abetting such Distribution and Possession with Intent to Distribute, in violation of 21 U.S.C. §§812, 841(a)(1) and (b)(1)(A), and 18 U.S.C. §2 (Count One); Distribution of Narcotics By Means of the Internet and Aiding and Abetting Such Activity, in violation of 21 U.S.C. §§812, 841(h) and (b)(1)(A) (Count Two); and Conspiracy to Traffic and to Aid and Abet Trafficking in Fraudulent Identification Documents, in violation of 18 U.S.C. §1028(f) (Count Six).

The Superseding Indictment also modified each of the initial charges – with the exceptions of Count Four (previously Count Two), which charges Mr. Ulbricht with a Continuing Criminal Enterprise, in violation of 21 U.S.C. §848(a), and Count Seven (previously Count Four), which charges Mr. Ulbricht with a Money Laundering Conspiracy, in violation of 18 U.S.C. §1956(h) – to include an allegation that Mr. Ulbricht *aided and abetted* in the commission of the crime charged. *See* Superseding Indictment at ¶¶ 5, 8, 13, 15, 21, 22, 25 & 26.

2

Also, the Superseding Indictment, which like the initial Indictment does *not* charge Mr.

Ulbricht with any murder or "murder for hire" plot, contains new language referring in vague

terms to alleged payments by Mr. Ulbricht to a Silk Road user ("User-1") to murder another Silk

Road user ("User-2") and "four additional persons" who the government alleges Mr. Ulbricht

"believed were associated with User-2." *See id*., at ¶16 (b) & (c).

## ARGUMENT

### POINT I

**THE COURT SHOULD DISMISS COUNTS ONE THROUGH
FOUR OF THE SUPERSEDING INDICTMENT BECAUSE THEY
PRESENT IRRECONCILABLY INCONSISTENT THEORIES
REGARDING MR. ULBRICHT'S ALLEGED ROLE IN THE
COMMISSION OF THE CHARGED NARCOTICS OFFENSES,
THUS DEPRIVING HIM OF "FUNDAMENTAL FAIRNESS" IN THE
JUDICIAL PROCESS AND VIOLATING HIS RIGHT TO DUE PROCESS**

As set forth **ante**, Counts One through Four of the Superseding Indictment charge Mr.

Ulbricht with violating the narcotics laws of the United States through his alleged connection to

the Silk Road website on the basis that he was *either* a drug "kingpin," as alleged in Count Four

(which charges Mr. Ulbricht with operating a Continuing Criminal Enterprise, in violation of 21

U.S.C. §848(a)), or merely aiding and abetting others in violating the narcotics laws, which the

government presents as a theory of liability for the offenses charged in Counts One, Two and

Three.

However, as the ensuing discussion of ethical standards and case law demonstrates, by

positing inconsistent theories regarding Mr. Ulbricht's alleged role in the commission of the

charged narcotics offenses, and thus taking a position antithetical to the truth-seeking process,

the government fails to adhere to the basic tenets of fundamental fairness in the judicial process,

and thereby deprives Mr. Ulbricht of due process.

Indeed, as detailed below, prosecutors have a unique role in the judicial process. They represent the interests of the sovereign, and thus, have a heightened responsibility to ensure that fairness is achieved and a defendant's due process rights are protected. That objective cannot be accomplished when prosecutorial veracity is ignored.  Both case law and ethical mandates thus provide a measure for determining appropriate lines of fairness.

Accordingly, since the government has crossed those lines of judicial fairness by presenting irreconcilably inconsistent theories regarding Mr. Ulbricht's alleged commission of the offenses charged in Counts One through Four, and thus violating his Fifth Amendment right to due process, the Court should dismiss Counts One through Four of the Indictment.  In the alternative, the Court should Order the prosecution to elect between theories (and also therefore the charges).

