UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA        :           14 Cr. 68 (KBF)

        - against -         :           (Electronically Filed)

ROSS ULBRICHT,           :

                Defendant.   :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANT ROSS ULBRICHT'S MOTIONS *IN LIMINE*</u>

JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

JOSHUA J. HOROWITZ, ESQ.
225 Broadway, Suite 1804
New York, New York 10007
(845) 667-4451

*Attorneys for Defendant Ross Ulbricht*

  – Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis
Whitney G. Schlimbach

TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

POINT I

CERTAIN GOVERNMENT EXHIBITS SHOULD BE
PRECLUDED BECAUSE THEY CONSTITUTE
INADMISSIBLE HEARSAY, AND/OR DO NOT QUALIFY
AS CO-CONSPIRATOR STATEMENTS OR UNDER ANY
OTHER HEARSAY EXCEPTION, BECAUSE EVIDENCE
OF HUNDREDS OF THOUSANDS OF TRANSACTIONS
BETWEEN THOUSANDS OF ANONYMOUS USERS OF
THE SILK ROAD WEB SITE AT MOST ESTABLISHES
MULTIPLE DISCRETE CONSPIRACIES, RATHER THAN THE
SINGLE UNITARY CONSPIRACY CHARGED IN THE INDICTMENT . . . . . . . . . . . . . . . . . 3

A.    *As a Threshold Matter, Venue Has Not Been Established In the Southern*
      *District of New York for the Multiple Conspiracies Alleged Against Mr. Ulbricht.* . . . . . 4

B.    *The Conduct Alleged Does Not Fall Within the Scope of the Single Charged Conspiracy*
      *and Is Thus Inadmissible As Irrelevant Pursuant to Rules 401 and 402.* . . . . . . . . . . . . . . 6

C.    *The Admission of the Evidence and Government Exhibits Would Be*
      *Unfairly Prejudicial to Mr. Ulbricht, Pursuant to Rule 403, Fed.R.Evid..* . . . . . . . . . . . 7

POINT II

ANY AND ALL EVIDENCE AND/OR REFERENCES
TO THE "MURDER-FOR-HIRE" ALLEGATIONS
SHOULD BE PRECLUDED AT TRIAL, AND ANY
AND ALL SUCH LANGUAGE SHOULD BE STRICKEN
FROM THE SUPERSEDING INDICTMENT, BECAUSE
THEY ARE NOT RELEVANT TO THE CHARGED OFFENSES
AND/OR, UNDER RULE 403, FED.R.EVID., THEIR UNFAIR

PREJUDICIAL EFFECT SUBSTANTIALLY OUTWEIGHS
ANY PROBATIVE VALUE THEY MIGHT POSSESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.     *The Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.     *Any and All References to the "Murder-For-Hire" Allegations Should Be
        Precluded At Trial, And Stricken from the Superseding Indictment As Surplusage,
        Because They Are Irrelevant to the Charged Offenses and Unduly Prejudicial.* . . . . . . . 11

        1.     *The "Murder-For-Hire" Allegations Should Be
                Excluded Because They Are Irrelevant to the Charges.* . . . . . . . . . . . . . . . . . . . . 12
        2.     *The "Murder-For-Hire" Allegations Should Be Excluded
                Because They Are Unduly Prejudicial Pursuant to
                Rule 403, Fed.R.Evid., As Any Probative Value Is Vastly
                Outweighed by Their Extraordinary Danger of Unfair Prejudice.* . . . . . . . . . . . 14

POINT III

CERTAIN GOVERNMENT EXHIBITS SHOULD
BE PRECLUDED BECAUSE THEY ARE NOT
SUFFICIENTLY AUTHENTICATED PURSUANT
TO RULE 901, FED.R.EVID., AND RECENT CASE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.     *The Applicable Law Regarding Authentication Under Rule 901.* . . . . . . . . . . . . . . . . 16

B.     *The Facts and Opinion In* Vayner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.     Vayner*'s Application to the Government's Proposed Exhibits In This Case.* . . . . . . . . . 20

POINT IV

CERTAIN EVIDENCE AND GOVERNMENT EXHIBITS
ALLEGING PURCHASE OF FALSE IDENTIFICATION
DOCUMENTS SHOULD BE PRECLUDED BECAUSE THEY ARE
NOT REASONABLY DEMONSTRATIVE OF "CONSCIOUSNESS
OF GUILT," AND/OR THEIR PROBATIVE VALUE, IF ANY,
IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF
UNFAIR PREJUDICE TO MR. ULBRICHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

A.     *The Law Applicable to Admissibility of "Consciousness of Guilt" Evidence.* . . . . . . . . 21

B.     *Mr. Ulbricht's Alleged Purchase of False Identification
        Documents from the Silk Road Web Site Is Insufficient to*

*Reasonably Infer His Consciousness of Guilt of the Crimes Charged.* . . . . . . . . . . . . . 23

C.    *Alternatively, Evidence of the Alleged Ordering of False Identification Documents Must Be Excluded Under Rule 403 As Substantially More Prejudicial Than Probative.* . . . . . 24

████████

████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████ . . . . . . . . . . . ██

██    ██████████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . ██

██    ████████████████████████████████████ . . . . . . . . . . . ██

██    ██████████████████████████████████████████
████████████████████████████████████████████████████ . . ██

██    ████████████████████████████████
████████████████████████████████████
████████████████████████████████████ . . . . . . . . . . . . . ██

POINT VI

OTHER OBJECTIONS TO THE GOVERNMENT'S
PROPOSED EXHIBITS NOT COVERED ABOVE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

## CASES

██████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██████

██████████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██████

██████████████████████████████████████████ . . . . . . . . . ██

████████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

*Griffin v. State,* 419 Md. 343, 19 A.3d 415 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

██████████████████████████████████ . . . . . . . . . . . . . . . . . . . . . . ██

*Old Chief v. United States,* 519 U.S. 172 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sun v. United States,* 371 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Travis v. United States,* 364 U.S. 631 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Ahmed,* 2011 WL 5041456 (S.D.N.Y. Oct. 21, 2011) . . . . . . . . . . . . . . . . . . . 11

*United States v. Al-Sadawi,* 432 F.3d 419 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 2, 22-23

