Thoward1UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

   -v.-                                                   :                    S1 14 Cr. 68 (KBF)

ROSS ULBRICHT,                                        :
  a/k/a "Dread Pirate Roberts,"
  a/k/a "DPR,"                                         :
  a/k/a "Silk Road,"
                                         :

                    Defendant.

                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# MEMORANDUM OF LAW IN OPPOSITION
# TO THE DEFENDANT'S MOTIONS IN LIMINE

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

TIMOTHY T. HOWARD
SERRIN TURNER
      Assistant United States Attorneys
      *Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

   -v.-                              :          S1 14 Cr. 68 (KBF)

ROSS ULBRICHT,                     :
  a/k/a "Dread Pirate Roberts,"
  a/k/a "DPR,"                       :
  a/k/a "Silk Road,"
                          :
             Defendant.
                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INTRODUCTION

The Government respectfully submits this memorandum of law in response to the

Motions in Limine filed on December 9, 2014 (the "Motion"), by the defendant, Ross Ulbricht

("Ulbricht").  For the reasons stated below, each of the defendant's requests are without merit

and should be denied.

## ARGUMENT

**I.**    **THE DEFENDANT'S MOTION TO PRECLUDE EVIDENCE REGARDING SILK ROAD TRANSACTIONS AND PRODUCT LISTINGS SHOULD BE DENIED**

The defendant moves to exclude evidence regarding a number of unlawful transactions

that occurred over the Silk Road website, including evidence of narcotics seizures at Chicago

O'Hare Airport, and evidence of undercover buys of narcotics from Silk Road made by

undercover agents in both Chicago and New York City.  (Def. Mem. at 3-8).  In addition, the

defendant moves to exclude evidence of listings of products offered on Silk Road.  (*Id.*).  In

support of these arguments, the defendant principally asserts that these transactions are part of

multiple separate conspiracies that existed between individual buyers and sellers on the Silk

Road website.  This argument is a thinly veiled attempt to re-litigate the defendant's motion to

dismiss which was rejected by the Court, and disregards the wealth of evidence that the that the

defendant sat at the top of an overarching single conspiracy, which included the Silk Road

vendors who sent the illegal narcotics that were seized in Chicago and New York, and who

posted the listings and advertisements on the site for their illegal goods and services.

The Court has already rejected the defendant's argument that, as a matter of law, by

providing an anonymous online platform to Silk Road vendors and buyers, the defendant could

not have conspired with them.  Specifically, the Court concluded that the charges were sufficient

to allege a conspiracy between the defendant and individuals engaging in unlawful transactions

on Silk Road, including allegations that Ulbricht designed Silk Road with the  intention of

specifically providing a platform for the sale of illegal goods and services, that the defendant

extracted significant monetary gain from the commissions charged for transactions, and that he

took steps to protect the site and the proceeds it generated.  *See United States* v. *Ulbricht*, No. 14

Cr. 68 (KBF), 2014 WL 3362059, at *10-*11 (S.D.N.Y. July 9, 2014).  Further, the Court

concluded that the allegations were sufficient, if proven, to demonstrate that the defendant

organized, managed, or supervised the transactions between buyers and sellers on the site.  *Id.* at

*17 ("There is no legal reason why one who designs, launches, and operates a website or any

facility for the specific purpose of facilitating narcotics transactions that he knows will occur,

and acts as the rule-maker of the site—determining the terms and conditions pursuant to which

the sellers are allowed to sell and the buyers are allowed to buy, taking disciplinary actions to

protect that enterprise (allegedly including murder-for-hire on more than one occasion)—could

not be found to occupy the requisite position.").  As the Court noted, the burden of establishing

the existence and nature of the conspiracy will be on the Government to prove at trial.  *See id.* at

*15.

The defendant now attempts to re-litigate this argument, asserting, *as a matter of law* that

the Silk Road enterprise consisted of a myriad of discrete alleged conspiracies and that the

Government's evidence is therefore irrelevant to proving the existence of a single conspiracy

headed by the defendant.  This argument similarly fails.  Consistent with the allegations in the

