

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

December 17, 2014

By ECF

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    Re:  *United States v. Ross William Ulbricht*, S1 14 Cr. 68 (KBF)

Dear Judge Forrest:

   The Government writes to respond to the Court's December 16, 2014 Order requesting briefing on the Government's legal theory on the narcotics conspiracy charge in the Indictment, as well as to provide further explanation for why the defense's objections to a number of the Government's exhibits on the ground that they evidence separate conspiracies rather than a single overarching conspiracy are without merit. As explained below, there is ample precedent for a conspiracy charge based on the operation of a marketplace for illegal drugs. Whether such a conspiracy may be characterized as a "hub and spoke" conspiracy or otherwise, what the Government must prove is simply that the defendant agreed with others to participate in a "collective venture directed toward a common goal" – here, the distribution of narcotics through Silk Road. Every vendor on Silk Road was part of that collective venture – no matter what drug they offered to sell or when they offered to sell it – because, among other reasons, they all contributed to the quantity and variety of offerings on Silk Road that drew a large customer base to the site and made it a highly lucrative marketplace in which to deal drugs. No one vendor would have been capable of attracting the same quantity of business alone as they were capable of attracting in combination on Silk Road.

   In any event, whether the Government's evidence will suffice to establish a conspiracy is for the jury to decide. The Government has properly pled a conspiracy charge in the Indictment, as the Court has specifically held. The jury should be given standard instructions on the elements of a conspiracy, and the Government will be required to show that those elements have been met. There is no need for the Court to make any pretrial ruling with respect to the Government's legal theory on this charge.

While the defense has sought to object to a number of the Government's exhibits on the ground that they evidence separate conspiracies rather than a single, overarching conspiracy, the single/multiple conspiracy issue is not a basis for an evidentiary objection.  While it is sometimes an issue that requires a jury instruction – in order to prevent prejudice to a defendant involved in only one of potentially multiple conspiracies at issue – such an instruction is not necessary in a case like this one, where a single defendant is on trial who is alleged to have been at the center of all the conspiratorial conduct charged.  Moreover, regardless of their relevance to the drug conspiracy charge in the Indictment, all of the exhibits to which the defendant has objected based on the single/multiple conspiracy issue are plainly relevant to the other three narcotics charges in the Indictment, and thus are admissible into evidence in any event.

## Applicable Law

A single conspiracy may be found where there is "'mutual dependence among the participants, a common aim or purpose[,] or a permissible inference[,] from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture.' " *United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) (quoting *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989)); *see United States v. Bertolotti*, 529 F.2d 149, 154 (2d Cir. 1975).  To prove a single conspiracy, the Government need show only that the defendant "agreed to participate in what he knew to be a collective venture directed toward a common goal."  *United States v. Geibel*, 369 F.3d 682, 688 (2d Cir. 2004).  Such an agreement may be inferred from a defendant's participation in the alleged enterprise and consciousness of its general nature and extent.  *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir. 1980); *Vanwort*, 887 F.2d at 383.

The rule is no different for so-called "hub and spoke" or "wheel" conspiracies.  "[A] wheel conspiracy is properly charged when a conspirator was involved in 'a broad project for the importation, distribution, and retail sale of narcotics.'  In that situation, the "broad project" provides "reason to believe that [the conspirator's] benefits derived from the operation were probably dependent upon the success of the entire venture.'"  *United States v. Taggert*, 2010 WL 532530, at *1 (S.D.N.Y. Feb. 11, 2010) (quoting *United States v. Sureff*, 15 F.3d 225, 230 (2d Cir.1994)).  Although a wheel conspiracy "is not properly alleged if the various 'spoke' conspirators are joined only by the existence of a common 'hub,'" *United States v. Reinhold*, 994 F.Supp. 194, 198 (S.D.N.Y.1998), in order to establish the "rim" of the conspiracy, all that is required is to show that "the 'spokes' knew or had reason to know of the existence, but not necessarily the identity, of one or more of the other spoke participants in the wheel conspiracy." *United States v. Manarite*, 448 F.2d 583, 589-90 (2d Cir. 1971).  In particular, it is sufficient if the co-conspirators "had knowledge of the far-reaching, overall scheme of which [the defendant] . . . formed the center core."  *United States v. Zabare*, 871 F.2d 282, 288 (2d Cir. 1989).

