LAW OFFICES OF
## JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL

LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

STEVEN WRIGHT
*Office Manager*

May 27, 2015

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: *United States v. Ross Ulbricht*,
       14 Cr. 68 (KBF)

Dear Judge Forrest:

   This letter is submitted on behalf of defendant Ross Ulbricht, in response to the questions posed in the Court's May 20, 2015, Order (Dkt. #249), regarding the mitigation materials relevant to Mr. Ulbricht's upcoming sentencing this Friday, May 29, 2015. Those responses are as follows:

**1.** ***Can defendant provide the Court a complete copy of all of Dr. Caudevilla's communications with DPR (including, but not limited to, his weekly reports and private messages)? Defendant has attached two excerpts at Exs. 6 and 7 to the Lewis Declaration; the Court would like a complete set.***

   Unfortunately, it is not possible to provide the Court with a complete set of Dr. Caudevilla's communications with DPR. These communications were not produced by the government in discovery, and after a thorough search, do not appear to have been formally preserved elsewhere either. Accordingly, all communications between DPR and Dr. Caudevilla submitted to the Court as Exhibits 6 and 7 to my May 20, 2015, Declaration were provided to us directly by Dr. Caudevilla, who had saved a select number of his communications with DPR prior to the October 2013 closure of the Silk Road web site.

   Since our May 20, 2015, filing, and based on the Court's request for a complete copy of

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
May 27, 2015
Page 2 of 6

communications, Dr. Caudevilla has located a few additional weekly reports to DPR, which we have attached hereto as Exhibit 1, and has advised us that he does not have any additional communications in his possession. Thus, as of this letter, the Court has all preserved communications between DPR and Dr. Caudevilla of which the defense is aware.

2. *In the Declaration of Tim Bingham, he states, "I did not encounter a single customer whose first drug purchase was on the Silk Road website." (Bingham Decl. ¶ 6(f)). What is this based on? Was there a specific question posed in this regard? Please provide the Court the [form of] questionnaire.*

I have spoken with Tim Bingham and he has informed me that his statement that he "did not encounter a single customer whose first drug purchase was on the Silk Road website" was based on the responses he received to his "buyers questionnaire," attached hereto as Exhibit 2, that he circulated while conducting his research on Silk Road.

Indeed, there were several questions in the "buyers questionnaire" which would have revealed first time users and/or confirmed prior drug purchases and use, including the following:

- "Length of Drug using History;"
- "Repertoire of Street Drugs Used;"
- "Patterns of Prior Use;"
- "Favourite Street Drugs;"
- "Favourite Settings for Street Drug Use;"
- "Year when commenced using Internet drug sourcing. Why?;"
- "When did you first starting using Silk Road? Why?;"
- "Why do you purchase drugs from Silk Road as opposed to a street dealer, or as opposed to other drug sites on the web?;"
- "Have you found drugs and bought on the site that would not be available in your area?;" and
- "Do you use any street drugs now? If yes, Why? If no, Why?"

*See* "Buyers Questionnaire (Exhibit 2).

> —*Similarly, what is Bingham's conclusion in ¶ 6(j) based on? (See Bingham Dec. ¶ 6(j) ("I also did not encounter any Silk Road user who would have stopped purchasing drugs entirely if unable to do so on Silk Road."). Please provide the Court the [form of] questionnaire.*

Mr. Bingham informed me that his statement that he "did not encounter any Silk Road user who would have stopped purchasing drugs entirely if unable to do so on Silk Road" was also

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
May 27, 2015
Page 3 of 6

based on the responses he received to his "buyers questionnaire" (Exhibit 2), while conducting his research on Silk Road.

In addition to many of the questions bulleted **ante** in response to Question 2, answers to the following "buyers questionnaire" questions would also have revealed that a particular buyer would have continued to purchase drugs elsewhere if unable to do so on Silk Road:

- "Do you use any street drugs now? If yes, Why? If no, Why?;" and
- "What are your future intentions around purchasing and use of drugs on Silk Road?"

See "Buyers Questionnaire" (Exhibit 2).

> *—Relatedly, in footnote 2, Bingham states that certain drug users found that "Silk Road provided them the opportunity to try drugs they would otherwise not have known to try or had access to." (Bingham Decl., at 4 n.2). Does Bingham's conclusion in ¶ 6(j) take new/introductory usage into account? In other words, if a user had only tried 2C after learning of it on Silk Road, did that user indicated that he/ she would continue to purchase drugs elsewhere if unable to do so on Silk Road?*

Based on evidence that emerged through the "buyers questionnaire" (Exhibit 2) and Mr. Bingham's own interactions on the site, it is Mr. Bingham's position that even if a user had only learned of and ultimately tried a drug as a result of Silk Road, they would nonetheless seek to purchase that drug elsewhere if unable to do so through Silk Road.

3. *Bingham references violence/ safety concerns expressed by respondents. Were these concerns expressed by users or sellers or both (e.g. safety at the wholesale or retail level)?*

Mr. Bingham has informed me that violence/ safety concerns were expressed primarily by users, not sellers. In this regard, he also included his "Vendors Questionnaire," attached hereto as Exhibit 3.

