UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

UNITED STATES OF AMERICA,                                14 Cr. 68 (KBF)

                          Plaintiff,                       MEMORANDUM OF LAW
                                                         IN SUPPORT OF MOTION
                                                         FOR RECUSAL


                -v-

ROSS WILLIAM ULBRICHT,

                   Defendant.

-------------------------------------------------X

On February 4, 2015, Defendant Ross Ulbricht was convicted by his jury of various offenses and he was subsequently sentenced by the court to life imprisonment. Mr. Ulbricht has appealed his convictions and sentence to the Second Circuit Court of Appeals, and his appeal has been denied. On December 22, 2017, Mr. Ulbricht submitted his petition for writ of certiorari to the Supreme Court, and his petition is currently pending.

There have been no proceedings in this court since Mr. Ulbricht was sentenced on May 29, 2015. Mr. Ulbricht now intends to pursue his right to file a Rule 33 Motion for New Trial Based on Newly Discovered Evidence, a motion which is due on or before February 5, 2018.

Mr. Ulbricht is entitled to have his Rule 33 Motion and all other proceedings in this case presided over by a fair and impartial judge. A judge "shall disqualify [herself] in a proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must recuse herself in a proceeding in which the judge has a personal bias or prejudice concerning a

party. 28 U.S.C. § 455(b)(1).  The requirement that a judge recuse herself whenever her impartiality might reasonably be questioned, is commonly linked to circumstances where the alleged impartiality originates with an extrajudicial source.  *U.S. v. Carlton*, 534 F.3d 97, 100 (2nd Cir. 2008), citing *Liteky v. United States*, 510 U.S. 540, 544 (1994).  Extrajudicial sources, although a common basis, are not the exclusive basis for establishing bias or prejudice. *Liteky v. United States*, 510 U.S. 540, 551 (1994). "The goal of section 455(a) is to avoid even the appearance of partiality."  *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 860 (1988).

I.     **The trial court undermined the presumption of innocence and prejudiced the jurors against the defendant by empaneling an anonymous jury.**

The trial court began the trial with an *in camera*, unsolicited, unexplained, and unannounced decision to empanel an anonymous jury.  Declaration of Paul Grant, par. 5, 6, 7. No one reviewing the transcripts of pre-trial proceedings or the court's docket could glean from the record that the court had determined to, or had empaneled an anonymous jury.  Yet, the trial transcript reveals that the jurors' names were never mentioned in trial proceedings and that the jurors were advised at the conclusion of the trial that they would never need to reveal their names to anyone.  Declaration of Paul Grant, par. 5.

The juror questionnaires administered to prospective jurors before the trial convened in open court, reveal that the prospective jurors had been told prior to the trial not to provide their names in the juror questionnaire.  This is apparent as only three of the 183 prospective jurors filled in their names in the space provided. Declaration of Paul Grant, par. 4.  Someone obviously instructed the prospective jurors not to write their names on the form.

During the first day of trial, after the anonymous jury had been empaneled, the trial court then concealed from the public and Mr. Ulbricht the fact that an anonymous jury had been empaneled. This was apparent when the trial court stated in open court that the presence of jury rights protesters and pamphleteers outside the courthouse might require the court to empanel an anonymous jury. Addressing defense counsel Joshua Dratel, the court stated: "I know, Mr. Dratel, you have objected and not wanted to have an anonymous jury. But if individuals are continuing, I don't really know if we've got much alternative." Tr. 1-13-2015 at 116.

It's not clear what the court was referring to, in mentioning defense counsel Dratel's "opposition" to an anonymous jury, for two reasons: (1) the court had just completed empaneling an anonymous jury without any objection from defense counsel, and (2) because undersigned counsel searched the public docket and the pre-trial hearing transcripts and found no indication in the record that the parties and trial court had ever addressed the possibility of empaneling an anonymous jury. Declaration of Paul Grant, par. 7. It may be that the trial court was threatening additional "anonymizing measures," measures that would have included having the jurors "brought out to a different place and brought in specially. I prefer for the defendant not to do that." Tr. 1-13-2015 at 102. "[W]e won't let it go any longer than that because it's a classic reason to allow for additional procedures." Tr. 1-13-2015 at 103.

