PAUL GRANT
*LAW OFFICE OF PAUL GRANT*
P.O. Box 2720
Parker CO 80134
303-909-6133

February 5, 2018

**BY ECF**
Hon. Katherine B. Forrest
United States District Judge
United States District Court
500 Pearl Street
New York NY 10007

Re:   *United States v. Ross William Ulbricht, et al*, 14 Cr. 68 (KBF)
      Request for Extension of Time to Submit Rule 33 Motion

Dear Judge Forrest:

    I write on behalf of Defendant Ross Ulbricht to request an extension of time through and including May 7, 2018, in which to submit his Rule 33 Motion for a New Trial Based on Newly Discovered Evidence. I have contacted the government about this request and AUSA Eun Young Choi advised that the government will not oppose this request.

    Mr. Ulbricht was tried in this court and on February 4, 2015, his jury brought back guilty verdicts on all charges in the indictment. The deadline for filing his Rule 33 motion is 3 years from the date of those verdicts, which means his motion is due to be filed on or before February 5, 2018. Rule 33(b), Fed.R.Crim.P.; Rule 45(a)(1)(C), Fed.R.Crim.P.

    Mr. Ulbricht submitted his petition for writ of certiorari to the Supreme Court on December 22, 2017, and his case was docketed on January 4, 2018. That action does not extend the deadline for filing his Rule 33 motion.

    Mr. Ulbricht is requesting an extension of his filing deadline until and including May 7, 2018. This extension is made necessary for the following reasons:

    1. Undersigned counsel has yet to receive the complete client file from prior trial and appellate counsel, Joshua Dratel and Lindsay Lewis. Counsel has made every effort to persuade Mr. Dratel and Ms. Lewis to collect Mr. Ulbricht's complete client file, and send it to undersigned counsel. See generally the Declaration of Paul Grant in Support of Request for Extension of time to Submit Rule 33 Motion for New Trial, which declaration is filed herewith.

    After nearly 8 months of continuous efforts by undersigned counsel to obtain the client file from Mr. Dratel, Ms. Lewis advised me [for the first time], on January 22, 2018, that Mr.

1

Dratel still retains a file cabinet full of Mr. Ulbricht's case materials, which they will release to me only if Mr. Ulbricht, undersigned counsel, or someone will pay them for their time to gather together the file materials, search their email records to find relevant emails, produce a copy of client file materials for them to retain, and ship the remaining client file materials to Paul Grant. Declaration of Paul Grant In Support of Request for Extension of Time, par. 3-15.

Undersigned counsel cannot distinguish what may be newly discovered evidence from evidence that was available to trial counsel, without the complete client file. Counsel can't distinguish among what might be discovery violations by the government, strategic decisions by defense counsel, or neglect of issues by trial counsel, without the complete client file.

Counsel can't adequately represent Mr. Ulbricht in Rule 33 or in other post-conviction matters, such as an investigation into possible 28 U.S.C. § 2255 claims, without the complete client file. Counsel's efforts to find newly discovered evidence and to provide competent representation to Mr. Ulbricht are being hindered by the refusal and failure of trial and appellate counsel Dratel to collect and transmit the entire client file to undersigned counsel.

2. Counsel has requested data from the USAO relating to the pen-trap orders and data collection used in this case. The USAO advised (in November 2017) that they were searching for these records in FBI files. The USAO advised that they found it difficult to locate the files, given that the lead agents involved in the investigation no longer work for the FBI.

The USAO advised undersigned counsel on Friday, February 2, 2018, that they had located some pertinent files, files containing pen register and trap and trace data collection ("PRTT files"), and that they will be sending that data to undersigned counsel on a disk. Undersigned counsel has also requested those files and FBI surveillance files through a FOIA request sent to the FBI, but the FBI has recently said that some of the records being sought are in the control of the Executive Office for United States Attorneys. It isn't clear at this time whether the FOIA request will produce any records.

