PAUL GRANT
*LAW OFFICE OF PAUL GRANT*
P.O. Box 2720
Parker CO 80134
paul_pglaw@yahoo.com
303-909-6133

February 20, 2018

**BY ECF**
Hon. Katherine B. Forrest
United States District Judge
United States District Court
500 Pearl Street
New York NY 10007

Re:   *United States v. Ross William Ulbricht, et al*, 14 Cr. 68 (KBF)
        Petition for Rehearing Re Denial of Request for Extension of Time
        to Submit Rule 33 Motion

Dear Judge Forrest:

      I write on behalf of Defendant Ross Ulbricht to submit this petition for rehearing, asking that the court vacate its February 5, 2018 order (Doc. 309) denying the request for extension of time.  I have contacted the government about this request and AUSA Eun Young Choi advises that the government will take no position regarding this petition insofar as Mr. Ulbricht is requesting the court reconsider its denial of the request for extension of time.  The government did not oppose the original request for an extension of time.  The government is not endorsing Mr. Ulbricht's arguments.

      Mr. Ulbricht believes that the court has misapprehended, overlooked, or misapplied the following facts and pertinent law:

1.     The court is mistaken in not noting that the evidence Mr. Ulbricht brought to the court's attention is, in fact, new evidence that was neither disclosed nor known to exist at the time of trial. The court stated that the evidence to which Mr. Ulbricht now points (that the FBI was monitoring the defendant's online movements) was known at trial.

      What was known at the time of trial was that the FBI (claimed to have) monitored Mr. Ulbricht's online activities through the use of pen registers and trap and trace devices to collect pen register and trap and trace data ("PRTT data"), and that the FBI (claimed to have) conducted its activities pursuant to three pen/trap orders authorized by magistrates in the Southern District of New York. Doc. 307 at 2.  What was known at the time of trial was that the government had stated that there was no undisclosed PRTT data that would be material to the preparation of the defense.  Doc. 307 at 3.

What was not known prior to trial, and what the government then vehemently denied, was that the government was using unauthorized surveillance tools to track Mr. Ulbricht's physical movements and location within his residence.  Unauthorized and unwarranted surveillance by the FBI has now been revealed in the book *American Kingpin*, where the author describes how the FBI used surveillance equipment located outside the house to physically track Mr. Ulbricht's movement and computer activity and to determine his precise location in his residence.  Doc. 307 at 4-5.  This is new evidence.

What was not known (and was denied by the government) before trial (but is known now), is that the government did have additional and material FBI-collected PRTT data, evidence that was material to the preparation of the defense because it is data the government relied on in its applications for the laptop and residence search warrants.  The government apparently recently "found" some of this data and promised (on February 2, 2018) to deliver it to Mr. Ulbricht, for his review.  Doc. 307 at 3.  This is new evidence.

The government was required to produce the FBI-collected PRTT data prior to trial because the defense requested it.  "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense." Rule 16(a)(1)(E)(i), Fed.R.Crim.P.  Prior to trial, the government denied such evidence existed.  Doc. 307 at 3.

Mr. Ulbricht was entitled to rely on the government's statement that it had provided all available pen-trap data related to monitoring Ulbricht's internet activity, and that any other data it may have was not material and not subject to production. *See United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009).

Rule 16(a)(1)(E) permits discovery related to the constitutionality of a search or seizure. *U.S. v. Hector Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016).  Materiality is a "low threshold; it is satisfied so long as the information . . . would have helped" to prepare a defense. *Id., quoting United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).

The only obstacles that will prevent Mr. Ulbricht from inspecting, copying and using material information from the newly located PRTT data (and data in the magistrate's files) to challenge the warrants, should such information be contained in the data, are the court's February 5, 2018-dated orders denying Mr. Ulbricht the opportunity and the time to examine and use the data.

2. Mr. Ulbricht advised the court in his request for extension of time that he would need time to obtain and examine pen register and trap and trace ("PRTT") data from two sources:  (1) the newly located PRTT data promised by the prosecutor, and (2) material from the now-sealed magistrate files, to see if those materials would provide the basis for his Rule 33 motion, *i.e.*,

whether newly discovered evidence will show that a new trial is required. Doc. 307 at 5.

What the court did not note and apparently overlooked in its order denying the extension, is that <u>the government advised undersigned counsel, on February 2, 2018, three days before the deadline expired for filing his Rule 33 Motion</u>, that they had located additional PRTT data collected in this case, and would provide it to the defense. Doc. 307 at 2.

