UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

| | |
|---|---|
| United States of America, | : |
| Plaintiff, | : |
| v. | : 14 Cr. 68 (LGS)[1] |
| Ross William Ulbricht, | : Ulbricht's Emergency Motion |
| | To Stay Order re: Attorney-Client |
| | : Privilege Waiver |
| Defendant. | |
| | : |

------------------------------------------------------------ x

Ulbricht respectfully submits this Emergency Motion to Stay Order re: Attorney-Client Privilege Waiver seeking a temporary stay of the Court's order entered at ECF No. 380. Ulbricht seeks an immediate stay of the Court's order so that he might submit briefing and a motion urging the Court to reconsider its prior ruling.

The "essence of the Sixth Amendment right to effective assistance of counsel, is indeed, privacy of communication with counsel." *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981). The scope of Ulbricht's implied waiver of the protections afforded by attorney-client privilege is not unlimited. Instead, the waiver of privilege is only as extensive as absolutely necessary for former counsel to prove or disprove the specific allegations raised in Ulbricht's § 2255 motion. Ulbricht respectfully submits that the order grants the Government free-range to

---

[1] Ulbricht is filing the present motion in the underlying criminal case simultaneously with *Ulbricht v. United States*, cause number 19 Cv. 75212 because the Court's order was sought and issued in the criminal case. (*See* ECF No. 379 & 380).

obtain otherwise privileged and confidential information without providing adequate judicial oversight or opportunity for the privilege holder to *prospectively* preserve his rights. Allowing an adverse party such as the Government to obtain access to information still protected by privilege will seriously injure Ulbricht. The Court should stay its prior order pending reconsideration.

## I. <u>Statement of Facts</u>

A.    **Parties attempt to confer and resolve issue**

On October 31, 2019, the Government first indicated that they intended to seek a broad waiver of privilege for any information Ulbricht discussed with former counsel Joshua Dratel ("Dratel"). The following day, Ulbricht responded to Government through his counsel. (*See* Email from Z. Newland to V. Vainberg, Nov. 1, 2019, attached here as **Exhibit 1**). Ulbricht told the Government that he did not categorically reject the premise that he had impliedly waived privilege protections for core information put at issue by allegations raised in the § 2255 motion. (Exh. 1 at 1).

At the same time, Ulbricht made clear that "the scope of the waiver must be narrowly construed," so that it was no broader than needed to ensure the fairness of the § 2255 proceedings. (Exh. 1 at 1). With that in mind, Ulbricht proposed that 1) the parties try and reach an agreed protective order limiting the scope of any waiver; 2) that Dratel be allowed to submit to an agreed sworn deposition subject to the protective order's terms; and 3) the Government would be allowed to use Dratel's deposition testimony to respond to the § 2255 motion. (Exh. 1 at 1).

Ulbricht believed both sides would be fairly served by an open and on the record deposition instead of an informal discussion with no ability for Ulbricht to timely object.

The Government declined Ulbricht's proposal for an agreed deposition of former counsel citing common practice in the Southern District of New York.[2] So, the Government tried another tactic. At the same time Ulbricht made his resistance to the informal disclosure of client confidences known, the Government independently tried to obtain this information from former counsel. (*See* Gov. Ltr. Mot., ECF No. 379, Nov. 12, 2019 at 1) ("On November 3, 2019, Mr. Dratel notified the Government that he would require a court order before having any discussions…."). As a result, the Government filed their November 12th letter motion with the Court.

**B.     Arguments raised in Government's motion seeking waiver**

The Government filed a letter motion seeking, *inter alia*, the granting of its proposed order "to effectuate th[e] expansion of the record." (Gov. Ltr. Mot. ECF No. 379, Nov. 12, 2019 at 1) (alterations added). This is how the Government described the specifics of the information it needed:

> The Government respectfully submits that in order to resolve the 2255 Petition, it is necessary for it to obtain information from prior counsel responding to the allegations of ineffective assistance. *See* Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Such information from prior counsel is necessary because the Petitioner makes factual assertions that his former

---

[2] The Government did indicate a willingness to review a proposed protective order, but Ulbricht believed a protective order was unworkable with the terms of the broad waiver the Government sought.