A.      *Relevant Case Law Requires Prosecutorial Veracity and Precludes Advancement of Inconsistent and Irreconcilable Theories Of Liability for An Offense*

Prosecutors serve a unique role in assuring that an accused receives "fair play and decency" in the judicial process.  As opposed to being "an ordinary party to a controversy," it is the prosecutor who serves as a critical "representative" of the "sovereignty," which has the "obligation to govern impartially" and "is in a peculiar and very definite sense the servant of the law." *Berger v. United States*, 295 U.S. 78, 88 (1935).  As the Court explained in *Berger*, "[i]n a criminal prosecution," the prosecutor's role "is not that it shall win a case, but that justice shall be done." *Id.*

Thus, the Court added, "[i]t is as much his [or her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is *to use every legitimate means to bring about*

4

*a just one*." *Id.* (emphasis added). *See also United States v. Wade*, 388 U.S. 218, 256 (1967) (White J., concurring) ("[l]aw enforcement officers have the obligation to convict the guilty and make sure they do not convict the innocent").

The Supreme Court has recognized an array of improper prosecutorial conduct as depriving a defendant of "fundamental fairness" in the criminal process. *See e.g, Mooney v. Holohan*, 294 U.S. 103 (1935) (presenting knowingly false testimony violates due process); *Giglio v. United States*, 405 U.S. 150 (1972) (failing to correct false testimony violates due process); *Napue v. Illinois*, 360 U.S. 264 (1959) (failing to correct testimony that creates a false impression, though not perjured, violates due process).

This limitation on prosecutors demonstrates a clear recognition that "fundamental fairness" cannot be achieved when a prosecutor fails to offer reliable evidence, or makes statements that misrepresent the truth. Consequently, the reliability of a conviction cannot be assured when a prosecutor engages in conduct that is antithetical to a truthful process.

Indeed, the truthfulness of the process is of the utmost importance even when a specific prosecutor acts in good faith. *Id.* at 153. As the Supreme Court declared in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."

The importance of prosecutorial veracity, as a core value encompassed within due process, is also demonstrated in Supreme Court decisions that hold that a prosecutor's improper argument can violate the due process rights of a defendant. *See, e.g., Miller v. Pate,* 386 U.S. 1 (1967) (finding that a deliberate misrepresentation of truth to a jury is a violation of due

process); *Caldwell v. Mississippi,* 472 U.S. 320 (1985) (finding an uncorrected, misleading statement of law to a jury a violation of due process).  *See generally* Anne Bowen Poulin, *Prosecutorial Inconsistency, Estoppel, and Due Process: Making the Prosecution Get Its Story Straight*, 89 CAL. L. REV. 1423 (2001).

Collectively, the improper prosecutorial argument and false testimony decisions of the Supreme Court establish that inconsistent statements by a prosecutor likewise demean the reliability of the judicial process.

Accordingly, mutually exclusive prosecutorial theories advanced against a single defendant in a single trial are every bit as much of a threat to the "fundamental fairness" of the criminal process as false testimony, and are, essentially, tantamount to improper argument and the introduction of false evidence.

Indeed, the doctrine that a prosecutor's advancement of inconsistent irreconcilable theories denies due process has been endorsed by multiple circuits and jurisdictions, *see Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004) (discussing sister circuits that have held irreconcilable theories or similar conduct a violation of due process), and has been addressed by the Supreme Court, albeit in the context of irreconcilable theories advanced against different defendants in successive trials.  *Bradshaw v. Stumpf*, 125 S.Ct. 2398 (2005) (remanding to Sixth Circuit to determine if imposition of the death penalty violated due process when prosecutor argued Defendant "A"was shooter in trial of that defendant, but that Defendant "B" was the shooter in a subsequent trial of Defendant "B");  *Stumpf v. Houk*, 653 F.3d 426 (6th Cir. 2011) (on remand)(state's pursuit of conflicting convictions by trying petitioner and co-defendant as principals for same murder deprived defendant of due process at sentencing);  *In re Sakarias*,

6

106 P.3d 931, 944 (Cal Sup. Ct. 2005) ("use of irreconcilable theories of . . . culpability,

unjustified by a good faith justification for the inconsistency, is fundamentally unfair");

*Thompson v. Calderon,* 120 F.3d 1045, 1059 (9th Cir.1997) (when no new significant evidence

comes to light, a prosecutor cannot offer inconsistent theories and facts regarding the same crime

in order to convict two defendants at separate trials);  *Smith v. Groose*, 205 F.3d 1045, 1052,

1054 (8th Cir.2000) (holding that "the Due Process Clause's guarantee of fundamental fairness

prohibits prosecutors from putting forth inherently factually contradictory theories");  *Drake v.