*United States v. Amuso,* 21 F.3d 1251 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 21, 22, 24

*United States v. Auernheimer,* 748 F.3d 525 (3d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Bagaric,* 706 F.2d 42 (2d Cir.1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Beahm,* 664 F.2d 414 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181 (2d Cir. 1989) . . . . . . . . . . . . . . 4, 6

*United States v. Cassese,* 428 F.3d 92 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

██████████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██████

*United States v. Dhinsa,* 243 F.3d 635 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Figueroa,* 618 F.2d 934 (2d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gagliardi,* 506 F.3d 140 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

*United States v. Hernandez-Bermudez,* 857 F.2d 50 (1st Cir. 1988). . . . . . . . . . . . . . . . . . . . . . 21

*United States v. LaSpina,* 299 F.3d 165 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Johansen,* 56 F.3d 347 (2d Cir. 1995), *as amended* (May 11, 1995). . . . . . . . . 4

*United States v. Johnson,* 323 U.S. 273 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

*United States v. Maldonado–Rivera,* 922 F.2d 934 (2d Cir.1990). . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Martino,* 664 F.2d 860 (2d Cir.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Mulder,* 273 F.3d 91 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Myers,* 550 F.2d 1036 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

*United States v. Persico,* 621 F. Supp. 842 (S.D.N.Y. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Pluta,* 176 F.3d 43 (2d Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Rahman,* 870 F. Supp. 47 (S.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*United States v. Reed,* 773 F.2d 477 (2d Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Reid,* 475 F. App'x 385 (2d Cir. 2012) *cert. denied sub nom.*
  *Christie v. United States,* 133 S. Ct. 914, 184 L. Ed. 2d 702 (2013). . . . . . . . . . . . . . . . . 3

████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

*United States v. Robinson,* 475 F.2d 376 (D.C. Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*United States v. Royer*, 549 F.3d 886 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Salinas,* 373 F.3d 161 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sanchez*, 790 F.2d 245 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Sliker,* 751 F.2d 477 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

███████████████████████████████████████ . . . . . . . . . . . . . . . . ██

*United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Tin Yat Chin*, 371 F.3d 31 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

███████████████████████████████████████ . . . . . . . . . . . . . . . . ██

*United States v. Tropeano*, 252 F.3d 653 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Tzolov,* 642 F.3d 314 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*United States v. Valle*, 301 F.R.D. 53 (S.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16-20

█████████████████████████████████████ . . . . . . . . . . . . . . . . . . . ██

*Williams v. New York*, 337 U.S. 241 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

### STATUTES

U.S. Const., Article III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S. Const. Amend. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

███████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

U.S. Const. Amend. XI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

███████████. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

18 U.S.C. §3237.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rule 401, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10-12, 31

Rule 402, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 10-12, 31

Rule 403, Fed.R.Evid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7-11, 14, 21, 24

Rule 901, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

Rule 902, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

████████████████. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ██

Rule 7(d), Fed.R.Crim.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Rule 18, Fed.R.Crim.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rule 29, Fed.R.Crim.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

███████

████████████████████████████████████

██████████████████████████████

███████████████████████████████████

████████████████████████████████. . . . . . . . . . . . . . . . ██

## Introduction

This Memorandum of Law is submitted in support of defendant Ross Ulbricht's motions *in limine*, as well as, in some respects relatedly, in support of his objections to specific proposed Government Exhibits at trial. ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████.

The motions *in limine* can be summarized as follows:

(1)   to preclude certain evidence, and proposed Government Exhibits, because

     (a)   venue is lacking in the Southern District of New York for the conduct alleged;  and/or

     (b)   the conduct is not part of the charged conspiracy;  and/or

     (c)   the conduct does not establish a conspiracy under federal law;  and/or

     (d)   admission of the evidence and proposed Government Exhibits would be unfairly prejudicial to Mr. Ulbricht pursuant to the standards of Rule 403 of the Federal Rules of Evidence;

(2)   to preclude any evidence of alleged attempted "murder[s] for hire" because the conduct alleged – which the government acknowledges did not result in any homicide or even violent behavior of any type – is irrelevant and/or unfairly prejudicial to Mr. Ulbricht pursuant to Rule 403, Fed.R.Evid.;

(3)   to Preclude certain proposed Government Exhibits because they are insufficiently authenticated pursuant to the standards set forth in the Second Circuit's recent opinion in *United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014);

(4)    to preclude certain evidence and proposed Government Exhibits relating to Mr. Ulbricht's alleged ordering of phony identification documents from the Silk Road web site because it is respectfully submitted that the Court cannot draw the requisite four inferences – identified in *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) – with sufficient confidence to admit the evidence as consciousness of guilt, and because any probative value of such evidence is outweighed by the danger of unfair prejudice to Mr. Ulbricht;  and

██ ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████

The first four motions *in limine* relate directly to particular proposed Government Exhibits, which will be enumerated below in the respective Points, and, consequently, also constitute Mr. Ulbricht's objections to those proposed Government Exhibits.  Regarding objections to other proposed Government Exhibits not addressed in those Points, such objections will be presented in POINT VI below.  In addition, a spreadsheet charting all of Mr. Ulbricht's objections to the proposed Government Exhibits will be provided with these motions.

### Statement of the Facts

The facts related to each Point are stated within each for purposes of avoiding repetition, and because generally each Point addresses specific and separate facts related to the particular

motion *in limine*.

## POINT I

**CERTAIN GOVERNMENT EXHIBITS SHOULD BE
PRECLUDED BECAUSE THEY CONSTITUTE
INADMISSIBLE HEARSAY, AND/OR DO NOT
QUALIFY AS CO-CONSPIRATOR STATEMENTS
OR UNDER ANY OTHER HEARSAY EXCEPTION,
BECAUSE EVIDENCE OF HUNDREDS OF THOUSANDS
OF TRANSACTIONS BETWEEN THOUSANDS OF
ANONYMOUS USERS OF THE SILK ROAD WEB SITE
AT MOST ESTABLISHES MULTIPLE DISCRETE
CONSPIRACIES, RATHER THAN THE SINGLE
<u>UNITARY CONSPIRACY CHARGED IN THE INDICTMENT</u>**

The Indictment charges an enormous, anonymous, and essentially unlimited conspiracy, but it is apparent that the evidence does not demonstrate that a single conspiracy, which would require some commonality, either in participants, methods, goals, or underlying connection, existed among these thousands of anonymous Silk Road users and the operator of the Silk Road website.