Indictment, the Government intends to offer evidence at trial that, among other things, that the

defendant: (1) specifically designed and operated Silk Road with the specific purpose of

facilitating illegal transactions; (2) offered both Silk Road buyers and vendors a purportedly

anonymous and secure platform for these transactions to Silk Road vendors and buyers, in

exchange for direct commissions on each of those transactions; (3) established rules of conduct

for both Silk Road vendors and buyers (including through specific written agreements); (4)

directly promoted the sale of contraband through promotional offers; (5) enforced those rules

alongside his employees, including banning access to vendors and buyers who did not comply

with those rules; (6) actively engaged in arbitrating and resolving disputes between vendors and

buyers on Silk Road; and (7) engaged in measures to protect the enterprise from law

enforcement.  This evidence is sufficient to permit a jury to find that the defendant was engaged

in promoting a single collective illegal enterprise with "mutual dependence" among its

participants for their collective benefit: an online black market whose vendors and users

depended on the defendant to provide a secure and anonymous platform to advertise, buy and

sell illegal products and services, on whose transactions the defendant depended in order to

collect revenue in the form of commissions.  *See United States* v. *Geibel*, 369 F.3d 682, 692 (2d

Cir. 2004) (noting that in determining whether a single conspiracy involving many people exists,

the question is whether there is a "mutual dependence" among the participants); *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (noting that to prove a single conspiracy, the Government must show that each alleged member of the conspiracy agreed to participate "in what he knew to be a collective venture directed towards a common goal") (quoting *United States* v. *Berger*, 224 F.3d 107, 114 (2d Cir. 2000)).  The burden remains on the Government to prove both the nature and existence of the conspiracy at trial, and the defendant has cited no law to demonstrate he is entitled to prevent the Government from presenting evidence of properly alleged conspiracy charges at trial.

Moreover, the Indictment includes not only a narcotics conspiracy charge, but also charges of distributing and aiding and abetting the distribution of drugs through the services he provided on the Silk Road website. *See United States v. Brunty*, 701 F.2d 1375, 1381 (11th Cir. 1983) (explaining that courts have construed the term "distribution" broadly to "include other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price") (collecting cases); 21 U.S.C. § 841(h)(2)(C) (providing as an example of activity that violates the statute underlying Count Two: "serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections 823(f) or 829(e) of this title").

The evidence of seizures and undercover purchases made in Chicago and New York, as well evidence of advertised illegal goods and contraband on Silk Road, are plainly relevant under Rule 401 of the Federal Rules of Evidence to all of the narcotics charges in the Indictment. Among other things, they evidence the way the Silk Road website worked and the fact that it was responsible for distributing and aiding and abetting the distribution of real narcotics.

Further, there is no sound basis to exclude the evidence regarding seizures of narcotics from Silk Road and listings of illegal goods and services on Silk Road under Rule 403 of the Federal Rules of Evidence.  As discussed above, this evidence is highly probative of important issues in the case, including essential elements of charged offenses.  The defendant argues that the volume of illegal transactions renders them prejudicial, but that issue goes to the core of the charged conspiracy counts in the Indictment regarding the Silk Road criminal enterprise, and the volume of narcotics allegations in the Indictment.  Indeed, the Government has the burden to prove the objects of the charged conspiracy counts, and the quantity of controlled substances involved in the narcotics counts for purposes of the enhanced penalty provisions of Title 21, United States Code, Section 841.   The defendant's argument in essence complains of the incriminating nature of the evidence, but that itself does not render it unfairly prejudicial for the purposes of Rule 403.  *United States* v. *Del Rosario*, No. S1 12 Cr. 81 (KBF), 2012 WL 2354245, at *4 ("[A]ll evidence which tends to prove guilt could be characterized as prejudicial, but not necessarily so under the rules of evidence . . . [o]nly unduly prejudicial evidence should be excluded under Fed. R. Evid. 403.") (S.D.N.Y. Jun. 14, 2014); *United States* v. *Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ("Generally speaking, any proof highly probative of guilt is prejudicial to the interests of that defendant.  The prejudice that Rule 403 is concerned with involves some adverse effect beyond tending to prove the fact or issue that justified its admission into evidence.") (internal quotation marks and citation omitted).  Accordingly, the challenged evidence is not only highly probative, but necessary, and its admission will result in no unfair prejudice to the defendant given that the evidence goes to the heart of the charged conduct.

## II.  THE DEFENDANT'S MOTION TO PRECLUDE EVIDENCE REGARDING HIS SOLICITATION OF MURDERS FOR HIRE SHOULD BE REJECTED

The defendant moves to exclude evidence regarding the defendant's solicitations for hire as irrelevant and unduly prejudicial.  (Def. Mem. at 9-16).  In addition, the defendant renews his motion to strike references to the murders for hire from the Indictment as surplusage.  As set forth below, as well as in detail in the Government's Motions in Limine, filed on December 9, 2014 ("Gov. Mot."), these applications should be rejected because the allegations are plainly relevant to the charges in the Indictment, and the significant probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant.