A single conspiracy "may encompass members who neither know one another's identities, nor specifically know of one another's involvement."  *Sureff*, 15 F.3d at 230 (internal citations omitted). Moreover, a "'single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations.'" *Williams*, 205 F.3d at 33 (quoting *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979)); *see also United States v. Aracri*, 968 F.2d 1512, 1522-23 (2d Cir. 1992) ("'The jury

need not have concluded that the same people were involved throughout the entire period of the conspiracy in order to find one conspiracy.'") (quoting *United States v. Nersesian*, 824 F.2d 1294, 1303 (2d Cir. 1987)).  Similarly, a single conspiracy is not transformed into multiple conspiracies "merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *Geibel*, 369 F.3d at 688 (quoting *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001)).

A conspiracy that is a constituent part of the conspiracy charged, but that differs in that it involves a shorter time period or fewer objects, is not considered a separate conspiracy, and evidence of it is sufficient to support a conviction for the overall conspiracy charged.  *See United States v. Berger*, 224 F.3d 107, 113 (2d Cir. 2000) ("The district court was correct as a matter of law to charge that the government needed only to prove agreement on one of the objectives charged in the indictment in order to establish that a conspiracy existed"); *United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983) (holding that, "with respect to allegations of time," the proof may "vary from the indictment provided that the proof f[alls] within the period charged").  Similarly, "when a defendant is charged with a single conspiracy among multiple members, and the proof at trial shows that he conspired with some, but not all, of those members, the variance is subject to the harmless error rule." *United States v. McDermott*, 277 F.3d 240, 242 (2d Cir. 2002) (upholding conviction even though Government proved only a more limited conspiracy than that charged in the indictment).

Multiple conspiracies do not exist where there are multiple agreements within an overall venture involving a single defendant.  For instance, in *United States v. Sir Kue Chin*, 534 F.2d 1032 (2d Cir. 1976), the defendant was charged in a conspiracy to sell heroin.  The evidence at trial showed two separate agreements, one between the defendant and one supplier ("Supplier-1"), and the other between the defendant and another supplier ("Supplier-2").  *Id.* at 1035.  On appeal, the Second Circuit Court rejected the defendant's claim that "the evidence presented at trial showed two conspiracies rather than one":

> While [Supplier-1] and [Supplier-2] may not have known each other, that is not significant in this case where there was only one defendant who bought from each to get narcotics for a single customer. The essence of the crime is an agreement, and there is no more reason to say that a supplier of narcotics is necessarily engaged in two conspiracies because he has two sources of supply than there would be because he had two purchasers. . . .  We have been cited to no case which involves only one defendant and where a claim of multiple conspiracies has been sustained. The evidence supported the conclusion that appellant was consciously acting as part of a single conspiracy of which he, himself, was the hub.

*Id.* (emphasis added).

Further, even where the evidence supports an inference that more than one conspiracy existed, the issue of a single conspiracy versus multiple conspiracies presents "a question of fact for a properly instructed jury."  *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990).  It is not a question to be resolved by the Court in connection with pre-trial motions.  *See United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992), *aff'd*, 17 F.3d 572 (2d Cir.

3

1994) ("It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary insufficiency."); *United States v. Massino*, 605 F. Supp. 1565, 1581 (S.D.N.Y. 1985), *rev'd on other grounds*, 784 F.2d 153 (2d Cir. 1986) ("[A] motion to dismiss for insufficient evidence can be decided only at trial, after the government has been put to its test, not before trial, based merely on assumptions of what the government's proof will be.").

Although defendants in multi-defendant cases may be entitled, in some circumstances, to a multiple-conspiracies instruction to the jury, a defendant who proceeds to trial alone can rarely demonstrate reversible error based on the lack of a multiple conspiracies instruction to the jury, because there can be no prejudicial spillover where only one defendant is on trial. *See United States v. Harris*, 8 F.3d 943, 947 (2d Cir. 1993) (trial of single defendant "seriously undermines any possible claim of substantial prejudice" from proof of multiple conspiracies). In fact, on several occasions, the Second Circuit has gone so far as to say that "'single/multiple conspiracy analysis does not apply to the trial of a single defendant.'" *United States v. Ling*, 172 Fed. App'x 365, 366 (2d Cir. 2006) (summary order) (quoting *United States v. Corey*, 566 F.2d 429, 431 n. 3 (2d Cir.1977)); *see also, e.g., United States v. Sir Kue Chin*, 534 F.2d 1032, 1035 (2d Cir.1976); *United States v. Atkins*, No. 10 Cr. 391(CM), 2012 WL 1415625, at *2 (S.D.N.Y. Apr. 19, 2012); *United States v. Choullam*, No. 05 Cr. 523 (LTS), 2008 WL 3861356, at *4 (S.D.N.Y. Aug. 19, 2008); Sand et al., Modern Federal Jury Instructions: Criminal, Instruction 19–5 Commentary (2013) (citing cases).