4. *In reaching their conclusions as to Silk Road's safety, did Bingham and Ralston consider DPR's commission of murders-for-hire? Is that relevant to their conclusions in this regard?*

I have communicated with both Meghan Ralston and Tim Bingham regarding the bases for their conclusions as to Silk Road's safety. In regard to the Court's inquiry, Ms. Ralston responded,

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
May 27, 2015
Page 4 of 6

> it is my understanding that [the murder-for-hire] allegations remain uncharged in the Southern District of New York and that Mr. Ulbricht has neither been tried nor convicted for any crimes outside of those of which he has already been found guilty. I therefore did not consider the allegations when assessing the harm reduction and safety aspects of the site for people who buy or sell drugs. My opinions about the harm reduction merits of the site are based on the function and workings of the site itself. Nonetheless, were Mr. Ulbricht to be convicted of additional crimes, it would not change my opinions about the harm reduction merits of the website itself.

Mr. Bingham, likewise, responded that his "observations were focused on the findings of [his] study which related to user experiences on the site and harm reduction and not to the facts of the case."

Accordingly, the uncharged, unproven murder-for-hire allegations did not alter the conclusions reached by Mr. Bingham or Mr. Ralston regarding Silk Road's safety. Nor did the allegations appear to be relevant to their particular analyses.

5.  ***Dr. Caudevilla states in ¶ 10 of his declaration that, during the seven months of providing advice on Silk Road, he never came across a single report of a Silk-Road related overdose. Did he consider whether the posts of a number of users describing symptoms could have related to non-fatal overdoses (e.g. oldcactushand's post dated May 31, 2013)?***

In response to the Court's inquiry as to whether Dr. Caudevilla had considered posts regarding non-fatal overdoses when he declared that he "never came across a single report of a Silk-Road related overdose," Dr. Caudevilla provided the following answer:

> [i]n the statement "I never came across even a single report of a Silk Road-related overdose" I meant "lethal, fatal overdose." In any case, I do not remember [having] heard about SR related deaths in the forum and there [is] no data about this in DoctorX's thread.
>
> I have reviewed my thread[,] searching for non-fatal overdoses, or relevant acute toxicity cases . . . including the answers that I gave. [*See* relevant cases/ portions of DoctorX's thread, attached hereto as Exhibit 4].

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
May 27, 2015
Page 5 of 6

While acknowledging that "information provided through an e-mail system is very limited and in many cases does not allow [for] definitive conclusions" Dr. Caudevilla provided the following commentary and analysis as to six of the nine potential (non-fatal) overdose cases indicated in his thread, and which are included in Exhibit 4 to this letter:

> CASE 1 is a user who has been using new synthetic drugs "during two years." Substances like 4-MMC, methylone, 4-FA, 4-EMC or MXE were easily available through the Internet, outside SR.
>
> CASE 2 is an unusual reaction to LSD, as epileptic seizures are not a common LSD toxic effect. It is not clear if the episode was really a "seizure" or if it was related to drug use.
>
> CASE 4 seems [to be] a psychiatric disorder that worsened after a single DMT experience, but there are symptoms before use of the substance.
>
> CASE 5 refers [to] . . . respiratory-cardiovascular symptoms that could be (or not) related to illegal drug or nicotine use.
>
> CASE 6 is a depressive acute episode after a high dosage of cocaine. It is the unique case in which the user refers [to having acquired the drug on Silk Road].
>
> CASE 7 refers to an unavailable page of the forum[.] It seems [to be] an acute ketamine intoxication but I do not remember any data.

Dr. Caudevilla also noted that "the thread reviewed is the 'public' part of the forum but [he] also provided advice through private messages (around 100-150). These messages are unavailable (although topics covered are in the reports sent)." *See* Exhibit 1. Nonetheless, Dr. Caudevilla reported that he "do[es] not remember about any death or fatal overdose in these messages."

He does, however, "remember once . . . assessing a person across instant messages whose girlfriend had suffered an acute reaction." He does not "remember details of the story but it is described in [an article]," which notes that "[o]ne Silk Road member, Trust In Us, wrote that his girlfriend had overdosed and contacted Caudevilla who happened to be online at the time: 'He gave her the directions she followed and lived.'" *See* Eileen Ormsby, "Fernando Caudevilla: Spanish Doctor Advises Drug Users on the dark web's Silk Road," *The National* (October 20, 2014), available at

<div style="float:left">
LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**
</div>

Hon. Katherine B. Forrest
United States District Judge
Southern District of New York
May 27, 2015
Page 6 of 6

http://www.theage.com.au/national/fernando-caudevilla-spanish-doctor-advises-drug-users-on-the-dark-webs-silk-road-20141020-118lfi.html.

None of the communications indicate that the girlfriend of the person who contacted Dr. Caudevilla, and who suffered the overdose, obtained the drugs that caused the overdose from any vendor on the Silk Road site. Thus, it is just as likely that the resource provided by Silk Road via Dr. Caudevilla's expertise and guidance saved the life of a person whose drug crisis was not the result of purchases from a Silk Road vendor.

In addition, Dr. Caudevilla notes that he has "been involved in on-line assessing [of] drug users for 10 years and it is a bit difficult for [him] to remember every case."

Respectfully submitted,

Lindsay A. Lewis

LAL/
Encls.

cc:   Serrin Turner
      Timothy T. Howard
      Assistant United States Attorneys