What is clear is that neither the public nor Mr. Ulbricht had any idea that an anonymous jury had been empaneled. Mr. Ulbricht would have voiced his objection, had he been aware of the court's undisclosed action to empanel an anonymous jury, and had he been aware of the fact that he had been prejudiced by an erosion of the presumption of innocence. Declaration of Ross Ulbricht, par. 6, 7, 10, 11, 13, 14, 17.

"A district court may order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected."  The empaneling of an anonymous jury and its impact on the presumption of innocence must receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense. *U.S. v. Thomas*, 757 F.2d 1359, 1363 (2nd Cir. 1985), *citing Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693 (1976). Where a trial court examines the specific facts of the case, considers the arguments of counsel, determines the jury needs protection, and gives the jury an intelligent, reasonable and believable explanation for concealing the jurors' names that does not cast the defendant in an unfavorable light, *the defendant's interest in avoiding erosion of the presumption innocence may be overcome.  Id.*, at 1364-1365.

If an anonymous jury is determined to be warranted, a defendant's fundamental rights must be protected "by the court's conduct of a voir dire designed to uncover bias as to issues in the cases and as to the defendant," and by "t[aking] care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities or for taking other security measures." *United States v. Paccione*, 949 F.2d 1183, 1192 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992).

In this case, the court did not consider the arguments of counsel, did not on the record examine the facts of the case, did not provide a reasoned basis for empaneling an anonymous jury, and there is no record that the court ever provided to the jurors an intelligent, reasonable, and believable explanation for concealing the jurors' names.  In fact, there is no record at all of

4

how the court made or implemented this decision. This decision appears to have been made

privately, based on the trial court's own personal, undisclosed reasons.  The decision implies the

trial court considered Mr. Ulbricht to pose a threat to the jurors. The jurors may well have

inferred that the trial court thought they needed protection from Mr. Ulbricht or from persons

associated with him, thus prejudicing Mr. Ulbricht's right to a fair trial and eroding his right to

the presumption of innocence.

Mr. Ulbricht did not waive his right to the presumption of innocence; he did not waive his

right to have his case presided over by a fair and impartial judge; he did not waive his right to

trial by a fair and impartial jury; he did not knowingly or intelligently waive any of his fair trial

or due process rights; and he did not authorize or consent to his trial counsel waiving any of

those rights on his behalf.  Declaration of Ross Ulbricht, par. 2, 3, 4.

**II.    The trial court engaged in actions which would cause a reasonable person to doubt the impartiality of the court, when the court told the jury they would get all the evidence they needed to reach their verdict.  The statement also compromised the presumption of innocence.**

During the in-court voir dire process, the trial court intervened on behalf of the

government by advising the jurors that *"all of the evidence that you are going to need to render a*

*verdict will be evidence received into evidence at this trial."* Tr. 1-13-2015, Voir Dire at 17.

This statement implied that the trial court had already previewed the government's evidence and

determined that their evidence would be sufficient to prove the defendant guilty.  How else could

the court assure the jurors they were going to receive all the evidence they needed to reach their

verdicts? The only verdict that requires evidentiary support, is a verdict of guilty.

5

There is only one party with the burden of proof at trial, and that is the government. When the trial court told the jury they would receive all the evidence they needed, the trial court vouched for the strength and sufficiency of the government's evidence.  The court certainly wasn't talking about the evidence that Mr. Ulbricht might produce, because he had no obligation to produce any evidence or prove his innocence.  A jury doesn't need any evidence to render a verdict of acquittal.

A common trial strategy for the defense in many cases is to put on no evidence and argue at the close of evidence that the government's evidence was insufficient to prove beyond a reasonable doubt that the defendant committed the crime(s) charged.  The court's assurances to the jury of the strength of the evidence, before any evidence was even introduced, deprived Mr. Ulbricht of that argument and of the presumption of innocence and of his right to a fair trial.