The requested PRTT files are material to determining whether Mr. Ulbricht has grounds for filing a Rule 33 motion. The affidavits in support of the laptop search warrant and the residence search warrant that were obtained during the course of the Silk Road investigation, both relied upon evidence allegedly collected pursuant to the pen-trap orders. Only the results from one pen-trap data collection were provided to the defense prior to trial. Undersigned counsel has requested from the USAO in the SDNY the files containing the data collected pursuant to four other pen-trap orders, the orders identified by magistrate case numbers as 13 MAG 2228, a Sealed Order for the Secret Service directed to Comcast, 13 MAG 2258 (the 9.19.13 wireless router pen for FBI), 13 MAG 2274 (9.20.13.Router Pen for FBI), and 13 MAG 2275 (9.20.13.MAC Address Pen for FBI).

It is not yet clear if those PRTT files are the files now being produced to the defense by the AUSA. Mr. Ulbricht will need expert assistance and an unknown length of time to examine

what are expected to be gigabytes of data.

Defendant Ulbricht did make a written discovery request to the government before trial for *any and all data obtained from pen registers judicially authorized in this case*. Doc 70-3, Par. 13, p. 3, 9/17/2014 letter from Joshua Dratel to AUSAs Serrin Turner and Timothy T. Howard. That request was for data material to preparation of the defense.

In response to Ulbricht's request for discovery of *any and all data obtained from pen registers judicially authorized in this case*, the government responded [somewhat ambiguously]:

*The Government has provided all available pen register data used to detect Ulbricht's email and Internet activity in September 2013, as well as pen register data received from Icelandic law enforcement authorities concerning the SR Server and the server described in the Tarbell Declaration as Server-1. To the extent any other pen register information was obtained in the course of the investigation, the Government objects to this request on the ground that such information is not material to the defense or otherwise required to be produced under Rule 16.* See Doc 70-4 at p. 5, 9/23/2014 letter from AUSA Serrin Turner to Joshua Dratel.

The government's response is artfully or inadvertently worded to avoid revealing whether the data used to detect Ulbricht's internet activity was available and whether it was or was not provided, and, at the same time, the government said that if any other data was not available, then it wasn't material and they were not required to produce it. It isn't clear from the response whether the government was saying that the data used to detect Ulbricht's internet activity in September 2013 was provided, or whether it was no longer available.

The government only produced to the defense the data resulting from one pen register, data in a file called 9.17.13 ISP Pen (Comcast). That pen register was authorized by the magistrate in Case No. 13 MAG 2236, and that order required data collection assistance from Comcast. That order did not authorize the collection of MAC addresses and did not authorize collection of routing data involving any data transmitted from or to any device identified by a MAC address.

Four other pen-trap orders were obtained. No data was ever produced in discovery for any of those four orders, yet the laptop search warrant cites the results from two of those orders, orders which did authorize the collection of MAC addresses, and which did authorize collection of data transmitted to or from devices associated with certain MAC addresses. Those two orders were obtained by AUSA Serrin Turner on 9/20/2013, in cases numbered 13 MAG 2274 and 13 MAG 2275.

If the data collected as a result of those two pen-trap orders was important enough to include in the laptop and residence search warrant affidavits, and important enough to include in Tarbell's declaration as to what data was and was not collected, then the data was material to preparation of the defense and it should have been provided to the defense. By law, that data,

along with descriptions of methods and equipment that law enforcement employed in the data collection, were required to be filed under seal with the court which authorized the orders. That data and those descriptions should be there still, available for review by Mr. Ulbricht. Mr. Ulbricht is today requesting access to those files, by separate motion.

Because three of the pen-trap orders authorized law enforcement (the FBI) to use their own data collection hardware and software, without third party involvement, the FBI was required to file in each of the three case files (13 MAG 2258, 13 MAG 2274, 13 MAG 2275) authorizing pen-trap data collection, a record *which will identify (i) any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network; (ii) the date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information; (iii) the configuration of the device at the time of its installation and any subsequent modification thereof; and (iv) any information which has been collected by the device.* 18 U.S.C. § 3123. The record to be maintained must be provided *ex parte* and under seal to the court which authorized the installation and use of the device within 30 days after termination of the order. *Id*.

The government has never produced the data collected pursuant to four of the five pen-trap orders, yet argued before trial against suppression of evidence obtained from the pen registers on the basis of the government's representation as to what each of the pen registers did and did not collect. If the government lacked the data, the arguments based on the knowledge of a government attorney were made in bad faith. If the government had the data, but did not produce it upon request, and misrepresented what it contained in argument to the court, that would be a serious problem. If the government had the data but did not produce it, that alone would constitute a serious discovery violation.