The government promised it was sending this new evidence to undersigned counsel, but three days later, and before the package arrived, the court denied the request for extension of time.

As a result, Mr. Ulbricht cannot use this new evidence (and data from the three sealed magistrate's files) even if the data constitutes evidence that would establish that the laptop and residence search warrants were unconstitutionally obtained.

The court's denial of the request for extension will thwart the pursuit of justice, *i.e.*, it will prevent Mr. Ulbricht from examining the data that may show the government engaged in illegal and warrantless surveillance of his activities within the privacy of his home.

3. Mr. Ulbricht advised the court in his Request that he was seeking to examine three now-sealed magistrate's files which, by law, should contain the pen register and trap and trace data collected by the FBI, as well as *a written description of the methods and equipment used in their surveillance*. Doc. 307 at 4.

After denying Mr. Ulbricht's request for extension of time to submit his Rule 33 Motion, on February 5, 2018, the court also denied (on the same day) "as moot" (Doc. # 311) Mr. Ulbricht's request to view the new evidence contained in the three magistrate's files.

The PRTT evidence in the three magistrate's files is new evidence because the government denied its existence in 2014, or denied that it would be material to the preparation of the defense.

The FBI-collected PRTT evidence in the magistrate's files was material because **the laptop and residence search warrants applications depended on that data**. Doc. 307 at 2. It also appears material to preparation of the defense because those records should reveal details of the FBI surveillance described in *American Kingpin*.

Tracking Mr. Ulbricht's movements and determining his location within his residence, without a search warrant, would constitute an unreasonable search of his residence. *See Kyllo v. United States*, 533 U.S. 27 (2001). The FBI surveillance described in *American Kingpin* "involved officers on a public street engaged in more than naked-eye surveillance of a home." *See Kyllo* at 33. "Where . . . the government uses a device to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a

"search" and is presumptively unreasonable without a warrant." *Id.*, at 40.

Mr. Ulbricht should be allowed the time and opportunity to examine the data and written record now concealed in the three sealed magistrate's files, and to use that information to vindicate his Fourth Amendment rights, if that improperly withheld data and record show Fourth Amendment violations.

4.      In the court's denial of the Request for Extension, the court stated: <u>*The transcript reveals that the very evidence to which he points (that the FBI was monitoring the defendant's online movements [sic]) was explicitly known at trial.*</u>  Doc. 309.

The court's statement is incorrect.  What Mr. Ulbricht pointed to in his Request for Extension of Time, was the passage in *American Kingpin* which reveals, for the first time, that the FBI was tracking Mr. Ulbricht's physical movement and location in his house:

*They knew that Ross was at home because the FBI had an undercover SUV circling his block and monitoring the Wi-Fi traffic (this is pen register and trap and trace activity). The system they were using (which should be described in the magistrates' files) would check the signal strength of the Wi-Fi on his computer and then, by triangulating that data from three different points they had captured as they drove around the block, they were able to figure out Ross's exact location, which at this very moment was his bedroom, on the third floor of his Monterey Boulevard apartment.* Doc. 307 at 5.

The court's statement refers to testimony from Der-Yeghiayan (Tr. 319, *et seq*) which described him monitoring <u>DPR's</u> (not Mr. Ulbricht's) <u>online activity</u>.  Der-Yeghiayan initiated online chats with DPR because and he was able to sign on and access staff chat with DPR. When he was chatting with DPR, he could tell that DPR was online.  Tr. 314.  What Der-Yeghiayan described in his testimony was FBI efforts to correlate DPR's chat activity with Mr. Ulbricht's online activity, in an effort to establish that DPR was Ulbricht. They were hoping to initiate a chat with DPR at the same time they were watching Mr. Ulbricht *in real life - i.e.*, in a public place and active on his laptop, to establish that DPR and Ulbricht were one and the same person.

The trial testimony that the court refers to does not refer to the FBI monitoring Mr. Ulbricht's online movements [*sic*], and does not reveal that the FBI was using surveillance technology that allowed them to track Mr. Ulbricht's physical movements in his home. What Mr. Ulbricht pointed to in his request for extension of time, is what Bilton described in *American Kingpin*, which is the [warrantless and unlawful] tracking of Ulbricht's physical movements and determination of his location within his home.  That is the newly discovered evidence which needs to be developed and if the FBI conducted such surveillance, and if they complied with the requirements for filing records as specified in 18 U.S.C. § 3123, then evidence describing such surveillance will be found in the sealed magistrate's files.