> counsel effectively counseled him against accepting the Government's plea offer and failed to sufficiently explain what the Government needed to prove to obtain a conviction. *See* 2255 Petition at 22-28. The Petitioner also asserts that his trial counsel rendered ineffective assistance at trial by stating in a jury address that Ulbricht created the Silk Road website, and stipulating that illegal drugs were bought and sold from Silk Road. *Id.* at 19-21.

(ECF No. 379 at 1). There was no further explanation or description of the specific topics or issues the Government believe Ulbricht's § 2255 motion had placed at issue in the letter motion. The Government did not attempt to limit or cabin what they could discuss with Ulbricht's former attorney or whether any information they obtained could be used for purposes outside of the § 2255 proceedings. Instead, the Government simply said *carte blanche* order was necessary on their proposed terms.

### C. Court's Order on Attorney-Client Privilege Waiver

Within 24 hours after the Government submitted their opposed letter motion, the Court issued its ruling. (Order, ECF No. 380). Ulbricht was not able to respond at all prior to the Court issuing its ruling. The Court held that 1) "information from Dratel and his "testimony may be needed," for the Government to respond to the § 2255 motion; 2) by bringing the § 2255 motion Ulbricht had "waived the attorney-client privilege as a matter of law"; 3) Dratel "may discuss the issues raised in the 2255 Petition with the Government and, if necessary and appropriate, give sworn testimony"; 4) requiring Ulbricht to execute and return the attached consent to waiver or risk denial of the 2255 motion ("Consent Form"). (Order, ECF No. 380).

The proposed Consent Form instructs Ulbricht that if he wishes to proceed with any IAC claims in his § 2255 motion, he "must sign" the waiver. (*Id*. at 4). The Consent Form describes its purported legal effect:

> By making this motion, you have waived the attorney-client privilege you had with your former attorney to the extent relevant to determining your claim. This means that if you wish to press your claim of ineffective assistance, you cannot keep the communications between yourself and your former attorney a secret—you must allow them to be disclosed to the Government and to the Court pursuant to court order.
>
> …
>
> The form constitutes your authorization to your former attorney to disclose confidential communications (1) only in response to a court order and (2) only to the extent necessary to shed light on the allegations of ineffective assistance of counsel that are raised by your motion.

(ECF No. 380 at 4). The Court "may deny" Ulbricht's § 2255 motion if he "does not authorize," Dratel to "give an affidavit in response," to the Court's order. Ulbricht is seeking an emergency temporary stay of this same order.

## II. Argument

### A. Implied waiver of privilege extends only to communications that are "necessary" to prove or disprove § 2255 motion claims.

There is unanimous federal authority holding that when a habeas movant like Ulbricht claims he received ineffective assistance of counsel ("IAC") he also risks impliedly waiving attorney-client privilege for certain matters. *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) (collecting cases from 5th, 6th, 8th, 9th, and 11th Circuits). This is based on the theoretical premise that the protections of

privilege are waived by implication when a client places the attorney-client relationship directly "at issue." *Pinson,* 584 F.3d at 977.

The Second Circuit has not yet addressed the concept of implied waiver by placing the attorney-client relationship "at issue" in the habeas context. However, the Second Circuit has stridently rejected a broad definition of the "at issue" exception that would destroy the privilege whenever the holder puts protected information "at issue" by making it relevant. *See In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000) (whether implied waiver exists is "decided…on a case-by-case basis, and depends primarily on the context in which the privilege is asserted."). The Second Circuit has instructed that "rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution." *Id*.