Kemp*, 762 F.2d 1449, 1479 (11th Cir.1985);  *United States v. D'Amico*, 734 F.Supp.2d 321, 355

(S.D.N.Y. 2010)(J. McMahon), *quoting Smith*, 205 F.3d at 1052 ("[i]f one thing is clear from the

cases finding that the use of inconsistent prosecutorial theories violates due process, it is that the

government's theories must be 'inherently factually contradictory,' such that they are

'irreconcilable'").  *See also Jacobs v. Scott*, 513 U.S. 1067, 115 S.Ct. 711, 712 (1995) (Stevens,

J., concurring) ("for a sovereign State represented by the same lawyer to take flatly inconsistent

positions in two different cases . . . surely raises a serious question of prosecutorial

misconduct").

        Thus, multiple courts have concluded that " flip[-]flopping of theories of the offense [i]s

inherently unfair[,]" and that in doing so the "prosecutor violate[s] the fundamental fairness

essential to the very concept of justice."  *Thompson v. Calderon,* 120 F.3d at 1059, *quoting

Drake*, 762 F.2d at 1479 (Clark, J., concurring).

        At Justice Clark explained in *Drake v. Kemp*, 762 F.2d at 1479, and endorsed by the

Ninth Circuit in *Thompson v. Calderon,* 120 F.3d at 1059, at their very core, "[s]uch actions

reduce criminal trials to mere gamesmanship and rob them of their supposed search for the

truth."

**B.**    *A Prosecutor's Use of Inconsistent Theories of Culpability Violates Due Process Because It Disregards the Prosecutor's Duty to Seek Justice and Truth*

As set forth in Rule 3.8, Comment 1, to both the ABA Model Rules of Professional Conduct, Special Responsibilities of a Prosecutor (2003), and the New York State Rules of Professional Conduct R. Prof. Conduct (2009) "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate."   *See also* ABA Standards for Criminal Justice, Prosecution Function §3-1.2 (c) (1992) ("[t]he duty of the prosecutor is to seek justice, not merely to convict").   This prosecutorial duty is founded in both ethical[1] and legal standards.

At its core, the standard is based on a prosecutor's status as a representative of the sovereign whose obligation it is to govern impartially.  *Berger v. U.S.,* 295 U.S. 78, 88 (1935). As a representative of the sovereign, the prosecutor has a duty to "use restraint" and prosecute cases fairly.  *See* ABA Model Code of Professional Responsibility EC 7-13 (1981). [2]

Thus, prosecutors, as "ministers of justice," have the obligation to seek truth.  *See United States v. Kattar,* 840 F.2d 118, 127 (1st Cir. 1988) (holding that a criminal prosecutor's function "is not merely to prosecute crimes, but also to make certain that the truth is honored to the fullest extent possible during the course of the criminal prosecution and trial").  As the Court pointed

---

[1]  The prosecutor's duty to "seek justice" is well grounded in legal literature. *See* Bruce A. Green, *Why Should Prosecutor's "Seek Justice,"* 26 Fordham Urb. L.J. 607, 612 (1999) (providing a historical outline of the prosecutor's duty to "seek justice");  Bennett L. Gershman, *The Prosecutor's Duty to the Truth,* 14 GEO. J. LEGAL ETHICS 309 (2001).

[2]  Unlike lawyers in private practice, "a prosecutor or similar lawyer determining whether to file criminal proceedings or take other steps in such proceedings, must do so only when based on probable cause and the lawyer's belief, formed after due investigation, that there are good factual and legal grounds to support the step taken."  Restatement (Third) of the Law Governing Lawyers §97(3) (2000).

out in *Giles v. Maryland*, 386 U.S. 66, 98 (1967) (Fortas, J. concurring), "[t]he State's obligation is not to convict, but to see that, so far as possible, truth emerges.  This is also the ultimate statement of its responsibility to provide a fair trial under the Due Process Clause of the Fourteenth Amendment."  *See also State v. Sha*, 292 Minn. 182, 185 (1972) (regardless of the evidence against the accused, a prosecutor has an overriding duty of fairness).