As the Court pointed out in its July 9, 2014, Opinion and Order denying Mr. Ulbricht's pretrial motions to dismiss the Indictment, the existence of a single conspiracy, rather than thousands of individual transactions or small discrete conspiracies, depends on evidence of conspiratorial agreement that sufficiently establishes some awareness of the joint effort.  *See* July 9, 2014, Order and Opinion, at 15.

Thus, as the Court noted, the very essence of conspiracy is "that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Reid*, 475 F. App'x 385, 387 (2d Cir. 2012) *cert. denied sub nom. Christie v. United States*, 133 S. Ct. 914, 184 L. Ed. 2d 702 (2013), *quoting United States v. Martino*, 664

F.2d 860, 876 (2d Cir.1981).

There is no evidence that an agreement existed between alleged coconspirators to participate in the massive conspiracy charged against Mr. Ulbricht, and the only evidence that common goals, and thus potential conspirators, existed is during the discrete buy and sell transactions taking place between individual buyers and sellers through the Silk Road web site.

The absence of the requisite proof renders evidence of such transactions irrelevant, and inadmissible hearsay.  In addition to engendering complicated evidentiary rulings during trial, admitting evidence of this conduct at trial would risk an impermissible variance between the crime charged in the Indictment and the proof.  *See e.g. United States v. Johansen*, 56 F.3d 347, 351 (2d Cir. 1995), *as amended* (May 11, 1995).

Consequently, evidence of this conduct is inadmissible under the Federal Rules of Evidence, is not probative of the crimes charged against Mr. Ulbricht.

**A.**      ***As a Threshold Matter, Venue Has Not Been Established In the Southern District of New York for the Multiple Conspiracies Alleged Against Mr. Ulbricht***

Evidence of the conduct, and related government Exhibits 100 through 104A, 801, and 801A, of each individual and discrete conspiracy are inadmissible unless the government can demonstrate by a preponderance of the evidence that every conspiracy alleged is sufficiently connected to the Southern District of New York to satisfy the venue requirements of Article III and the Sixth Amendment "right to be tried in the 'district wherein the crime shall have been committed.'"  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989); *see e.g.* 18 USC 3237;  *see also* Rule 18, Fed.R.Crim.P.

As the Court in *United States v. Tzolov,* 642 F.3d 314 (2d Cir. 2011), explained, "[v]enue

is proper only where the acts constituting the offense – the crime's 'essential conduct elements' – took place." *Id.*, at 320, *quoting United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). Sufficiently demonstrating venue demands a showing either that: "(1)  the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2)  it is foreseeable that such an act would occur in the district of venue [and it does]."  642 F.3d at 319, *quoting United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003).

In addition, the Court must determine whether the criminal activity has "substantial contact" with the Southern District, which requires consideration of "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of the [venue] for accurate factfinding.  *United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008), *quoting United States v. Reed*, 773 F.2d477, 481 (2d Cir. 1985)

Nor is the fact that the alleged transactions occurred in cyberspace provide any basis for venue.  As the Third Circuit reaffirmed in *United States v. Auernheimer*, 748 F.3d 525 (3d Cir. 2014), "[v]enue in criminal cases is more than a technicality;  it involves "matters that touch closely the fair administration of criminal justice and public confidence in it." *Id.*, at 529, *quoting United States v. Johnson,* 323 U.S. 273, 276 (1944).

In *Auernheimer*, the Court declared that "[t]his is especially true of computer crimes in the era of mass interconnectivity." *Id.*, at 529.  The Court added that because "[v]enue issues are animated in part by the 'danger of allowing the [G]overnment to choose its forum free from any external constraints[,]' [*United States v. Salinas,* 373 F.3d 161, 169-70 (1st Cir. 2004), *citing Travis v. United States*, 364 U.S. 631, 634 (1961)], . . . [t]he ever-increasing ubiquity of the Internet only amplifies this concern." *Id.*, at 541.  *See also id.* ("[a]s we progress technologically,

we must remain mindful that cybercrimes do not happen in some metaphysical location that justifies disregarding constitutional limits on venue").[1]

Accordingly, as venue must be established in order to sustain a criminal conviction, evidence related to crimes for which venue has not been demonstrated is inadmissible.  *See e.g. Beech-Nut Nutrition Corp.*, 871 F.2d at 1191.

**B.**     ***The Conduct Alleged Does Not Fall Within the Scope of the Single Charged Conspiracy and Is Thus Inadmissible As Irrelevant Pursuant to Rules 401 and 402***

Evidence of Silk Road transactions, as well as government Exhibits 100A through 104A, 109, 110, 223, 243, 291F, 291H, 291J, 291M, 291O, 291Q, 291S, 291A through E, and 293B through D,  related to these uncharged multiple conspiracies, must be excluded as irrelevant because such conduct does not fall "within the scope of the conspiracy" charged in the Indictment.  *See United States v. LaSpina*, 299 F.3d 165, 182 (2d Cir. 2002), *citing United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 25960, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

Rule 402, Fed.R.Evid., requires the exclusion of irrelevant evidence.  In turn, "relevant evidence" is defined by Rule 401, Fed.R.Evid., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

As the conduct alleged does not have any probative value with respect to whether Mr. Ulbricht was involved in a massive, single, global conspiracy, it must be excluded pursuant to

---

[1]  *See also id*., at 541 ("[p]eople and computers still exist in identifiable places in the physical world. When people commit crimes, we have the ability and obligation to ensure that they do not stand to account for those crimes in forums in which they performed no "essential conduct element" of the crimes charged"), *quoting Rodriguez–Moreno*, 526 U.S. at 280.

Rule 402, Fed.R.Evid.  Evidence of the various transactions between Silk Road users may be relevant in determining whether several smaller conspiracies existed, but is not relevant to whether Mr. Ulbricht participated in the unitary conspiracy charged in the Indictment.

Accordingly, the conduct alleged and the related Exhibits, are inadmissible pursuant to Rule 402, Fed.R.Evid., because they are irrelevant to the charged offense.