As a threshold matter, the defendant's argument that the solicited murders for hire are *irrelevant* to the charged offenses is wholly without merit.  As set forth in detail in the Government's prior submission, evidence of Ulbricht's solicitation of murders for hire constitutes direct evidence of the charged conspiracies because it is an integral part of the story of the manner in which Ulbricht owned and operated Silk Road, and reflects overt acts directly in furtherance of the alleged offenses. (Gov. Mot. at 20).  The evidence is relevant to show Ulbricht's control over Silk Road and his criminal state of mind in operating it, as it demonstrates Ulbricht's willingness to use violence against those who threatened his lucrative illegal enterprise.  (*Id.*).  Indeed, the Court has previously acknowledged the probative value of the murder for hire allegations in the context of denying the defendant's motion to dismiss. (Gov. Mot. at 21) (citing *Ulbricht*, 2014 WL 3362059, at *17).  Further, the evidence is direct evidence to prove identity—that Ulbricht was the man behind the "Dread Pirate Roberts," because evidence of online chats over on the Silk Road under the name pseudonym "Dread Pirate Roberts" intersects with evidence that was recovered from Ulbricht's laptop.  (*Id.*).  The

evidence is also alternatively admissible under Rule 404(b) to demonstrate the defendant's

knowledge, intent, and identity as "Dread Pirate Roberts."  (Gov. Mot. at 22).

 The murder for hire evidence is relevant to the charged offenses, regardless of whether

that Ulbricht solicited and paid for were actually carried out.[1]  The evidence plainly indicates that

the defendant perceived real threats to his interests in Silk Road, and that he took measures to

protect it by paying hundreds of thousands of dollars for the murders for hire.  (Gov. Mot. at 8-

13).  The defendant's reliance on *United States* v. *Valle*, 301 F.R.D. 53 (S.D.N.Y. 2014) is

therefore misplaced, because the defendant took concrete, real-world steps—such as these

payments—that evince the defendant's specific intent to have these murders carried out.  *Cf.*

*Valle*, 301 F.R.D. at 104 (dismissing jury verdict of conspiracy to commit kidnapping charge,

where there was no evidence that the defendant took any act in furtherance of the alleged

conspiracy; the evidence consisted only of online chats which the Government conceded were

"overwhelmingly fantasy role-play").  Ulbricht's solicitation of these murders may have been a

failure; but it was no fantasy.

 Further, for the reasons discussed in greater detail in the Government's prior submission,

the Court should not exclude the murder for hire evidence under Rule 403.  (Gov. Mot. at 22-25).

As previously discussed in detail, the evidence is highly probative of important issues in this

case, any potential prejudice is minimized by the *nature* of the murder for hire evidence

(including the proposed stipulation that the first murder for hire was not carried out and that the

Government does not currently have evidence that the other murders for hire were successful),

---

[1] As set forth in the Government's motion in limine, the Government understands and will
stipulate at trial that the first murder for hire Ulbricht solicited was not carried out (a fact of
which Ulbricht was not aware of at the time) and the Government will also stipulate that there is
currently no evidence whether the remaining alleged murders for hire were carried out.

and any residual potential prejudice would be effectively addressed by an instruction to the jury. (*Id.*).

Finally, the Court should reject the defendant's renewed motion to strike references to the murder for hire assertions from the Indictment.  As discussed in detail above, the murder for hire evidence plainly relevant to the charged offenses, which is fatal to the defendant's application. *United States* v. *Ulbricht*, 14 Cr. 68 (KBF), 2014 WL 5090039, at *17 (S.D.N.Y. Oct. 10, 2014) ("'[M]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory or prejudicial.'") (quoting *United States* v. *Scarpa*, 913 F.3d 993, 1013 (2d Cir. 1990)).

## III.    THE DEFENSE HAS NO BASIS FOR ANY PRETRIAL OBJECTION TO THE AUTHENTICITY OF THE ELECTRONIC COMMUNICATIONS INCLUDED IN THE GOVERNMENT'S EXHIBITS

The defense seeks to preclude admission, apparently, of virtually every one of the Government's exhibits consisting of a web page, forum post, e-mail, chat log, or other form of electronic communication, on the ground that such records, as a categorical matter, "cannot be verified as being what they purport to be."  (Mem. at 20).  The objection is baseless.  Electronic communications are subject to the same standards of authentication as any other records, and the defense has no grounds to presume that the Government will be unable to authenticate such records at trial.