## <u>Discussion</u>

### A.     Questions Posed by the Court

With the above legal background in mind, the Government provides the following answers to the questions posed in the Court's December 16, 2014 Order.

> 1.      *Does the government contend that the defendant was the hub in a hub and spoke conspiracy – or would the government characterize his alleged position otherwise?*

Yes, although there is no need to reduce or limit the Government's theory to a figurative analogy. Indeed, the Second Circuit has cautioned against "the use of metaphors in conspiracy cases," noting: "'Conspiracies are as complex as the versatility of human nature and federal protection against them is not to be measured by spokes, hubs, wheels, rims, chains, or any one or all of today's galaxy of mechanical[,] molecular or atomic forms.'" *United States v. Taylor*, 562 F.2d 1345, 1350 n.2 (2d Cir. 1977) (quoting *United States v. Perez*, 489 F.2d 51, 59 n.11 (5th Cir. 1973)). Accordingly, there is no special evidentiary requirement uniquely applicable to "hub-and-spoke" or "wheel" conspiracies. Whatever metaphor may be used to describe a conspiracy, the Government's burden remains simply to prove that the defendant was part of a collective venture whose members shared a common illicit goal.

> 2.      *If the defendant is alleged to be at the center of the conspiracy as a hub or occupying a position akin to a hub, does the government agree that it must prove the existence of a rim to connect the various co-conspirators to each other?  If not, please provide case law support for the government's position.*

The Government is required to prove the existence of a "rim" only in the sense that it must prove that the co-conspirators who dealt with the defendant were aware that they were not dealing with the defendant in isolation, but instead were part of a "broad project" to distribute drugs.  *Sureff*, 15 F.3d at 230.  In this case, the "broad project" would be the distribution of drugs through the Silk Road marketplace.

> 3.      *Does the government contend that all sellers of all types of drugs during the entire conspiracy timeframe were part of a single conspiracy?  If so, please provide case law support.*

Yes.  Again, all the sellers on Silk Road were part of a "collective venture" or "broad project" to distribute drugs through the site.  *Geibel*, 369 F.3d at 688; *Sureff*, 15 F.3d at 230.   It does not matter that the sellers sold different types of illegal drugs.  The illegal object on which they all agreed was to distribute illegal drugs – of any kind – through Silk Road.  A narcotics conspiracy need not be limited to only one specific drug, and there is no need for the Government to link every conspirator to each drug involved in the conspiracy.  *See United States v. Walker*, 142 F.3d 103, 112 (2d Cir. 1998) ("The trial evidence clearly showed an on-going conspiracy with the goal of distributing drugs. The fact that the conspiracy began by distributing powder cocaine and then later changed to crack cocaine does not alter this conclusion."); *United States v. Barlin*, 686 F.2d 81, 89 (2d Cir.1982) ("The mere fact that more than one substance is charged . . . does not mean there are multiple conspiracies."); *United States v. Moten*, 564 F.2d 620, 625 (2d Cir.1977) (finding that the involvement of two drugs, cocaine and heroin, was "not significant" to the single/multiple conspiracy issue); *see also, e.g.*, *United States v. Marsalla*, 164 F.3d 1178, 1180 (8th Cir. 1999) ("Rivera contends the Government proved the existence of multiple conspiracies rather than a single conspiracy to distribute a number of different drugs. We disagree. The Government proved the existence of a single conspiracy by presenting abundant evidence that showed Rivera participated with other coconspirators sharing a common purpose and objective under one overall agreement."); *United States v. Edwards*, 105 F.3d 1179, 1182 (7th Cir.1997) (finding no error with jury instructions in a multi-drug conspiracy charge because the substantive underlying offense is a conspiracy to distribute *any* drug proscribed as a controlled substance); *United States v. Banks*, 10 F.3d 1044, 1054–55 (4th Cir.1993) (holding that evidence showing a defendant involved in heroin transactions was sufficient to prove his participation in a single large-scale drug conspiracy to distribute multiple types of drugs).

Nor does it matter that different sellers participated in the conspiracy at different times. As the Court noted in its opinion denying defendant's motion to dismiss, "[n]either changing membership nor different time periods of participation by various coconspirators precludes the existence of a single conspiracy, especially where the activity of a single person was 'central to the involvement of all.'"  *United States v. Ulbricht*, __ F. Supp. 2d __, 4 WL 3362059, at *7 (S.D.N.Y. 2014) (quoting *United States v. Eppolito*, 543 F.3d 25, 48 (2d Cir.2008) (citations omitted)); *see also, e.g.*, *United States v. Roach*, 164 F.3d 403, 412 (8th Cir.1998) ("A multiple

conspiracy instruction is not required just because there are a number of sources and independent dealers if there was a shared objective to sell large quantities of drugs.  A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions.") (citations omitted).