When addressing the jury, as in all aspects of trial administration, the trial court must avoid any appearance of partiality, to avoid running afoul of the maxim that "prosecution and judgment are two quite separate functions in the administration of justice; they must not merge." *United States v. Norris*, 873 F.2d 1519, 1527 (D.C.Cir. 1989) (*quoting United States v. Marzano*, 149 F.2d 923, 926 (2d Cr. 1945).  Each judicial intervention raises the possibility that the jury will perceive the court as favoring one party over the other.  *See Starr v. United States*, 153 U.S. 614, 626 (1894) ("It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling.")

The trial court presented the appearance of judicial bias when its words implied that the court was vouching for the sufficiency of the government's evidence at the very beginning of the

6

trial, when instructing the jury about their role in the case and in advising them of what was to come, thus causing serious prejudice to Mr. Ulbricht's right to a fair trial.

The trial court didn't leave much room for doubt that it meant the jury really would receive all the evidence needed to convict, when on Day 2 of the trial, the court intervened in a manner that showed the intent of the court to help the government strengthen its presentation of evidence.

The court advised the prosecuting attorney that its first witness had described the Tor browser in a way that was just "mumbo jumbo to most people on the jury right now. . . [I]n terms of clarity, I do think clarity of the evidence is important here.  The jury I do think needs to understand things.  I wanted to give you a sense that there still is room for clarity." Tr. 1-14-2015 at 127.  The government responded by telling the court that it was trying to explain the use of the Tor browser to the jury, and by informing the court what it was trying to communicate: "I think the point is, it hides an IP address and, therefore, allows people to anonymize their identities and locations. That's really all we're trying to get across."  Tr. 1-14-2015 at 127.

The court then stated that it was not telling the government how to put on its evidence, it was just trying to help the government keep in mind that in trying to make something seem simple, they might make be making it sound more complex.  Tr. 1-14-2015 at 127-128.

The government accepted the court's advice, and began the second day of testimony by having their witness re-explain what the Tor network was, how it worked, and what it allowed for, complete with a demonstration.  Tr. 1-14-2015 at 135-139.  This second-day testimony was much more clear and effective than the testimony presented through the same witness before the trial court intervened and advised the prosecutor about the weakness and lack of clarity of his

presentation.

That kind of judicial intervention presents a strong appearance of partiality.  That judicial intervention had a clearly perceptible effect on the quality and clarity of the government's presentation of evidence, from that point forward in the trial. The court's intervention did help the government present its case.

The trial court conducted Mr. Ulbricht's trial in a manner evidencing pre-judgment of Mr. Ulbricht (the jury needed protection from him) and in a manner evidencing pre-judgment of the evidence, telling the jury that the [government's] evidence presented would support their verdict. The trial court successfully persuaded the prosecutor as to the need to present his evidence more clearly, pointing out specific weaknesses in the government's first attempt to explain the Tor browser to the jury.  The court's advice and observations resulted in the prosecutor presenting further testimony to more clearly explain the Tor browser.  The trial court's actions and statements in the course of the trial presented the appearance of partiality and bias and actually appear to have helped the government in presenting its case.

Defense counsel did not object to these court interventions and statements but Mr. Ulbricht did not waive his right to object. Declaration of Ross Ulbricht, par. 11, 14, 15, 17.  Nor did Mr. Ulbricht authorize defense counsel to waive his right to object to the court's intervention and statements which appeared designed to help and support the government.  Declaration of Ross Ulbricht, par. 19.

## III.    The Trial Court Displayed Bias Against Mr. Ulbricht At Sentencing

The trial court displayed an animus against and fear of Mr. Ulbricht's philosophical views at sentencing, causing any reasonable observer to wonder whether the sentence imposed was a

sentence designed to punish him for his views and to suppress his political views, views which

the trial court found to be "deeply troubling and terribly misguided and also very dangerous."