The government stated that the pen registers were used to establish when Ulbricht logged onto and off of the internet, in support of their argument that the search warrant applications to search for information to allow comparison with online activity were reasonable requests seeking relevant information, referencing Tarbell Dec. Ex. M., par. 33-41. See Doc. 56 at 29.

There is new information which has recently become available that reveals the FBI used electronic surveillance to track the movement and determine the precise location of Mr. Ulbricht in his residence as part of its pen register data collection, and to determine when he logged in and out on his laptop, while Ulbricht was in his residence. This information is revealed in the book *American Kingpin*, a book published in May 2017, long after the trial was concluded.

According to the author, Nick Bilton, his accounts are based, in part, on more than 250 hours spent with federal agents involved in the investigation, including FBI special agents [Tarbell and Kiernan], and including Homeland Security special agent Jared Der-Yeghiayan. Bilton's account of FBI surveillance correctly places Tarbell, Der-Yeghiayan, and Kiernan on site outside Ulbricht's residence, a short time before Ulbricht's arrest. He describes the actions and observations of these agents.

4

Bilton describes the FBI surveillance of Ulbricht in his residence:

"Jared [Der-Yeghiayan], Thom [Thomas Kiernan], and Brophy stood in front of the café near Ross' house, listening to Tarbell . . . They knew that Ross was at home because the FBI had an undercover SUV circling his block and monitoring the Wi-Fi traffic (this is pen register and trap and trace activity).  The system they were using (which should be described in the magistrates' files) would check the signal strength of the Wi-Fi on his computer and then, by triangulating that data from three different points they had captured as they drove around the block, they were able to figure out Ross's exact location, which at this very moment was his bedroom, on the third floor of his Monterey Boulevard apartment."  Bilton at 331.

## CONCLUSION

The description of methods, hardware and configuration used by the FBI to gather pen-trap data, as well as the data itself, were all essential and material to preparation of the defense and should have been provided before the trial.

Undersigned counsel will need to obtain and then review (1) all of the remaining client file materials from Joshua Dratel, (2) the new PRTT data promised by the prosecutor, and (3) material from the now sealed magistrate files, to see if these materials will provide the basis for a Rule 33 motion, *i.e.*, whether newly discovered evidence will show that a new trial is required.

It is clear from the facts presented that Mr. Ulbricht has diligently pursued the collection of evidence and of his file materials in his investigation into the basis for a Rule 33 motion.  He has a good faith basis for believing that investigation into the surveillance of him while within his residence, and investigation into the missing pen register data, will provide him with information that can provide the bases for a successful Rule 33 motion.

Mr. Ulbricht is serving a life sentence and justice requires that he be afforded the opportunity to research and present his motion for a new trial.  ***Mr. Ulbricht therefore respectfully requests, pursuant to Rule 45(b)(1)(A), Fed.R.Crim.P., and for good cause shown, that he be allowed an extension of time until and including May 7, 2018, in which to submit his Rule 33 motion***.

Mr. Ulbricht is incarcerated and has no ability to pay Mr. Dratel for the costs to search for, gather together, and reproduce his client file, or to pay the costs for shipping the file to current counsel.  Mr. Dratel is harming Mr. Ulbricht by holding onto portions of the client file until Mr. Ulbricht or undersigned counsel or someone pays him for collecting and transferring the complete client file.

For the reasons stated above, **Mr. Ulbricht further requests that the court order Joshua L. Dratel, of the law firm Joshua L. Dratel, P.C., to collect and transfer to Paul Grant, of the Law Office of Paul Grant, on or before February 23, 2018, all of Mr. Ulbricht's client file,** which file includes both trial court and appellate work performed for Mr.

Ulbricht, including all electronic documents in Ulbricht's file, all email communications in his possession or control which involve work on Ulbricht's cases, all paper documents in his file, and all sealed documents filed in Ulbricht's cases, with Joshua L. Dratel bearing all the costs associated with gathering the client file and transferring it to Mr. Grant.

Respectfully submitted,

/s/ Paul Grant
Paul Grant
Counsel for Ross William Ulbricht

cc: Eun Young Choi (by ECF)
    Assistant United States Attorney