5.      Mr. Ulbricht asked for his extension of time in the interest of justice and for good cause shown.  Doc. 307 at 5.  There is no indication in the court's denial that the court considered the

interest of justice. Rule 33 is premised on the interest of justice: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33, Fed.R.Crim.P.

According to the government, at least some of the PRTT data that was requested but not produced prior to trial, has recently been located and will now be provided to Mr. Ulbricht. That data may provide Mr. Ulbricht with the basis for challenging the constitutionality of the laptop and residence search warrants. But for this court's denial of the Request for Extension of Time and the nearly simultaneous denial of his Request to examine the three magistrate's files, Mr. Ulbricht would now have access to improperly withheld, FBI-collected data and descriptions of methods that might allow him to show that the laptop and residence search warrants were obtained in violation of his Fourth Amendment rights.

If Mr. Ulbricht's rights against unreasonable search and seizure were violated, then evidence seized as a result of invalid search warrants should have been suppressed. Had the evidence resulting from the search of the defendant's laptop and residence not been used against him, he may well not have been convicted at trial, on some or all of the counts of the indictment. Justice requires that Mr. Ulbricht be allowed to determine whether the data just located by the prosecutor and the data and record hidden in the magistrate's files would have changed the outcome of his case.

5. Mr. Ulbricht has been hindered and interfered with since the first week of June, 2017, in researching and preparing his Rule 33 Motion, by his trial counsel's refusal to turn over the complete client file. Request at 1. Mr. Ulbricht still does not have his complete file, and is not sure he has all discovery provided to the defense. He asked this court for assistance, requesting an order addressed to trial counsel, Joshua L. Dratel, to turn over the complete client file to current counsel. Doc. 307 at 5-6. The court did not respond to that request.

The court's order denying the extension of time says prior counsel's refusal to turn over the client file doesn't matter, because prior counsel knew what was in the file. Doc. 309. That statement from the court assumes that trial counsel had examined and comprehended everything in the file, that he had kept track of what was in the file, that trial counsel was actively pursuing the best interests of his client, and that it was okay that Mr. Ulbricht has not been able to persuade Mr. Dratel to transfer Mr. Ulbricht's complete file to current counsel, though he has been trying to get the complete file since the first week of June, 2017. Those assumptions are either unreasonable or they are contradicted by known facts, for the following reasons, which Mr. Ulbricht asks the court to consider:

a. Discovery provided by the government in this case amounted to some 6 terabytes of information. It would take one technically proficient and extremely dedicated human being years to go through all of that data, depending on the format of the data and the hours available each day, each week, etc. Human memory being what it is, after years of review anyone would have forgotten most of what they had reviewed. The discovery contains data in several different

formats, many of which are unfamiliar or impenetrable to most lawyers.  Some of the unfamiliar-to-most lawyer file formats are *.pcap* (packet capture files that can be read in Wireshark), some require ftk imager, some require MySQL.  Even if one could examine the data, it would not be easy for most lawyers to comprehend and relate the data to issues in the case.  There is no reason to believe that Mr. Dratel (trial counsel) is an expert in these areas or that he hired an expert to spend thousands of hours to review the data, some of which Mr. Dratel apparently lost.  Declaration of Paul Grant in Support of Petition for Rehearing Re Request for Extension of Time to Submit Rule 33 Motion for New Trial ("Declaration"), at par. 3 - 4.

b.  Trial counsel apparently lost track of some of the discovery provided to him by the government.  For example, trial counsel claimed to have provided to undersigned counsel all of the discovery he received in this case, but trial counsel did not provide to undersigned counsel any of the *.pcap* files that resulted from packet capture data acquisition.  Undersigned counsel did eventually, and purely by happenstance, obtain the *.pcap* files that had been produced in discovery, not from trial counsel, but from the United States Attorney in September 2017, when they shipped a hard drive to undersigned counsel. The 4,499 *.pcap* files contained in a folder on that drive did contain PRTT data, but not the PRTT data that the government allegedly had relied upon in the laptop and residence search warrant affidavits. Declaration at par. 4 - 6.

      After obtaining expert assistance and discovering what was missing from those files, on October 10, 2017, undersigned counsel requested the United States Attorneys Office provide the missing PRTT data.  On February 2, 2018, the AUSA confirmed that they had located additional PRTT data and would be sending it to undersigned counsel. Declaration at par. 6.