The scope of the waiver of privilege in Ulbricht's case, like any other, is highly factually dependent and not unlimited. *Bittaker v. Woodford,* 331 F.3d 715, 716 (9th Cir. 2003) (*en banc*). It is the obligation of the court to "impose a waiver no broader than needed to ensure the fairness of the proceeding." *Id*. at 720; *Pinson*, 584 F.3d at 978-79. For example, the Tenth Circuit in *Pinson* negatively viewed a district court order requiring former counsel to produce a "an affidavit addressing the issues," raised in the § 2255 motion without further specificity. 548 F.3d at 978-979. The Court lamented the lack of specificity and narrow tailoring in the order. *Id*.

The Ninth Circuit's *en banc* decision in *Bittaker* provides further insight into the scope of the waiver of privilege which applies. *Bittaker*, 331 F.3d 715 (9th Cir. 2003). That decision made clear that there is "no federal interest" in a broad waiver of privilege rule beyond what is necessary to litigate the IAC claim. *Id.* at 722. According to the Ninth Circuit, a broad waiver rule would force a Hobbesian choice of sorts:

> What's more, requiring the petitioner to enter such a broad waiver would force him to the painful choice of, on the one hand, asserting his ineffective assistance claim and risking a trial where the prosecution can use against him every statement he made to his first lawyer and, on the other hand, retaining the privilege but giving up his ineffective assistance claim. This would violate the spirit, and perhaps the letter, of *Simmons v. United States*, 390 U.S. 377, 394, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968).
>
> It is no answer to say that Bittaker created this dilemma for himself-- that he was the one who voluntarily "chose" to challenge his conviction on grounds of ineffective assistance. The Constitution guarantees Bittaker the right to effective assistance of counsel at trial, *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and Congress has provided him an avenue to claim that his constitutional rights were violated, 28 U.S.C. § 2254.

*Bittaker*, 331 F.3d at 723-24 (9th Cir. 2003) (cleaned up).

In another case, the Eleventh Circuit issued a stay of a district court order to make certain that any waiver of privilege was narrowly drawn. *See Johnson v. Alabama*, 256 F.3d 1156, 1168 n.4 (11th Cir. 2001). In *Johnson*, the Eleventh Circuit required the district court to:

> conduct first an *in camera* hearing in order "to determine whether and to what extent appellant's communication presumptively protected by the attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised by appellant in his habeas petition."

*Id.* (quotations in original and internal citations omitted). The Court further noted that the "precise boundaries of the waiver will vary from case to case, and in many instances," would require "careful evaluation by the district court," in the habeas context. *Id.* at 1179. The district court ultimately conducted the *in camera* hearing where former counsel testified and introduced their notes before ruling on the scope of Johnson's implied waiver of privilege. *Id.*

This procedure of *in camera* inspection prior to waiver determination is instructive in Ulbricht's case. The Supreme Court instructs that *in camera* review of potentially privileged communications and documents is a "relatively costless and eminently worthwhile method," to protect the disclosure of material that is potentially privileged. *Kerr v. United States Dist. Court*, 426 U.S. 394, 405 (1976). Evaluating the precise contours of a claim of privilege is always a proper judicial function. *In re Search Warrant Issued June 13, 2019,* 2019 U.S. App. LEXIS 32600 *, __ F.3d __, 2019 WL 5607697 (4th Cir. Md. October 31, 2019) (court "not entitled to delegate its judicial power and related functions," to prosecutors, "especially where executive branch is an interested party in the pending dispute"); *see In re The City of New York,* 607 F.3d 923, 947 (2d Cir. 2010) (observing that evaluating privilege claim is always a judicial function).

**(1) Privilege waiver is too broad and delegates judicial function**

The Court's privilege ruling is not adequately narrowly tailored. (ECF No. 380) The privilege ruling does not describe in any detail "whether and to what extent" the privileged information is necessary to respond to the § 2255 motion. *See*

*Johnson*, 256 F.3d 1156. The order does "little to indicate precisely what information," Dratel may disclose "other than to refer generally to claims," of IAC. *Pinson*, 584 F.3d at 978.