Indeed, prosecutors have obligations *beyond* those of most lawyers.  Unlike defense counsel, who may have obligations of confidentiality to a client, (*see* Rule 1.6, ABA Model Rules of Professional Conduct,(2003); Rule 1.6, N.Y.S. R. Prof. Conduct (2009)**,** and constitutional mandates that are provided to an accused, the prosecutor serves as the representative of the sovereign, and as a result his or her duty is to "see that the defendant is accorded procedural justice[,]" and to ensure that convictions "are decided upon the basis of sufficient evidence."  ABA Model Rules of Professional Conduct, Rule 3.8, Comment 1 (2003). *See also* Rule 3.8, Comment 1, N.Y.S. R. Prof. Conduct (2009).

**C.**      ***Counts One Through Four of the Superseding Indictment Should Be Dismissed Because the Government's Advancement of  Inconsistent Theories Regarding Mr. Ulbricht's Alleged Role in the Charged Narcotics Offenses Is Improper and Denies Mr. Ulbricht Due Process***

The government's advancement in the Superseding Indictment of inconsistent theories regarding Mr. Ulbricht's alleged role in the narcotics offenses – *either* that he was a drug "kingpin" or a mere aider and abettor – defies the mandate to "do justice."  Rather, the government's assertion of these conflicting theories – which when placed next to one another are logically, legally, and factually entirely irreconcilable –  threatens the concept of fundamental fairness, which is the bedrock of our justice system, and serves only to "reduce[s] [Mr.Ulbricht's] criminal trial[] to mere gamesmanship and [to] rob [it] of [its] supposed search

9

for the truth." *Thompson,* 120 F.3d at 1059, *quoting Drake*, 762 F.2d at 1479 (Clark, J., concurring).

Indeed, while it is an issue of first impression whether arguing inconsistent, irreconcilable theories of liability against a single defendant in a single trial denies Due Process, as discussed **ante**, *multiple* circuit courts have held that "the use of inconsistent, irreconcilable theories to convict two defendants for the same crime is a due process violation." *Stumpf*, 367 F.3d at 611.

The rationale for a due process violation is not any different when the government argues inconsistent, irreconcilable theories to convict a single defendant in a single trial.  That the government's "duty to its citizens does not allow it to pursue as many convictions as possible without regard to fairness and the search for truth[,]" *Smith*, 205 F.3d at 1051, applies equally in both circumstances.  *See also id*., at 1053 ("[n]either the due process requirement that the government prosecute fairly in a search for truth nor the prosecutor's role in such a prosecution constitutes a new rule of law").

A prosecutor's obligation, from an ethical perspective, to seek justice and truth, is also identical in both circumstances.  Regardless of whether a prosecutor is seeking to obtain multiple convictions against multiple defendants in multiple trials, or a multiple convictions against a single defendant in a single trial, he or she is still bound, as "a minister of justice," and by the duty "to make certain that the truth is honored to the fullest extent possible during the course of the criminal prosecution and trial[,]" and, further, to ensure that a defendant's rights are protected.  *See Kattar,* 840 F.2d at 127;  ABA Model Rules of Professional Conduct, Rule 3.8, Comment 1 (2003);  Rule 3.8, Comment 1, N.Y.S. R. Prof. Conduct (2009)..

Accordingly, from both a legal and an ethical perspective, the government's advancement of inconsistent and irreconcilable theories regarding Mr. Ulbricht's alleged role in the narcotics offenses is improper.  The Court should therefore dismiss the offensive Counts One through Four because they deny Mr. Ulbricht due process and deprive him of fundamental fairness in the judicial process or, in the alternative, require the government to choose between theories, and therefore elect those counts on which they wish to proceed.

## POINT II

### THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE ADDITIONAL PARTICULARS AS A RESULT OF THE NEW CHARGES AND ALLEGATIONS INTRODUCED IN THE SUPERSEDING INDICTMENT

Mr. Ulbricht herein requests that the Court compel the government to produce additional particulars as to (1) the new charges set forth in the Superseding Indictment (Counts One, Two and Six); (2)  new allegations, in ¶16 (b) & (c) of the Superseding Indictment, that Mr. Ulbricht made payments to a Silk Road user ("User-1") to murder another Silk Road user ("User-2") and "four additional persons" who the government alleges Mr. Ulbricht "believed were associated with User-2;" and (3) the manner in which Mr. Ulbricht is alleged to have "aided and abetted" in the conduct charged in Counts Three and Five (previously Counts One and Three, respectively), which the government did not include as a potential theory of liability on these counts in the initial Indictment.