### C.     The Admission of the Evidence and Government Exhibits Would Be Unfairly Prejudicial to Mr. Ulbricht, Pursuant to Rule 403, Fed.R.Evid.

Even assuming *arguendo* the relevance of such transactions, admission of several, if not hundreds, of the illegal transactions which occurred on the Silk Road web site would undoubtedly be unfairly prejudicial to Mr. Ulbricht, and therefore warrants exclusion under Rule 403, Fed.R.Evid., as well.

Under Rule 403, even relevant evidence is excluded when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, Fed.R.Evid.

The Advisory Committee's notes to Rule 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one."  Thus, the Supreme Court has explained that unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

In light of the limited, if any, probative value of the objectionable evidence in establishing

the charged offense(s), in combination with the sheer volume of evidence of illegal transactions by Silk Road users, the evidence will surely have "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Furthermore, the risk that the evidence, which would serve only to suggest criminal propensity on Mr. Ulbricht's part, would undoubtedly taint the jury's assessment of the evidence to such an extent that reliance on a limiting instruction would be insufficient to protect his right to a fair trial. *Id*.

Accordingly, the evidence and related Government Exhibits are also inadmissible under Rule 403, Fed.R.Crim.P., as unduly prejudicial.

The proposed Government Exhibits affected by the foregoing analysis and objections are as follows:

- GX 100A through 104A (photos of seizures from Chicago O'Hare and screenshots of drug listings);

- GX 109 and 110 (screenshots of the Silk Road home page and "bestselling stimulants");

- GX 291F, 291H, 291J, 291M, 291O, 291Q, 291S, 291A through E, and 293B through D (containing various drug, hacking tools and "fake" passport listings from the Silk Road site)

- GX 801 ("Summary chart of UC purchases by HSI-Chicago"), 801A ("Chicago lab tests stipulation");

- GX 802 ("Summary table of UC be DEA-NY"); and

- GX 802A (New York undercover buy stipulation").

POINT II

**ANY AND ALL EVIDENCE AND/OR REFERENCES
TO THE "MURDER-FOR-HIRE" ALLEGATIONS
SHOULD BE PRECLUDED AT TRIAL, AND ANY
AND ALL SUCH LANGUAGE SHOULD BE STRICKEN
FROM THE SUPERSEDING INDICTMENT, BECAUSE
THEY ARE NOT RELEVANT TO THE CHARGED
OFFENSES AND/OR, UNDER RULE 403, FED.R.EVID.,
THEIR UNFAIR PREJUDICIAL EFFECT SUBSTANTIALLY
OUTWEIGHS ANY PROBATIVE VALUE THEY MIGHT POSSESS**

The government's list of its proposed Exhibits at trial includes several related to the

allegations that Mr. Ulbricht engaged in "murder for hire" plots.  Such proposed exhibits –

including GX 227, 229B, 241, 275, and 601[2] – as well as any other evidence and/or references,

should be precluded at trial because the alleged "murder for hire" plots are not relevant to the

charged offenses in this case, and/or, pursuant to Rule 403, Fed.R.Evid., any probative value they

might possess is substantially outweighed by their unfair prejudicial impact upon Mr. Ulbricht.

Also, such evidence would confuse the jury and require a veritable mini-trial on issues that are

both extraneous and extraordinarily inflammatory.

In addition, relatedly, Mr. Ulbricht herein renews his prior motion pursuant to Rule 7(d),

Fed.R.Crim.P. to strike from the Superseding Indictment as irrelevant and unfairly prejudicial

surplusage all references (in Counts One and Three) to the uncharged "murder-for-hire"

allegations.

As detailed below, preclusion of the "murder for hire" allegations is necessary and

---

[2]  According to the government's list of proposed Exhibits: GX 227 is the "Torchat log
with Cimon;" GX 229B is the "Torchat log with Inigo #2;" GX 241 is the "Silk Road log,
3/20/2013 through 9/30/2013;" GX 275 is "documents containing notes regarding flush,
FriendlyChemist;" and GX 601 is "[Bitcoin] Blockchain record of payments made to
'redandwhite' for murders-for-hire."

appropriate because (1)  the "murder for hire" allegations are not charged conduct;  nor do they

constitute elements of Counts One, Three, or any of the other counts in the Indictment;  (2)  the

government acknowledges that there is no evidence that anyone was murdered or harmed in

relation to any of the alleged "murder for hire" plots – indeed, all of the evidence, and lack of

evidence, establish that the alleged plots were not manifested in any manner;  (3)  the "murder for

hire" allegations are not admissible even as background information because they do not relate to

any of the charges in the Superseding Indictment, which are limited to drug trafficking, computer

hacking, phony identification documents, and money laundering, and do not involve "murder for

hire" or any other violent conduct;  and (4)  the mere mention of the "murder for hire" allegations

would improperly introduce the toxic issue of violence and murder, generating prejudice to Mr.

Ulbricht that no limiting jury instruction could ameliorate.  Inclusion of such evidence would

also confuse the jury with respect to the charges at issue, and require a mini-trial on an issue that

is separate factually from the statutory allegations and elements.

### A.    *The Applicable Law*

Rule 401, Fed.R.Evid., defines "relevant evidence" as "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."  Rule 401, Fed.R.Evid.  Rule

402 requires the exclusion of irrelevant evidence from trial.  Rule 402, Fed.R.Evid.

Pursuant to Rule 403, Fed.R.Evid., even *relevant* evidence is excluded at trial when its

"probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury," or by "considerations of undue delay, waste of time, or needless

presentation of cumulative evidence."  Rule 403, Fed.R.Evid.

Also, pursuant to Rule 7(d), Fed.R. Crim.P., upon a motion by defendant, a court may strike extraneous matter or surplusage from an indictment. However, "'[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial," as defined above. *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).

As this Court set forth in its October 10, 2014, Opinion, however, statements providing background are relevant and need not be struck. *See* October 10, 2014, Opinion and Order (Docket #89), *citing id*., at 99-100.

Moreover, as set forth in the Court's October 10, 2014, Opinion and Order, "Courts in this district routinely await the presentation of the Government's evidence at trial before ruling on a motion to strike surplusage[,]" and the Court chose that option in this case. *Id*., *citing Scarpa*, 913 F.2d at 1012; *United States v. Persico*, 621 F. Supp. 842, 861 (S.D.N.Y. 1985); *United States v. Ahmed*, 2011 WL 5041456, at *3 (S.D.N.Y. Oct. 21, 2011).