The sole authority on which the defense relies for its objection is *United States* v. *Vayner*, 759 F.3d 125 (2d Cir. 2014), which the defense portrays as precluding the authentication of a whole "category" of documents – namely, "material captured directly or indirectly from the internet."  (Mem. at 20).  In reality, *Vayner* is a narrow decision that is inapposite here.  In *Vayner*, the Government offered into evidence a printed copy of a web page, "which it claimed

was [the defendant's] profile page from a Russian social networking site akin to Facebook." *Vayner*, 759 F.3d at 127.  The district court had found, based on the information on the page – which included a variant of the defendant's name, his Skype address, and information about where he worked – that it was "fair to assume" the information on the page was provided by the defendant, and accepted it into evidence as a party admission.  *Id.* at 128-29.  The Second Circuit found the admission of the profile page was improper, however, because the information about the defendant on the page was known to others who may have had reason to fabricate the page and falsely attribute it to the defendant, and the Government had not put forward any evidence beyond the page itself to show that the defendant had created it.  *Id.* at 132-33.

There are no similar circumstances here.  The Government does not even intend to offer any Facebook page or similar profile page purporting to have been posted by the defendant, let alone one that the defendant has any reason to assume could not be properly authenticated.  Nor does *Vayner* suggest that such records, or records of any other form of electronic communications, are subject to any special or heightened standard of authenticity.  To the contrary, the Second Circuit noted that it was "skeptical" that any greater scrutiny than usual is required for "evidence derived from the Internet."  *Id.* at 131 n.5.  And the court took pains to "express no view on what kind of evidence *would* have been sufficient to authenticate" the web page at issue in the case, emphasizing that, "as with any piece of evidence whose authenticity is in question, the 'type and quantum' of evidence necessary to authenticate a web page will always depend on context."  *Id.* at 133 (emphasis in original).

Accordingly, *Vayner* provides no basis for the defense to prejudge the Government's ability to authenticate the electronic communications included among its exhibits.  The Government intends to authenticate each such exhibit at trial in a manner appropriate to the

purpose for which the exhibit is offered into evidence.  To the extent the defense believes that any particular exhibit has not been properly authenticated, the defense can raise that objection when the exhibit is offered at trial.  But any authenticity objection to such exhibits at this junction is premature.  *See Rivera* v. *Incorporated Village of Farmingdale*, --- F.Supp.2d ----, 2013 WL 6888385, at *7 n.13 (E.D.N.Y. 2013) ("At present, this Court is unable to assess where and when the countless photographs were actually taken, *i.e.*, their authenticity, and refrains from conducting this assessment until Plaintiffs attempt to introduce them at trial."); *Wechsler* v. *Hunt Health Sys., Ltd.*, No. 94 Cir. 8294, 2003 WL 21998985, at *2 (S.D.N.Y. Aug. 22, 2003) (Leisure, J.) ("[T]he Court will reserve judgment on [defendant's authentication objection] until plaintiff seeks to offer these documents into evidence."); *United States* v. *Feola*, 651 F. Supp. 1068, 1129 (S.D.N.Y. 1987) ("It would be improper for this Court to speculate as to the circumstances that might surround the introduction of this evidence at trial, specifically, the adequacy of the foundation which will be set forth for the purpose of authentication, the probative value weighed against the potential prejudicial impact in light of the evidence presented, and the purpose for which such a statement will be introduced at that time.").

In any event, for the reasons set forth above, the Government believes it will readily prove the authenticity of the electronic evidence at trial.

## IV.    THE DEFENDANT'S MOTION TO PRECLUDE EVIDENCE REGARDING HIS ATTEMPTS TO OBTAIN FRADULENT IDENTIFICATION DOCUMENTS SHOULD BE DENIED

The defendant argues that the evidence of his attempt to procure false identification documents should be excluded, claiming that it is insufficient evidence of consciousness of guilt through flight, and that its probative value is substantially outweighed by the danger of unfair prejudice.  (Def. Mot. at 21-24).  As an initial matter, the defendant incorrectly suggests that the

Government is seeking to offer the fraudulent identification documents solely as evidence of consciousness of guilt.  While the documents are certainly relevant for that reason, flight is not the sole or even primary basis upon which the Government seeks to use this evidence at trial. (Gov. Mot. at 16-19).  Because the fraudulent identifications documents were themselves ordered through Silk Road – indeed, Ulbricht stated during their controlled delivery that they "hypothetically" could have been ordered from Silk Road – they are relevant to proving his identity as the operator of Silk Road, as they constitute direct evidence that Ulbricht knew of Silk Road and the illegal goods and services sold on the site.  By the same token, the fraudulent identification documents are also direct evidence of the conspiracy to traffic in fraudulent identification documents charged in Count Five of the Indictment, as they show that Silk Road did in fact facilitate the trafficking of such documents.