4.     *What does "mutual dependence" mean as a matter of law and what must the government prove to demonstrate this?  Put another way, apart from asserting mutual dependence, must the government show that a seller of LSD on day one of the launch was mutually dependent on a seller of heroin on day 250?*

The term "mutual dependence" is only one of several the Second Circuit has used to described the essence of a conspiracy.  As the Second Circuit has stated: "A single conspiracy may be found where there is mutual dependence and assistance among the [participants], a common aim or purpose . . . *or* a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture."  *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir.1989) (emphasis added).

In any event, the drug dealers on Silk Road "mutually depended" on one another, and had a common aim or purpose, in that each depended on the participation of other vendors, as well as the defendant, to sustain the online marketplace from which they all drew their clientele.  Silk Road attracted dealers to the site both because it offered an apparently secure place to sell drugs online – as a result of the infrastructure the defendant provided – and because it had a large customer base – as a result of the quantity and variety of drug dealers on the site.  The more dealers who participated on the site, the more vibrant the marketplace that it offered, attracting more customers to whom the dealers could market their wares.

Courts have followed the same logic in applying the conspiracy laws to drug marketplaces in real space.  For example, in *United States v. Brown*, 587 F.3d 1082 (11th Cir. 2009), the Eleventh Circuit upheld a conspiracy conviction where the defendants were involved in "operating a drug marketplace" in a one-square-mile area, where "crack cocaine dealers set up shop at various well-known locales," such as trees, houses, and schools within this zone.  *Id.* at 1089.  The court reasoned that "a conspiracy exists where, even though individual dealers are shown 'to have competed with each other in the sale of drugs and the procurement of customers, their combined efforts produced a haven for the illegal distribution of drugs.'"  *Id.* (quoting *United States v. Westry*, 524 F.3d 1198, 1213 (11th Cir. 2008).  The court noted that "[t]he 'marketplace' [was] at the heart of the conspiracy because those seeking cocaine would be drawn to a location and not to a particular dealer."  *Id.* at 1090.

Similarly, in *United States v. Rodriguez*, 525 F.3d 85, 102-03 (1st Cir. 2008), the First Circuit upheld a conspiracy conviction based on the interdependence of various drug dealers selling drugs in a certain housing project, known as "Covadonga."  The court explained that "the Covadonga housing project functioned as a busy narcotics bazaar in which the owners of different 'brands' of cocaine, crack, heroin, and marijuana cooperated to sell their distinctly labeled products."  *Id.* at 102.  "The success of each owner's drug operation depended on the overall security of Covadonga" – much as the success of each seller's business on Silk Road

6

depended on the overall security of the website.  *Id.* at 102-03.  Likewise, the "owners" made common use of certain resources, such as runners and look-outs – much as the sellers on Silk Road made common use of various features the website offered (such as its escrow service, dispute resolution center, and anonymous trading platform).  *Id.* at 103.  Accordingly, the *Rodriguez* court found "sufficient evidence for the jury reasonably to have concluded that, although many drug owners operated within Covadonga, the Covadonga drug marketplace itself functioned as a single drug conspiracy."  *Id.*; *see also United States v. Thomas*, 520 F.3d 729, 733-34 (7th Cir. 2008) (upholding conspiracy conviction: "The singular purpose of the agreement was to transform [a street block] into what was essentially an open-air drug bazaar through which the dealers could market their wares to the public protected by scouts and lookouts who would alert them to any police presence. This was a cooperative venture characterized by shared interests."); *Banks*, 10 F.3d at 1054 (holding that a conspiracy can consist of "a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market").

Thus, the law is clear that a drug marketplace is one type of "collective venture" that can form the basis of a conspiracy.  While Silk Road was an especially broad marketplace, that is only because its nature as an online business freed it from geographic constraints and enabled it to attract vendors and customers from all over the world.  But as a legal matter, it is not fundamentally different from the marketplaces at issue in the above-cited cases: its participants made use of common resources and shared a common interest in the site's operation.  Regardless of their physical location, sellers on Silk Road still shared the same online infrastructure, which the defendant specifically designed to advance their common criminal objective — the maintenance of a secure online space where they could sell drugs.