Before pronouncing Mr. Ulbricht's sentence, the court again mentioned his philosophy: *". . . the*

*reasons that you started Silk Road were philosophical and I don't know that it is a philosophy*

*left behind."*

The trial court should not have concerned itself about Mr. Ulbricht's philosophy in

determining his sentence.  His freedom of expression (and belief) *"*is . . . protected against

censorship or punishment, unless shown likely to produce a clear and present danger of a serious

substantive evil that rises far above public inconvenience, annoyance, or unrest.*″ Terminiello v.*

*City of Chicago*, 337 U.S. 1, 4-5 (1949). The right to free speech embraces the liberty to discuss

matters of public concern without . . .  fear of subsequent punishment. *Thornhill v. Alabama*,

310 U.S. 88, 101-102 (1940).

The court's expressed concern about Mr. Ulbricht's "deeply troubling and terribly

misguided and also very dangerous" political views, combined with the imposition of the

harshest penalty the law allowed, gives the appearance that the sentence may well have been

imposed to punish Mr. Ulbricht for his dangerous views and to prevent his views from being

expressed or followed.  The court's focus on Mr. Ulbricht's views provides the appearance, if not

the proof, that the court was biased against Mr. Ulbricht because she found his views so troubling

and dangerous.

A reasonable person can't read the sentencing transcript without questioning whether the

trial court may have sentenced Mr. Ulbricht based on her disagreement with and fear of his

views. The law forbids sentencing based on consideration of a defendant's political or

philosophical views:  Sentencing based on "race, sex, national origin, creed, and socioeconomic status of offenders" is prohibited.  See 28 U.S.C. § 994(d); U.S.S.G. § 5H1.10.

The trial court's expressed concerns about Mr. Ulbricht's philosophy provide the appearance that the trial court based his sentence on impermissible considerations, and provides the appearance of bias, irrespective of whether there was actual bias, and when under such circumstances the case is remanded for re-sentencing, . . .  "[T]he better course is to remand to a different judge for re-sentencing as a matter of course, irrespective of whether there was actual bias . . ." *See United States v. Kaba,* 480 F.3d 152, 157 (2nd Cir. 2007).

The better course in this proceeding, will be for the trial court to recuse itself.  The appearance of bias at sentencing would cause a reasonable person to question the impartiality of the court, and requires that the trial court recuse itself from further proceedings in this case.

**No Waiver of Right to Seek Recusal**

Mr. Ulbricht has never knowingly and intentionally waived his right to have his case presided over by a fair and impartial judge, nor has he waived his right to ask for recusal of the trial court based on actual or apparent bias.  Declaration of Ross Ulbricht, par. 8, 12.  Nor has he authorized his trial or appellate counsel to waive any of those rights, including the right to seek recusal where the trial court's actions and statements reveal actual bias or provide the appearance of bias. Declaration of Ross Ulbricht, par. 19, 20.

Mr. Ulbricht has never before had the opportunity to ask for the court's recusal in this case.  He wasn't aware of his rights to request recusal at trial or sentencing, or of his rights to object to the court's actions described above.

Waiver is the intentional relinquishment of a known right.  *United States v. Quinones,*

10

511 F.3d 289, 321 n.21 (2d Cir. 2007). Mr. Ulbricht did not knowingly and intentionally waive

any of his fair trial or due process rights, nor did he authorize his trial or appellate counsel to

waive any of his rights.  Declaration of Ross Ulbricht, par. 18, 19, 20. Mr. Ulbricht was not

aware that the trial court secretly empaneled an anonymous jury or how that would prejudice his

jury or what his rights were to object.  He was not aware of the implications of the trial court

vouching for the strength of the government's evidence.  He was not aware he had a right to

object to the trial court helping the prosecutor present his evidence. He was not aware he had the

right to move for recusal of the court at sentencing, for the trial court's prior actions and

statements exhibiting bias or the appearance of bias.

## CONCLUSION

The trial court's actions and words as described above, provide at least the appearance of

partiality and bias, and would cause a reasonable person to question the court's partiality.  Mr.

Ulbricht, in the interest of justice and on the basis of the facts and arguments submitted, hereby

moves the Court for an Order recusing the court in this matter, and for such other relief as is just

and proper.  The motion for recusal is based upon this Memorandum of Law in Support of

Motion for Recusal, and upon the Declaration of Paul Grant and the Declaration of Ross

Ulbricht, each of which is submitted with this motion.

Dated: 2/5/2018                         Respectfully submitted,

                                        /s/ Paul Grant
                                        Paul Grant
                                        Counsel for Ross Ulbricht
                                        P.O. Box 2720
                                        Parker CO 80134
                                        Telephone: 303-909-6133
                                        Email: paul_pglaw@yahoo.com