      There is no indication that trial counsel ever looked at the content of any packet capture files, or that he even kept a copy of the discovery folder containing these files.  Declaration at par. 7.

c.  Discovery data was provided in numerous formats so it is impossible to describe "how much" data was included in that 6 terabytes. It is estimated that 1 terabyte of text is equivalent to about 38,000 copies of Webster's Unabridged Dictionary.  Needless to say, it is not reasonable to assume that anyone could know what was contained in 6 terabytes of data.

d.  Trial counsel abandoned his duties to Mr. Ulbricht at least eight months ago, and perhaps much earlier. On May 31, 2017, trial counsel Joshua L. Dratel wrote to Mr. Ulbricht's parents notifying them that the Second Circuit had that day affirmed Mr. Ulbricht's conviction and sentence. In that email message, Mr. Dratel, still counsel of record for Mr. Ulbricht in the Second Circuit, informed Mr. Ulbricht's parents that he would not prepare Mr. Ulbricht's petition for rehearing, which was due in 14 days. Declaration at par. 8.  Mr. Dratel reminded Mr. Ulbricht's parents that he had previously warned them that *he would no longer represent their son because they had stopped paying Mr. Dratel's bills*.  Declaration at par. 8.

      As of May 31, 2017, Mr. Dratel had neither sought nor received permission from this

court or from the Second Circuit Court of Appeals to withdraw from Mr. Ulbricht's case. Declaration at par. 9.

On June 6, 2016, Mr. Dratel notified Mr. Ulbricht's parents in writing that *he would not gather together Mr. Ulbricht's file and ship it to undersigned counsel, unless they first paid Mr. Dratel a suitable retainer* to cover Mr. Dratel's time and expenses. Declaration at par. 10.

Prior counsel was officially terminated in writing by Mr. Ulbricht the first week of June 2017 and counsel's failure to turn over the complete client file to undersigned counsel since that time (more than eight months) has prevented Mr. Ulbricht from effectively pursuing his Rule 33 motion (and from fully investigating claims under 28 U.S.C. § 2255), as mentioned in his Request. Doc. 307 at 2.

Prior counsel abandoned Mr. Ulbricht, on May 31, 2017, or before. Any thought about what prior counsel may have known cannot justify denying Mr. Ulbricht's timely Request for Extension of Time.

## CONCLUSION

Justice requires that prior counsel, Joshua L. Dratel, be ordered to gather together and deliver the complete client file to undersigned counsel, that Mr. Ulbricht be allowed the time to receive and examine the newly located PRTT data promised by the government, that the contents of the three magistrate's files be made available to Mr. Ulbricht for his examination and use, and that the requested extension of time be granted for Mr. Ulbricht to file his Rule 33 Motion.

The government should not be allowed to profit from its discovery violations and possible unlawful surveillance, and Mr. Ulbricht should not be forced to serve a sentence to life imprisonment, because the court denies Mr. Ulbricht the time needed to examine the relevant and important newly located and newly discovered evidence which he and the government both believe is now available.

The good cause shown by Mr. Ulbricht in his request for extension of time consists of his diligent efforts to pursue new and important evidence (in the face of discovery violations by the government and obstruction and abandonment by his trial counsel); his discovery of important new evidence in *American Kingpin* and in the hands of the United States Attorney (who searched for and recently found FBI-collected PRTT evidence at the defendant's request); and in his discovery of new evidence in the magistrate's files (despite the government's pre-trial denial that there was any undisclosed, material PRTT data). These magistrate's files should contain FBI-collected PRTT data (relied on to get the laptop and residence search warrants) and a description of the configuration of equipment and the surveillance methods used, including the invasive methods (described in *American Kingpin*) used to monitor and track Mr. Ulbricht's movement and computer activity and his location within his home.

The extension of time requested would not result in prejudice to any legitimate interest. There is no legitimate interest in the finality of a judgment that may result from discovery violations by the government and from hidden Fourth Amendment violations.  The interests of justice cannot be served by preserving an unjust conviction obtained through discovery violations and through what may prove to be illegal searches and seizures.

Granting the requested extension now will serve the interests of justice and the public appearance of justice by showing the public and Mr. Ulbricht that the court agrees that he should be allowed the opportunity to examine material evidence that should have been disclosed by the prosecutor prior to his trial. Denying the extension of time disserves the interests of justice.

For all the reasons stated above, the request for extension of time should be granted.  Mr. Ulbricht therefore respectfully requests the court consider the arguments and facts provided herein and in his Request for Extension, grant this petition, vacate the order denying the request for extension, and provide him with a 90 day extension of time, from the date of the court's new order, in which to submit his Rule 33 Motion.

Respectfully submitted,

/s/ Paul Grant
Paul Grant
Counsel for Ross William Ulbricht

cc: Eun Young Choi (by ECF)
    Assistant United States Attorney