In fact, the current order implies that Ulbricht has universally waived any right to privilege simply by filing the § 2255 motion. (ECF No. 380 at 1) ("by making the motion, the movant *has waived* the attorney-client privilege *as a matter of law*"). In this respect, the order runs directly contrary to the overwhelming weight of precedent. *See In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly."). In the habeas context, the Sixth Circuit remarked that "[t]he standard for implied waiver is not lower in habeas cases than it is in any other type of case." *Id*. at 454. The order finding Ulbricht has universally waived his right to attorney-client privilege without any analysis of whether any specific disclosure is *necessary* to litigate the § 2255 is facially overbroad.

The privilege order authorizing the Government to "discuss the issues raised" in Ulbricht's § 2255 with Dratel without specific judicial assessment of applicable privilege is improper. Evaluating a privilege claim is a judicial function. *In re City of New York*, 607 F.3d at 947. Further, district courts "have the obligation to 'strictly police' the limits of habeas petitioners' narrow waivers of the attorney-client, work product and Fifth Amendment privileges during habeas proceedings." *Lambright v. Ryan*, 698 F.3d 808, 823-824 (9th Cir. 2012).

Permitting the disclosure of materials "arguably subject" to privilege protection without first independently assessing if the privilege should still apply is reversible

error. *Id.* (release "without the information necessary to determine appropriateness," was abuse of discretion). Instead, ordering the disclosure of otherwise privilege information directly from Dratel to the Government outside of any formal discovery (such as a deposition) delegates the Court's proper judicial function. The privilege ruling impermissibly grants the Government the right to determine which topics may be discussed with Dratel and what subjects, if any, are off limits because they are still protected. Placing the power to make all assessments on the existence of privilege once Ulbricht filed a § 2255 motion improperly delegates a judicial function. Only the Court is vested by the Constitution with the judicial power which includes "the duty of interpreting and applying," the law. *See Massachusetts v. Mellon* 262 U.S. 447, 448 (1923).

In this case, the privilege order was not based on sufficient information to rule Ulbricht has waived any privilege to "the communications" between himself and Dratel. (ECF 380, Consent Form). The court should reconsider its prior order and at a minimum require *in camera* submissions to determine the extent of any privileged information which must now in fairness be disclosed to the Government. Such *in camera* procedures with Ulbricht's participation are the unquestioned standard in all other contexts evaluating privilege claims. There is no reason to apply a lower standard in habeas cases by order blanket disclosure of otherwise privileged material without engaging in a topic-by-topic factual analysis of the claims. *In re Grand Jury Proceedings*, 219 F.3d at 183.

**B. Implementing limited waiver: protective order and deposition**

Ulbricht's privilege waiver should extend "only to litigation of the federal habeas petition," and the attorney-client privilege is not waived "for all time and all purposes—including the possible retrial of petitioner…" *Bittaker*, 331 F.3d at 716. Unlike an ordinary civil case, the parties to Ulbricht's § 2255 proceedings have no general right to discovery. *See* Rules Governing Section 2255 Cases in the United States District Courts ("Habeas Rules"), Rule 6(a); *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

The Government bears the obligation of showing that "good cause" exists to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure. Habeas Rule 6(a). Ordinarily, allowing discovery before the Government has even answered the § 2255 motion is "not common." *United States v. Maya-Cruz*, No. CR S-10-185 KJM, 2012 U.S. Dist. LEXIS 157855, at *4 (E.D. Cal. Nov. 1, 2012) (citing for the same proposition *United States v. Prado*, No. CR S-02-21 JAM KJM P, 2009 U.S. Dist. LEXIS 112868, 2009 WL 4018147, at *1 (E.D. Cal. Nov. 18, 2009)). The Government has not even attempted to show that any of the "many ways" to address IAC claims that do not involved questioning prior counsel have been considered. (*See* ECF No. 379). Further, the Government has not responded to Ulbricht's § 2255 motion either. The Government has not shown "good cause" for its requested discovery at this juncture.