Mr. Ulbricht has already explained at length in his initial motion to compel the government to produce a Bill of Particulars (Dkt #48) (POINT III), as well as in his recent reply to the government's response to that motion (Dkt #69) (POINT III), the necessity for a Bill of Particulars in his case, and incorporates those points by reference.

11

Indeed, as with his previously requested particulars, without further elucidation of the generic descriptions of the new charges and allegations against him in the Superseding Indictment, Mr. Ulbricht will be unable to prepare his defense.

Accordingly, the Court should compel the government to provide the following particulars:

1.    With respect to Count One, ¶ 1, please identify:

    a.    "users across the world" by name, Silk Road username, any other identifier, and location; and

    b.    the specific nature of the "other illicit goods and services."

2.    With respect to Count One, ¶ 2, please identify:

    a.    the specific dates upon which Mr. Ulbricht is alleged to have "owned" the Silk Road website;

    b.    the specific dates upon which Mr. Ulbricht is alleged to have "operated" the Silk Road website ; and

    c.    by name, Silk Road username, location, any other identifier, and item(s) distributed, the "several thousand drug dealers and other unlawful vendors."

3.    With respect to Count One, ¶ 3, please identify:

    a.    by name, Silk Road username, any other identifier, and role the "various paid employees" Mr. Ulbricht is alleged to have "managed and supervised" as well as the amounts, frequency, nature and dates of payment;

      b.      the type of "assistance" each of these "paid employees" allegedly provided;

      c.      the "aspects of Silk Road" Mr. Ulbricht is alleged to have "controlled;" and

      d.      the nature and amount of the "commissions" Mr. Ulbricht is alleged to have "reaped" from the "illicit sales conducted through the site" and the specific "illicit sale," including date, time and location, that each "commission" was for.

4.      With respect to Count One, ¶ 4, please identify:

      a.      each of the "violent means" Mr. Ulbricht is alleged to have "pursued" by date, time, location and nature of the conduct;

      b.      the date, time, location and nature of any alleged "solicitat[ations]" to execute a "murder-for-hire;"

      c.      by name, Silk Road username if applicable, and any other identifier, the "several individuals" Mr. Ulbricht allegedly "solicit[ed] the murder-for-hire" of; and

      d.      the nature of the "threat" each of these individuals allegedly posed.

5.      With respect to Count One, ¶ 5, please identify:

      a.      all locations encompassed by the term "elsewhere;"

      b.      the nature of the "controlled substances" Mr. Ulbricht allegedly "distributed;"

      c.      the nature of the "controlled substances" Mr. Ulbricht allegedly

"possessed;"

d.     by date, time, location and means, each instance upon which Mr. Ulbricht

allegedly "distributed controlled substances;"

e.     by date, time, location and means, each instance upon which Mr. Ulbricht

allegedly "possessed with intent to distribute controlled substances;"

f.     the precise manner in which Mr. Ulbricht allegedly "aided and abetted

such distribution and possession with intent to distribute;" and

g.     by name, Silk Road username if applicable, and any other identifier, the

person(s) Mr. Ulbricht is alleged to have "aided and abetted."

6.     With respect to Count One, ¶ 6, please identify the "others" by nature of

controlled substance and volume.

7.     With respect to Count Two, ¶ 8, please identify:

a.     all locations encompassed by the term "elsewhere;"

b.     the nature of the "controlled substances" Mr. Ulbricht allegedly

"distributed," "delivered," and "dispensed;"

c.     by date, time, and location and nature, each instance upon which Mr.

Ulbricht allegedly "distributed," "delivered," and "dispensed" controlled

substances;"

d.     the precise manner in which Mr. Ulbricht allegedly committed the charged

conduct "by means of the Internet;"

e.     the precise manner in which Mr. Ulbricht allegedly "aided and abetted

such activity;" and

14

     f.     by name, Silk Road username if applicable, and any other identifier, the person(s) Mr. Ulbricht is alleged to have "aided and abetted."