**B.**     ***Any and All References to the "Murder-For-Hire" Allegations Should Be Precluded At Trial, And Stricken from the Superseding Indictment As Surplusage, Because They Are Irrelevant to the Charged Offenses and Unduly Prejudicial***

Pursuant to Rules 401, 402, and 403, Fed.R.Evid., the Court should exclude any evidence and/or reference at trial to the murder for hire allegations because (1) they are irrelevant to the case and the charges at issue; (2) they do not constitute permissible background information; and (3) even if relevant, their negligible probative value, if any, is substantially outweighed by the overwhelming danger of unfair prejudice to Mr. Ulbricht, confusion of the issues, and the potential for misleading the jury.

1.       *The "Murder-For-Hire" Allegations Should Be*
         *Excluded Because They Are Irrelevant to the Charges*

It is well-settled that in criminal trials, all facts presented to the jury must be "strictly relevant to the particular offense charged." *Williams v. New York*, 337 U.S. 241, 247 (1949). In this case, the essential elements the government must prove at trial with regard to Count One and Three – the counts which reference the "murder for hire" allegations – are whether Mr. Ulbricht distributed or conspired to distribute and possess with intent to distribute controlled substances in violation of U.S. narcotics laws.

Thus, the allegations that Mr. Ulbricht "solicit[ed] the murder-for-hire of several individuals" is not an element of Count One or Three.  Nor is it a fact making it more or less probable that Mr. Ulbricht engaged in narcotics trafficking as alleged in Counts One or Three.  It also lacks relevance to the jury's determination whether Mr. Ulbricht committed any of the other offenses charged, which likewise do not involve "murder" or "murder for hire" in any capacity.

Nor are the "murder for hire" allegations admissible as relevant background information, as they are wholly unrelated to the conduct alleged to have violated the statutes charged in the Superseding Indictment, which relate *not* to any murder-for-hire plot, but are limited to drug trafficking, computer hacking, false identification documents, and money laundering.

The government's acknowledgment that there is not any evidence that any murders, or even violence of any kind, occurred – indeed, the evidence is that persons, as well as any activity related to them, were fictitious – reinforces the lack of relevance of the murder for hire allegations under Rules 401 and 402, Fed.R. Evid.[3]

---

[3]  In fact, the government has proposed a stipulation that it "currently has no evidence that the murders discussed by 'Dread Pirate Roberts' and 'redandwhite' were actually carried out."

For example, in its November 20, 2013, letter opposing Mr. Ulbricht's application for bail (Docket #8), the government conceded that "it appears that none of these murders was actually carried out, . . ." *id*., at 5, and that "as with the preceding murder for hire Ulbricht commissioned from 'redandwhite,' the FBI has consulted with Canadian authorities, who report no homicides of any individual with Victim-3's name or otherwise matching the circumstances reflected in these communications." *Id*., at 7.  Consequently, despite the government's comprehensive investigation, there is not any evidence of any manifestation of the "murder for hire" plots.

In that context, Judge Paul G. Gardephe's ruling, in *United States v. Valle*, 301 F.R.D. 53, 61 (S.D.N.Y. 2014), granting the defendant's Rule 29, Fed.R.Crim.P., motion for acquittal on the charge of conspiracy to commit kidnapping, is instructive.  In *Valle*, the Court explained that "the fact that no kidnappings took place and that no real-world, concrete steps toward committing a kidnapping were ever undertaken" was "significant" because in *Valle* – as here – the government "relied on numerous internet 'chats'" in an attempt to prove its allegations.  *See also id*., at 60 ("no one was ever kidnapped, no attempted kidnapping ever took place, and no real-world, non-Internet based steps were ever taken to kidnap anyone").

As a result, in *Valle* the Court concluded that "[o]nce the lies and fantastical elements are stripped away, what is left is deeply disturbing . . . chats and emails" but "[the defendant's] chats

---

The particular language and scope of such a stipulation are in the process of negotiation between the parties.  However, such stipulation would be dependent on a ruling admitting such evidence; absent such a ruling, Mr. Ulbricht would not stipulate, as it is respectfully submitted that – just as with respect to any limiting jury instruction – the prejudice stemming from evidence as inflammatory as the "murder-for-hire" allegations could never be sufficiently alleviated by a stipulation, regardless how careful the language therein.

and emails . . . are not sufficient – standing alone – to make out the elements of conspiracy to commit kidnapping." *Id*., at 61-62. For the same reasons, here the "murder for hire" allegations lack sufficient verification beyond internet ideation to be admissible.

As Judge Gardephe recognized in *Valle*, the conspiracy "existed solely in cyberspace[,]" *id*., at 60, "[n]one of the conspirators ever met or took steps to meet, nor did they ever speak by telephone[,]" *id*., and the facts therein "reflect the Internet age in which we live." *Id*., at 59. Elaborating, Judge Gardephe noted that much of the information conveyed – such as identities and locations – among conspirators was false, *id*., at 60, which apparently was the case here. Certainly, none of the information in this case has been verified, and that which has been checked has proven false.

Accordingly, any evidence or mention of the alleged "murder for hire" plots should be precluded at trial, and stricken from the Superseding Indictment because such evidence and/or reference is not relevant to the charges against Mr. Ulbricht.

> **2.    *The "Murder-For-Hire" Allegations Should Be Excluded Because They Are Unduly Prejudicial Pursuant to Rule 403, Fed.R.Evid., As Any Probative Value Is Vastly Outweighed by Their Extraordinary Danger of Unfair Prejudice***

Even if relevant, any reference at trial or in the Superseding Indictment to "murder-for-hire" must also be excluded as unfairly prejudicial pursuant to the standards set forth in Rule 403, which provides for the exclusion of even relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." Rule 403, Fed.R.Evid.