Contrary to the defendant's protestations, the fraudulent identification documents are indeed relevant to proving consciousness of guilt as well, in that they show that Ulbricht was preparing to live a life on the run if law enforcement ever caught on to him.  It is well-settled that evidence of an intent to flee can evidence consciousness of guilt.  *See United States* v. *Steele*, 390 Fed. Appx. 6, 12 n.2 (2d Cir. 2010) (noting that it is "universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself'") (quoting *United States* v. *Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977); *United States* v. *Mundy*, 539 F.3d 154, 157 n.2 (2d Cir. 2008) ("Our court (like others) has ruled that when 'the facts surrounding th[e] flight' support the inference, proof of flight may be received as evidence of consciousness of guilt.  This is not however a special rule of law but rather one of an infinite

number of applications of the general principle that evidence is relevant if it tends to support an inference that is pertinent to the factual issues in the case.").

The Second Circuit has sometimes cautioned courts to take a closer look at conduct offered as evidence of flight, in order to ensure there is a basis for the jury to infer that consciousness of guilt of the crime charged was the reason for the conduct, as opposed to some innocent explanation or consciousness of guilt of some other crime. *See Steele*, 390 Fed. Appx. at 11. Here, however, there is plainly a basis for the jury to make such an inference. The evidence will show that the defendant ordered a set of nine fake IDs, from six different states and three foreign countries, each with his picture (in various guises) but a different alias and address. Moreover, in ordering the fake IDs, the defendant specifically and repeatedly asked the Silk Road vendor he bought them from to include the highest-quality features "needed to pass airport security" and "needed to get through being pulled over by a cop."

There is no credible innocent explanation for why Ulbricht would want to purchase nine high-quality fake IDs suitable for these purposes other than to give him multiple options for fleeing and living under an alias if it became necessary to avoid apprehension by law enforcement. Accordingly, this case is in no way similar to cases relied on by the defense, where the evidence proffered of flight was "as consistent with innocence as with guilt," United States v. Cassese, 428 F.3d 92, 101 (2d Cir. 2005). *Cf. United States* v. *Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005) (defendant's wife attempted to obtain passports and airline tickets months after defendant had learned he was under surveillance, but no evidence that she did so with defendant's knowledge and no evidence that defendant was preparing to travel at the time of the ticketed flight, when the defendant was arrested); *United States* v. *Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986) (mere unexplained failure to appear for trial insufficient predicate for jury to infer

flight, where there was no other evidence that defendant had become a fugitive).  Nor is there

any evidence of some other unrelated criminal conduct in which Ulbricht was engaged that could

explain his conduct.  *Cf. United States* v. *Diallo*, 461 Fed. Appx. 27, 30 (2d Cir. 2012)

(considering, and rejecting, argument that admission of flight evidence was improper because

defendant's flight could be explained by fact that he was trafficking in illegal cigarettes, rather

than committing robberies).

Finally, as asserted previously, the Court should not exclude evidence of the false

identification documents under Rule 403.  (*Id*. at 18-19)  The evidence regarding Ulbricht's

attempts to obtain fraudulent identification documents is highly probative, and his attempts to

obtain nine fake identification documents on a single occasion are not any more "sensational or

disturbing" than the scope of the alleged offenses in this case, which include a large-scale

narcotics trafficking conspiracy, among other things, such that there would be any legitimate risk

that the evidence will "arouse irrational passions" among the jurors.  (*Id*. at 19).











18

## VI.   THE DEFENDANT'S REMAINING OBJECTIONS TO THE GOVERNMENT'S EXHIBITS ARE WITHOUT MERIT OR PREMATURE

Finally, the defendant lists a number of additional objections to proposed Government

exhibits.  (Def. Mem. at 31-32).  Each of these objections either lack merit or are not ripe for

resolution at this time:

1.      The defendant objects to a long list of exhibits as purportedly inadmissible hearsay (GX 107, 125A, 126A through D, 130, 240A through D, 421 through 243, 245, 255, 258, 259, 270, 276A through F, 278, 281, 301 through 335, 501A through C, 700, and 803).  The Government has provided its responses to these hearsay objections within the exhibit chart that was filed with the Court on December 10, 2014.