As for the Court's question whether the Government must "show that a seller of LSD on day one of the launch was mutually dependent on a seller of heroin on day 250," the answer is no.  The agreement or mutual dependence that forms the basis of a conspiracy need not be at such a granular level of detail.  "[A] defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy, and [a] defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member.'"  United States v. Santos, 541 F.3d 63, 74 (2d Cir. 2008).  Rather, a defendant need only know of the "existence" of the conspiracy as a whole, and "knowingly joined and participated in it."  *Id.*  Thus, while the sellers on Silk Road mutually depended on one another at a general level, in order to supply the breadth of offerings that draw large numbers of customers to the site, there is no need for the Government to prove that any particular seller specifically depended on any other particular seller in any one-to-one fashion.

> 5.   *How does mutual dependence work when buyers and sellers are targeting particular drugs only? (That is, why does a seller of LSD care about the vibrancy of the marketplace for heroin? What type of proof could establish any necessary inference?)*

Silk Road sellers depended on one another to establish and maintain Silk Road's reputation as a one-stop-shopping center for illegal drugs *generally*.  That reputation is what

drew customers to the site, to the benefit of all the sellers it hosted. Moreover, it is common for drug users to try different types of illegal drugs. (Indeed, Silk Road users commonly discussed and compared different drug types with one another on the Silk Road discussion forums.) Therefore, a seller of any type of illegal drug – whether LSD, heroin, or otherwise  – would have an interest in advertising to those inclined to use illegal drugs in general, not simply drug users who were already hooked on the drug the seller was offering. And that is what sellers were able to do on Silk Road. A heroin dealer's offerings were visible to the entire site, not just a section of the site open to heroin users. The same goes for LSD and any other type of drug. That is because every visitor to the site was, as far as vendors were concerned, a potential customer.

## B.    Defense Objections

While the above responses should make clear that the Government will be able to prove the existence of a single, overarching conspiracy at trial, there is no basis for the defendant to litigate (or for the Court to rule on) the issue at this juncture. As noted above, the issue of a single conspiracy versus multiple conspiracies presents "a question of fact for a properly instructed jury," *Maldonado-Rivera*, 922 F.2d at 962, and not a question to be resolved by the Court in connection with pre-trial motions. *See Gambino*, 809 F. Supp. at 1079. Although the defendant has sought to object to various Government exhibits on the ground that they are irrelevant to proving the existence of a single conspiracy – based on the supposition that *as a matter of law* the Indictment alleges multiple conspiracies rather than a single one – this is a blatant attempt to relitigate the defendant's motion to dismiss the Indictment, which the Court has already rejected, as we have explained in our response to the defendant's motions *in limine*.

But the defendant's objection is also misplaced more generally. When it is relevant, courts address the question of what constitutes a single conspiracy versus multiple conspiracies by providing a jury instruction on the issue. But such an instruction is only appropriate where the defendant can claim that he was part of only one of the conspiracies at issue and not others – so as to avoid the possibility of being convicted "on evidence unrelated to his own alleged activity." *United States v. Washington*, 48 F.3d 73, 80 (2d Cir.1995). Here, however, the defendant is the only defendant on trial, and he is alleged to be at the center of all the conspiratorial conduct at issue. Accordingly, the issue of whether that conduct amounts to a single conspiracy or multiple conspiracies is not one that threatens to cause him any prejudice. *See United States v. Ness*, No. 01 CR. 699 (AKH), 2003 WL 21804973, at *7 (S.D.N.Y. Aug. 6, 2003) (finding no prejudicial variance from indictment, even assuming evidence showed multiple conspiracies rather than single conspiracy, given that defendant was only defendant charged in the case and was at the hub of the alleged conspiracy).

Moreover, the defendant's attempt to raise evidentiary objections based on the single/multiple conspiracy issue is academic in light of the other charges in the case. As pointed out in the Government's response to the defendant's motions *in limine*, irrespective of the conspiracy charge, the exhibits at issue all are probative of the substantive narcotics charges in the Indictment and thus are admissible into evidence in any event. There is no reason why the Government should not be able to use those same exhibits to argue to the jury that the elements of the conspiracy charge have been met.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court overrule the defendant's evidentiary objections based on the single/multiple conspiracy issue in their motions *in limine*, and that the Court take no further action at this time.  At the eventual charging conference, the Government will respectfully request that the Court provide the conspiracy instructions to the jury sought by the Government in the parties' joint proposed jury requests, and that it not give any instruction suggesting that the Government is required to meet any special burden based on the "hub and spoke" metaphor or the single/multiple conspiracy issue.

Respectfully,

PREET BHARARA
United States Attorney

By: _____
SERRIN TURNER
TIMOTHY T. HOWARD
Assistant United States Attorneys
Southern District of New York

cc:    Joshua Dratel, Esq.