To the extent that the Court determines discovery is warranted by the Government showing good cause to obtain otherwise privileged material, that

discovery should be made subject to a protective order. *See Bittaker,* 331 F.3d at 728 (order must clearly delineate contours of limited waiver before allowing discovery); *Lambright v. Ryan,* 698 F.3d 808, 819 n.4 (9th Cir. 2012) (protective order required whenever discovery is authorized on IAC claim). An appropriate protective order would 1) limit the Government's use of any privileged discovery to rebuttal of Ulbricht's claims, 2) prohibit the Government from using the information or documents against Ulbricht in any manner during future proceedings; 3) prohibit the Government from disseminating the information or its general contents to any other U.S. Attorney's Office or in any other context outside the § 2255 proceedings. *Bittaker*, 331 F.3d at 724 n.8. The court should stay its prior ruling so that a protective order can be put in place. Otherwise, Ulbricht faces the irreparable harm of former counsel disclosing client confidences without any limitation on how the Government can utilize them in the future.

Further, Ulbricht submits that even if a protective order is granted the Court should not order any manner of informal discussions as authorized under the Habeas Rules. Instead, the Government's discovery into potentially privileged areas should be obtained in fairness through a formal deposition subject to the Federal Rules of Civil Procedure. *See United States v. Nicholson,* 611 F.3d 191, 203 (4th Cir. 2010) (former lawyer testified in deposition before case went to evidentiary hearing); *United States v. Stone*, 824 F. Supp. 2d 176, 188 (D. Me. 2011) (Discovery order requiring formal deposition on § 2255 claim appropriately protected Government interests and attorney-client privilege); United *States v. Soomai,* 928

F. Supp. 2d 170 *, 2013 U.S. Dist. LEXIS 31295, 2013 WL 837602 (D.D.C. March 7, 2013) (granting protective order which required prohibited Government from speaking with prior counsel without post-conviction counsel present). Permitting any *ex parte* informal discussions between Dratel and the Government would deprive Ulbricht of his right to object and assert privilege on a question-by-question prospectively.

Multiple courts have recognized the inherent danger posed by informal laissez faire communications between formal counsel and the Government in habeas cases. *See Stone*, 824 F. Supp. 2d at 188; *Soomai*, 928 F. Supp. 2d 170 *, 2013 U.S. Dist. LEXIS 31295, 2013 WL 837602; *Hudson v. United States*, No. 3:10-cv-00981, 2011 U.S. Dist. LEXIS 93792, at *10 (S.D. W. Va. Aug. 22, 2011) (requiring discovery by counsel's affidavit on specific topics listed as opposed to informal interview).Ulbricht should receive the same protections for attorney-client privilege that an ordinary civil litigant would possess under ordinary discovery procedures. A protective order is necessary in this case and the Court should require any discovery to comply with the Federal Rules of Civil Procedure.

## III. <u>Conclusion</u>

The prior ruling concerning attorney-client privilege should be stayed as it is overly broad and does not adequately protect the interests served by the privilege. Even if discovery is allowed at this point a protective order is necessary.

Respectfully submitted,

/s/ Zachary Lee Newland
Zachary Lee Newland
Senior Litigation Counsel
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Tel: (802) 444-4357
Fax: (802) 779-9590
E-mail: zach@brandonsample.com
Texas Bar: 24088967
https://brandonsample.com

*Counsel for Ross William Ulbricht*

## CERTIFICATE OF CONFERENCE

I, Zachary L. Newland, hereby certify and affirm that prior to the filing of this motion I conferred opposing counsel for the United States to obtain their position on this motion. Opposing counsel stated that 1) they are opposed to the Court granting any stay, and 2) they are opposed to the Court granting a reconsideration of its prior ruling.

/s/ Zachary L. Newland
Zachary Lee Newland

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 19th day of November 2019, via CM/ECF on all counsel of record.

/s/ Zachary L. Newland
Zachary L. Newland