8.     With respect to Count Two, ¶ 9, please identify the "others" by nature of controlled substance and volume.

9.     With respect to Count Three, ¶ 13, please identify:

     a.     the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted]" in the conspiracy to "deliver, distribute and dispense controlled substances by means of the internet;"  and

     b.     by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

10.     With respect to Count Three, ¶ 15, please identify:

     a.     the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted] such activity;" and

     b.     by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

11.     With respect to Count Three, ¶ 16(b), please identify:

     a.     the specific date, time, location, and manner in which Mr. Ulbricht allegedly "paid a Silk Road user ('User-1') approximately $150,000;"

     b.     "User-1" by name, Silk Road user name, and any other identifier; and

     c.     "User-2" by name, Silk Road user name, and any other identifier.

12.     With respect to Count Three, ¶ 16(c), please identify:

     a.     the specific date, time, location, and manner in which Mr. Ulbricht

allegedly "paid User-1 approximately $500,000;"

    b.    the "four additional persons" by name, Silk Road user name, and any other identifier;

    c.    the basis upon which Mr. Ulbricht is alleged to have "believed" the "four additional persons . . . were associated with User-2;" and

    d.    the nature of the alleged association between "User-2" and the "four additional persons."

13.    With respect to Count Five, ¶ 21, please identify:

    a.    the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted]" the conspiracy "to commit computer hacking;" and

    b.    by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

14.    With respect to Count Five, ¶ 22, please identify:

    a.    the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted] such unauthorized access;" and

    b.    by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

15.    With respect to Count Six, ¶ 24, please identify:

    a.    the precise type and quantity of each of the "fraudulent identification documents" that the Silk Road website allegedly "provided a platform for the purchase and sale of;"

    b.    the specific details including date, time, location, participants, and type of

"fraudulent identification document" involved in each "purchase and sale" alleged to constitute a violation pursuant to Count Six; and

    c.    the nature of the "platform" provided.

16.    With respect to Count Six, ¶ 25, please identify:

    a.    all locations encompassed by the term "elsewhere;"

    b.    the date on which it is alleged that Mr. Ulbricht first became a member of the conspiracy charged in Count Six;

    c.    the "others" by name, Silk Road username, any other identifier and location;

    d.    by date, time, location and nature, any specific acts performed by Mr. Ulbricht in furtherance of the conspiracy charged in Count Six;

    e.    the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted]" the "traffick[ing] in fraudulent identification documents;" and

    f.    by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

17.    With respect to Count Six, ¶ 26, please identify:

    a.    the "others" by name, Silk Road username, any other identifier and location;

    b.    the time, date and location(s) of any alleged "transfer" of "false identification documents;"

    c.    the time, date and location(s) of any alleged "transfer" of "authentication features;"

d.      the specific nature and quantity of the "authentication features;"

e.      the specific nature and quantity of the "documents that appeared to be issued by and under the authority of the United States" and the manner in which they appeared to be issued by and under the authority of the United States;"

f.      the precise manner in which Mr. Ulbricht allegedly "aid[ed] and abet[ted]" in the"transfer" of "false identification documents and authentication features;" and

g.      by name, Silk Road username if applicable, and any other identifier, any person(s) Mr. Ulbricht is alleged to have "aid[ed] and abet[ted]."

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court grant in their entirety Mr. Ulbricht's pre-trial motions aimed at the Superseding Indictment (1) to dismiss Counts One through Four of the Superseding Indictment because those Counts present inconsistent, irreconcilable theories as to Mr. Ulbricht's alleged role in the commission of the charged narcotics offenses; (2) for additional particulars in relation to the new charges set forth in the Superseding Indictment; and (3) for any such other and further relief Mr. Ulbricht is entitled to based on his prior pre-trial motions.

Dated: 2 October 2014
     New York, New York

                                Respectfully submitted,

                                /S/ Joshua L. Dratel

18

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

Joshua J. Horowitz
225 Broadway, Suite 1804
New York, New York 10007
(845) 667-4451

*Attorneys for Defendant Ross Ulbricht*

– Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis

19