As discussed **ante**, the available evidence establishes that any alleged "murder for hire" plots were limited to cyberspace discussions. *See, e.g., Valle*, 301 F.R.D. at 60 (holding that the

defendant's "'chats' with a number of the individuals the Government concedes are fantasy role-lay correspondents are substantially indistinguishable from his chats with [his alleged co-conspirators]" in that "[b]oth sets of chats involve discussions about Facebook photographs of women [the defendant knows];  dates for planned kidnappings; prices [the defendant] will charge for kidnapping these women;  surveillance [the defendant] has allegedly conducted of these women" and more).

Thus, the danger of unfair prejudice the mere mention of "murder for hire" allegations would have on a jury in Mr. Ulbricht's case is overwhelming in contrast to the lack of relevance and probative value, if any, possessed by the "murder for hire" allegations.  In fact, but for the "murder for hire" allegations, the jury will be evaluating a case that does *not* involve allegations of violence.  Any evidence or reference to alleged "murder for hire" plots will transform the character of the case substantially, and will require a mini-trial to resolve issues that, while not pertinent to the charges, will nevertheless have a significant prejudicial impact on the jury.

Permitting the government to offer evidence and/or refer at trial, and in Counts One and Three of the Superceding Indictment [at ¶¶ 4 & 16 (b) & (c)], to alleged solicitation of the "murder for hire," would serve only to inflame the jury and unfairly prejudice it against Mr. Ulbricht.  Similarly, evidence and/or mention of the "murder for hire" allegations at trial, or in the Superseding Indictment, also has the capacity to confuse and mislead the jury because it would present the jury with an improper basis for convicting Mr. Ulbricht, *i.e.*, solely based on his alleged association with uncharged "murder-for-hire" plots, that is beyond the scope of the Superseding Indictment, but which is far more serious than the charges themselves. Thus, there would be genuine, even inevitable, danger that the "tail" of the "murder for hire" allegations

would "wag the dog" of the statutory charges and elements thereof.

Accordingly, any evidence and/or reference to the alleged "murder for hire" plots should be precluded at trial and stricken from the Superseding Indictment.

**POINT III**

**CERTAIN GOVERNMENT EXHIBITS SHOULD
BE PRECLUDED BECAUSE THEY ARE NOT
SUFFICIENTLY AUTHENTICATED PURSUANT
TO RULE 901, FED.R.EVID., AND RECENT CASE LAW**

In October 2014, in *United States v. Vayner*, 759 F.3d 125 (2d Cir. 2014), the Second Circuit addressed the issue of authentication in the context of a burgeoning form of evidence: information and documents appearing on the internet that are not, and cannot, be verified as what they purport to be.  In *Vayner*, the Court reversed the appellant's conviction because the government failed at trial to establish that a profile in the defendant's name, posted on the Russian equivalent of Facebook, was created or authorized by him (and therefore could be considered *his* "statement" for hearsay purposes).  *Id.*, at 132-33.  As a result, in *Vayner* the Court concluded that the government had failed to meet the threshold requirements of authenticity set forth in Rule 901, Fed.R.Evid.

**A.**     ***The Applicable Law Regarding Authentication Under Rule 901***

As the Second Circuit explained in *Vayner*, "'[t]he requirement of authentication is . . . a condition precedent to admitting evidence.'"  *Id.*, at 129, *quoting United States v. Sliker,* 751 F.2d 477, 497 (2d Cir. 1984) and *United States v. Maldonado–Rivera,* 922 F.2d 934, 957 (2d Cir.1990) ("[i]n general, a document may not be admitted into evidence unless it is shown to be genuine").

Authentication of evidence is governed by Rule 901, Fed.R.Evid., which provides in

16

pertinent part that "[t]o satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is

what the proponent claims it is."  Rule 901(a).  *See also Vayner*, 769 F.3d at 129.

In *Vayner*, the Court reiterated that "'[t]his requirement is satisfied if sufficient proof has

been introduced so that a reasonable juror could find in favor of authenticity or identification.'"

769 F.3d at 129-30, *quoting United States v. Pluta,* 176 F.3d 43,49 (2d Cir.1999) (internal

quotation marks omitted).

The standard of proof – which may be direct or circumstantial, 769 F.3d at 130 (citation

omitted) – while "'not particularly high,'" *id*., *quoting United States v. Gagliardi*, 506 F.3d 140,

151 (2d Cir. 2007), "must nonetheless [provide] at least 'sufficient proof . . . so that a reasonable

juror could find in favor of authenticity or identification.'" *Vayner*, 769 F.3d at 130, *quoting*

*Pluta*, 176 F.3d at 49 (internal quotation marks omitted).

However, as the Court in *Vayner* acknowledged, Rule 901 "'does not definitively

establish the nature or quantum of proof that is required' preliminarily to authenticate an item of

evidence." *Id*., at 130, *quoting Sliker*, 751 F.2d at 499.  Rather,

> "[t]he type and quantum of evidence" required is "related to the
> purpose for which the evidence is offered," [*Sliker*, 751 F.2d ] at
> 488, and depends upon a context-specific determination whether
> the proof advanced is sufficient to support a finding that the item in
> question is what its proponent claims it to be.

*Id*.

Thus, offering an example, the Court in *Vayner* pointed out that

> where the evidence in question is a recorded call, we have said that
> "[w]hile a mere assertion of identity by a person talking on the
> telephone is not in itself sufficient to authenticate that person's
> identity, some additional evidence, which need not fall into any set

17

pattern, may provide the necessary foundation."

769 F.3d at 130, *quoting United States v. Dhinsa,* 243 F.3d 635, 658-59 (2d Cir. 2001) (brackets

and internal quotation marks omitted).

In the internet context present in *Vayner*, the Court also noted that "[s]ome courts have

suggested applying 'greater scrutiny' or particularized methods for the authentication of evidence

derived from the Internet due to a 'heightened possibility for manipulation.'" 769 F.3d at 131 n.