2.      The defendant objects to various photographs regarding seizures of narcotics made in Chicago, and screenshots of the Silk Road website (GX 100A through GX 103) as lacking foundation because the exhibits do not contain dates.  These objections are premature, as the Government expects to lay the foundation for admission of these exhibits at trial.

3.      The defendant objects to a number of exhibits involving seizures of narcotics from Silk Road (GX 100A-104A), undercover purchases of narcotics from Silk Road (GX 800, 801A, 802, and 802A), private messages sent between "Dread Pirate Roberts" and an undercover agent (GX 126C), a log of a chat between Ulbricht and an undercover agent (GX 295E), and a photograph of a chat between Ulbricht and an undercover agent (GX 501C), arguing that they only provide evidence of a unilateral conspiracy, because one of the participants is a law enforcement agent, or is operating under the direction of law enforcement, and therefore could not have formed criminal intent.  The defendant's attempt to recast each communication or transaction with an undercover as a separate individual conspiracy has no merit.  As discussed *supra* at 2-6, the Government intends to offer evidence of an overarching drug distribution enterprise and conspiracy that encompassed the defendant, administrator employees, Silk Road vendors and users.  This provides a proper foundation to render evidence of law enforcement undercover purchases and seizures from Silk Road vendors relevant to demonstrate the distribution of controlled substances through Silk Road. Further, statements of the defendant and co-conspirators to witnesses (including government agents) made in furtherance of the conspiracy are admissible against the defendant, even if the witness is not a member of the conspiracy.  *See* Fed. R. Evid. 801(d)(2); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 139 ("Though [Rule 801(d)(2)] requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there

is no requirement that the person to whom the statement is made also be a member.").

4.     The defendant objects to Silk Road listings offering books, manuals and "How To" guides regarding criminal activity (GX 116G, 116H, 116I, 271, 291C), asserting that their availability for sale on the Silk Road website is protected by the First Amendment.   The defendant also objects to a manual recovered from his laptop entitled *The Construction & Operation of Clandestine Drug Laboratories (Section Edition)* on First Amendment grounds (GX 271).  This objection is without merit, as it is well-settled that the admission of evidence of books or writings which are probative of pertinent issues in a criminal case do not violate the First Amendment.  *Wisconsin v. Mitchell*, 508 U.S. 476, 490 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent); *see also United States v. Rahman*, 189 F.3d 88, 188 (2d Cir. 1999) (noting that while the First Amendment fully protects writing and speeches, "it does not prevent the use of such speeches or writings in evidence when relevant to prove a pertinent fact in a criminal prosecution").

5.     The defendant objects to exhibits containing online chats between the defendant and co-conspirators that include discussions regarding potential criminal exposure for their activities on Silk Road, arguing that they are unduly prejudicial because they can be interpreted to be giving jurors instructions on the law (GX 226 and 230), and could confuse and mislead the jury with respect to matters of law.[4]  This evidence should be admitted because it is highly probative of the defendant's knowing participation in the charged conspiracies and knowledge of the illegal nature of the Silk Road enterprise.  Any potential prejudice can be adequately addressed by the simple, standard instruction indicating that that the jurors should only follow the Court's instructions on the law.  *See United States v. Snype*, 441 F.3d 119, 129-30 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.") (citations omitted).

6.     The defendant objects to exhibits relating to other contraband sold on Silk Road (GX 116G, 116H, 116I, 228A, 228B, 229A, 230, 276A-F and 227A-D) as allegedly inadmissible evidence of uncharged conduct under Rules 401 and 402 of the Federal Rules of Evidence.  These exhibits should be admitted for the reasons set forth in the Government's motion in limine regarding this specific evidence.  (Gov. Mot. at 25-27).

---

[4] For example, in GX 226, a co-conspirator states to Ulbricht: "planning is essential to survival and so is understanding that what we are doing falls under US Drug Kingpin laws."

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should reject each of the defendant's motions in limine.

Dated:  New York, New York
        December 12, 2014

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

        By:         _____
                              TIMOTHY T. HOWARD
                              SERRIN TURNER
                              Assistant United States Attorneys
                              (212) 637-2308/1946