5, *quoting Griffin v. State,* 419 Md. 343, 19 A.3d 415, 424 (2011) (citing cases).  While

"skeptical that such scrutiny is required," the Court in *Vayner* did not address that issue because

the web page in question did not satisfy even the conventional standard for authentication.  769

F.3d at 131 n. 5.[4]

---

[4]  The Rule 901 analysis is a threshold evaluation.  As the Court in *Vayner* emphasized, "[t]he ultimate determination as to whether the evidence is, in fact, what its proponent claims is thereafter a matter for the jury."  769 F.3d at 130, *citing Sliker,* 751 F.2d at 499.  As the Court in *Vayner* instructed,

> "[ a]uthentication of course merely renders [evidence] admissible, leaving the issue of [its] ultimate reliability to the jury."  *United States v. Tropeano,* 252 F.3d 653, 661(2d Cir. 2001). Thus, after the proponent of the evidence has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be, the opposing party "remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence – not to its admissibility."  [*United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

769 F.3d at 131.

**B.** *The Facts and Opinion In* **Vayner**

In *Vayner*, "the government offered into evidence a printed copy of a web page, which it claimed was Zhyltsou's profile page from a Russian social networking site akin to Facebook." 769 F.3d at 127. The web page/profile included a photo of the appellant, and other factual information provided by government witnesses at trial. *Id.*, at 128.

However, the Circuit, noting "there was no evidence that Zhyltsou himself had created the page or was responsible for its contents[,]" *id.*, at 132, concluded "[t]he government did not provide a sufficient basis on which to conclude that the proffered printout was what the government claimed it to be – [the appellant's] profile page – and there was thus insufficient evidence to authenticate the [web] page and to permit its consideration by the jury. *Id.*, at 131.

As a result, the Court ruled that "contrary to the government's argument, the mere fact that a page with [appellant's] name and photograph happened to exist on the Internet at the time of [the Special Agent's] testimony does not permit a reasonable conclusion that this page was created by the [appellant] or on his behalf. *Id.*, at 132. Thus, the Court in *Vayner* required more than cooperator's testimony to provide sufficient foundation upon which "a reasonable juror could conclude that the page in question was not just any Internet page, but in fact [the appellant's] profile." *Id.*, at 133.[5]

---

[5] The Court in *Vayner* also determined that the web page was not "self-authenticating" under Rule 902, Fed.R.Evid., which enumerates a class of documents (including, *inter alia,* certain public records, periodicals, or business records) "requir[ing] no extrinsic evidence of authenticity in order to be admitted." 769 F.3d at 130 n. 4.

**C.**     **Vayner***'s Application to the Government's Proposed Exhibits In This Case*

Here, the vast majority of the government's proposed Exhibits fall into the category the Court in *Vayner* found insufficiently authenticated.  They are electronic in nature, and many, if not most, constitute material captured directly or indirectly from the internet.  For example, the 100 Series of Exhibits consists almost entirely of "screen shots" of internet activity, private internet messages, and Silk Road forum posts.  Similarly, the 200 Series, culled entirely from Mr. Ulbricht's laptop, is comprised predominantly of internet posts and communications.  Likewise, the 300 Series includes primarily internet posts, e-mails, and the contents of Google chats (the latter two categories apparently from the Google account "rossulbricht@gmail.com").   Also, according to the government list of proposed Exhibits, GX 700 (the entirety of the 700 Series) is a "Silk Road transaction spreadsheet maintained by Silk Road Vendor deezletime."

As a result, they suffer from the same defect as in *Vayner*:  they cannot be verified as being what they purport to be, or by whom.  Without such verification, and/or proof of attribution either to Mr. Ulbricht, or some other person whose non-hearsay declaration would be admissible at trial, they cannot meet the threshold test for authentication set forth in *Vayner*.  As a result, they should be precluded.

The specific proposed Government Exhibits to which Mr. Ulbricht objects on the ground of lack of authentication (as described in *Vayner*) are as follows: GX 107, 123, 124, 125A through O, 126A through C, 127A through C, 127G, 129A, 223, 224, 225, 226, 227, 228A and B, 229A and B, 230, 240A through 243, 252, 254, 255, 258, 270, 275, 276A through F, 277A through D, 278, 281, 301 through 335, through 501A and B, 700, and 803.

## POINT IV

**CERTAIN EVIDENCE AND GOVERNMENT EXHIBITS ALLEGING PURCHASE OF FALSE IDENTIFICATION DOCUMENTS SHOULD BE PRECLUDED BECAUSE THEY ARE NOT REASONABLY DEMONSTRATIVE OF "CONSCIOUSNESS OF GUILT," AND/OR THEIR PROBATIVE VALUE, IF ANY, IS SUBSTANTIALLY OUTWEIGHED BY <u>THE DANGER OF UNFAIR PREJUDICE TO MR. ULBRICHT</u>**

Proposed Government Exhibits 400, 401, and 402 each relate to an alleged attempt by Mr. Ulbricht to purchase false identification documents from the Silk Road web site in June-July of 2013.  For the reasons set forth below, those proposed Exhibits, as well as any testimony or other evidence regarding the alleged false identification documents, should be precluded because (1)  they fail to satisfy the standard for admission of evidence demonstrating "consciousness of guilt;"  and (2)  pursuant to Rule 403, Fed.R.Evid., their probative value, if any, is substantially outweighed by their unfair prejudicial impact upon Mr. Ulbricht.

**A.** ***The Law Applicable to Admissibility of "Consciousness of Guilt" Evidence***

As the Second Circuit recognized in *United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994), because evidence that might suggest flight after the commission or accusation of a crime constitutes "powerful" evidence, a court must ensure such evidence does not invite a jury to "draw[] unsupported inferences from otherwise innocuous behavior."  *Id*., at 1260.

In light of that risk, the Second Circuit has advised that "trial judges should be aware of the limitations of flight as circumstantial evidence of guilt."  *Id*.,  at 1258, *citing United States v. Hernandez-Bermudez*, 857 F.2d 50, 54 (1st Cir. 1988) ("district courts should always determine whether [evidence of proof of flight] serves a genuinely probative purpose that outweighs any tendency towards unfair prejudice").

Courts also caution that such evidence "tends to be only marginally probative as to the ultimate issue of guilt or innocence." *United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973); *see also United States v. Rahman*, 870 F. Supp. 47, 52 (S.D.N.Y. 1994) (noting that "flight itself may be highly ambiguous"). Indeed, the Supreme Court has "consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Sun v. United States*, 371 U.S. 471, 484 n.10 (1963).

In recognition of that judicially expressed doubt, "the requirement of a sufficient factual predicate ensures that the evidence is probative in a legal sense," thereby providing a reasonable basis to make the four linked inferences which tie the defendant's conduct firmly to perceived or actual guilt of the crime charged. *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005), *quoting Amuso*, 21 F.3d at 1260, *and citing United States v. Beahm*, 664 F.2d 414, 420 (4th Cir. 1981) ("[i]f the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported").

As a result, the probative value of flight evidence, and thus its admissibility to demonstrate consciousness of guilt, depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. 432 F.3d at 424.

**B.** ***Mr. Ulbricht's Alleged Purchase of False Identification***
***Documents from the Silk Road Web Site Is Insufficient to***
***Reasonably Infer His Consciousness of Guilt of the Crimes Charged***

Analysis of those four requisite inferences in the context of this case demonstrates that

the Court cannot draw any or all of those necessary inferences with any, much less the sufficient,

level of confidence.  For example, the government's proffered evidence fails to establish the first

inference, between "the defendant's behavior to flight."  *Al-Sadawi*, 432 F.3d at 424, *quoting*

*United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977).  Merely ordering false identification

documents, particularly unaccompanied by evidence of any other preparation to flee, is

insufficient to reasonably infer an intention to flee.  *Id*., at 424-25;  *see also United States v.*

*Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986) (evidence "must . . . provide the jury with more than

an opportunity for mere conjecture and speculation") (internal quotations omitted).

Moreover, even if ordering false identification documents was alone sufficiently

indicative of an intention to flee to reasonably establish the first inference, the second inference,

"from flight to consciousness of guilt," is unsupported.  There is no evidence that Mr. Ulbricht

was aware at the time the identification documents were ordered that he was under investigation

for any criminal activity;  nor is there any crime charged which might independently have

motivated preparations for flight at the time he allegedly ordered the identification documents.

Most tellingly, Mr. Ulbricht did not attempt to flee at *any* point, even *after* he was

confronted by law enforcement regarding the false identification documents, which clearly and

completely severs any reasonable connection between evidence of such a purchase and

consciousness of guilt of the crimes charged.  As the Second Circuit explained in *United States v.*

*Cassese*, 428 F.3d 92, 101 (2d Cir. 2005), when evidence "is as consistent with innocence as

with guilt" of the particular crime charged, it is not admissible as evidence of consciousness of guilt.

Accordingly, while ordering false identification documents could arguably provide a reasonable basis to infer consciousness of wrongdoing in certain circumstances, the link between the evidence and consciousness of guilt of the crimes charged here, and, beyond that, actual guilt of those crimes, has not been reasonably established, and thus the evidence may not be admitted as consciousness of guilt.

**C.** ***Alternatively, Evidence of the Alleged Ordering of False Identification Documents Must Be Excluded Under Rule 403 As Substantially More Prejudicial Than Probative***

Courts are generally dubious with respect to the probative value of consciousness of guilt evidence, and the prejudicial nature of flight evidence, especially when supported by an inadequate factual predicate, warrants cautious consideration of whether its probative value is outweighed by the danger of prejudice to the defendant.  *See e.g. United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973);  *see also United States v. Rahman*, 870 F. Supp. 47, 52 (S.D.N.Y. 1994).

When, as here, the evidence can be only very weakly tied to an inference of guilt of the crimes charged, the prejudicial nature of flight evidence quickly overwhelms any probative value, and should be excluded pursuant to Rule 403, Fed.R.Evid.  *See e.g. United States v. Amuso*, 21 F.3d 1251, 1260 (2d Cir. 1994).

Accordingly, even if marginally probative of consciousness of guilt, the alleged ordering of false identification documents gives rise to a substantial danger of unfair prejudice to Mr. Ulbricht, and therefore should be excluded under Rule 403, Fed.R.Evid.

28

███ ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**POINT VI**

**OTHER OBJECTIONS TO THE GOVERNMENT'S
PROPOSED EXHIBITS NOT COVERED ABOVE**

The following constitute Mr. Ulbricht's objections to those proposed Government

Exhibits not covered in the preceding Points set forth **ante**:

- GX 107, 125A through O, 126A through D, 127B and C, 130, 240A through D, 241 through 243, 254, 255, 258, 259, 270, 276A through F, 277A through D, 278, 281, 301 through 335, 501A through C, 700, and 803 constitute inadmissible hearsay and no not fall within any hearsay exception;

- GX 100A through 103 do not contain dates and are therefore inadmissible due to lack of foundation;

- GX 100A through 104A, 126C, 225, 295E, 501C, 801, 801A, 802, and 802A, are inadmissible in that they provide evidence only of a unilateral conspiracy (unavailable under federal law) given that one of the two participants is a law enforcement agent or is operating under the direction of law enforcement and therefore could not have formed criminal intent;

- GX 116G, 116H, 166I, 271 and 291C are inadmissible in that the availability on the Silk Road website of the items contained in these exhibits is protected by the First Amendment to the United States Constitution;

- GX 226 and 230 are inadmissible because it is not proper for anyone other than the Court to instruct the jury as to the law, and because the discussion in the Exhibits would confuse and mislead the jury with respect to matters of law;  and

- GX 116G, 116H, 166I, 228A, 228B, 229A, 230, 276A through F, 277A through D

31

are inadmissible because they constitute uncharged conduct and are therefore irrelevant pursuant to Rules 401 and 402, Fed.R.Evid.

As noted **ante**, a spreadsheet charting all of Mr. Ulbricht's objections to the proposed Government Exhibits is being provided with these motions.

### Conclusion

Accordingly, for all the reasons set forth above, it is respectfully submitted that Mr. Ulbricht's motions *in limine* be granted in their entirety, and his objections to the proposed Government Exhibits be sustained.

Dated: 9 December 2014
      New York, New York

                    Respectfully submitted,


                     /S/ Joshua L. Dratel
                    JOSHUA L. DRATEL
                    JOSHUA L. DRATEL, P.C.
                    29 Broadway, Suite 1412
                    New York, New York 10006
                    (212) 732-0707

                    Joshua J. Horowitz
                    225 Broadway, Suite 1804
                    New York, New York 10007
                    (845) 667-4451

                    *Attorneys for Defendant Ross Ulbricht*


– Of Counsel –

Joshua L. Dratel
Lindsay A. Lewis
Whitney G. Schlimbach
Joshua J. Horowitz